<pre>
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF TEXAS
                             DALLAS DIVISION

 JONES,                         )   Case No. 3:19-cv-02087-B
                                )
         Plaintiff,             )   Dallas, Texas
                                )   January 15, 2020
 v.                             )   9:00 a.m.
                                )
 REALPAGE, INC.,                )   MEMORANDUM OF LAW IN SUPPORT
                                )   OF MOTION TO COMPEL
         Defendant.             )   INTERROGATORY RESPONSES AND
                                )   PRODUCTION OF DOCUMENTS [#79]
 _____ )

                        TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE IRMA CARRILLO RAMIREZ,
                   UNITED STATES MAGISTRATE JUDGE.

 APPEARANCES:

 For the Plaintiff:            Amy E. Tabor
                               CADDELL & CHAPMAN
                               628 East 9th Street
                               Houston, TX  77007
                               (713) 751-0400

 For the Plaintiff:            Donna Lee
                               LOEWINSOHN FLEGLE DEARY SIMON, LLP
                               12377 Merit Drive, Suite 900
                               Dallas, TX  75251
                               (214) 572-1700

 For the Plaintiff:            John Soumilas
                               FRANCIS MAILMAN SOUMILAS, P.C.
                               1600 Market Street, Suite 2510
                               Philadelphia, PA  19103
                               (215) 735-8600

 For the Defendant:            Timothy James St. George
                               TROUTMAN SANDERS, LLP
                               1001 Haxall Point
                               P.O. Box 1122
                               Richmond, VA  23218
                               (804) 697-5410
</pre>

```
 1   APPEARANCES, cont'd.:

 2   For the Defendant:          Virginia Bell Flynn
                                 TROUTMAN SANDERS, LLP
 3                               4320 Fairfax Avenue
                                 Dallas, TX  75205
 4                               (804) 697-1480

 5   Recorded by:                Marie Castañeda
                                 UNITED STATES DISTRICT COURT
 6                               1100 Commerce Street, Room 1452
                                 Dallas, TX  75242-1003
 7                               (214) 753-2167

 8   Transcribed by:             Kathy Rehling
                                 311 Paradise Cove
 9                               Shady Shores, TX  76208
                                 (972) 786-3063
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
           Proceedings recorded by electronic sound recording;
25            transcript produced by transcription service.
```

1          DALLAS, TEXAS - JANUARY 15, 2020 - 8:58 A.M.

2          THE CLERK:  All rise.

3          THE COURT:  Good morning.  Please be seated.

4          MR. ST. GEORGE:  Good morning, Your Honor.

5          THE COURT:  We are here in the matter of Diane D.

6   Jones, individually and on behalf of herself and all others

7   similarly situated, versus RealPage, Inc. doing business as

8   LeasingDesk Screening.  This is Civil Action 3:19-cv-2087-B.

9   And before the Court this morning, pursuant to the District

10  Court's order of reference of December 9th, is the Memorandum

11  of Law in Support of Motion to Compel Interrogatory Responses

12  and Production of Documents, which has actually been narrowed,

13  so I have the parties' joint submission before me.

14     Would the parties please make their appearances for the

15  record?

16          MR. SOUMILAS:  Your Honor, good morning.  For the

17  Plaintiff, my name is John Soumilas.  This morning with me are

18  my colleagues Amy Tabor and Donna Lee, also on behalf of the

19  Plaintiff.

20          MR. ST. GEORGE:  Good morning, Your Honor.  I'm

21  Timothy St. George for the Defendant.  With me is my partner,

22  Virginia Flynn.

23          THE COURT:  All right.  And if you'll give me just a

24  moment to get my electronic file up.

25     (Pause.)

1          THE COURT:  For purposes of our hearing this morning,

2     rather than have you make presentations from the podium, as is

3     customary in Federal Court, I'm going to ask both sides to

4     please remain seated.  We are on the record.  The proceedings

5     are being recorded.  But I've got questions for both sides.  I

6     think we can dispose of this matter more efficiently that way.

7     I have set aside one hour for today's hearing.  So I've got

8     questions for both sides, and then I'll give you the

9     opportunity to present anything else that you would like for

10    me to consider before I make my ruling.  And I will rule from

11    the bench this morning.

12         All right.  So I am going to start with the Defense.  And

13    Mr. St. George, will you be arguing on behalf of the

14    Defendant?

15         MR. ST. GEORGE:  Yes, Your Honor.

16         THE COURT:  All right.  In this district, there are a

17    number of cases that have cited the Fifth Circuit's decision

18    in *McLeod* for the proposition that it is the party who resists

19    discovery that has the burden on the objections.  Do you have

20    any authority to the contrary?

21         MR. ST. GEORGE:  The only authority to the contrary

22    would be that there is some case law cited, including in

23    Plaintiff's motion to compel, that the party propounding has

24    to show that the information sought is proportional and

25    relevant under Rule 26(b).  Well, of course, a party is only

1    allowed to seek discovery relevant to the claims in the case.

2    Regardless of the burden, we're happy to prove our point.  But

3    in terms of Rule 26, that is a limitation that applies to the

4    propounding party.

5            THE COURT:  Rule 26 doesn't expressly impose a burden

6    on the party seeking discovery to show relevance, does it?

7            MR. ST. GEORGE:  It says the discovery has to be

8    relevant to a claim in defense of the case.

9            THE COURT:  It says it has to be relevant, but who has

10   the burden to establish lack of relevance on an objection?

11           MR. ST. GEORGE:  We're happy to assume that burden.

12           THE COURT:  Okay.  So you're not contesting that the

13   case law in our district that says -- if you'll give me just a

14   moment, I can give you the case cite.  There are a number of

15   cases that cite it.  (Pause.)  All right.  The case that I

16   most often cite to is *Merrill v. Waffle House, Inc.*, 227

17   F.R.D. 475, 477, citing *McLeod* -- M-C-L-E-O-D -- *Alexander*

18   *Powel & Apffel, A-P-F-F-E-L, P.C. v. Quarles*, Q-U-A-R-L-E-S,

19   894 F.2d 1482, 1485 (5th Cir. 1990).  And there are a number

20   of cases, again, that cite that Fifth Circuit case for the

21   proposition that the party who opposes its opponent's

22   requests, discovery requests, must show specifically how each

23   request is not relevant or how each request is overly broad,

24   burdensome, or oppressive.  So, we're going to go with that.

25       All right.  Just to be sure that I didn't miss anything:

1  In reviewing the appendix in support of the joint submission,

2  I did not see an affidavit to support any objections.  Did I

3  miss one?

4         MR. ST. GEORGE:  There's no affidavit.  The issues

5  here are facial with respect to the requests.  We did mention

6  that we have exchanged information regarding the

7  quantification, the quantity of reports that would be issued.

8  I asked in the submission that we be allowed to present that

9  -- they're verified interrogatory responses.  Asked in the

10  submission we be allowed to present those for *in camera* review

11  because they are highly confidential, and they provide some

12  context for the volume of data that has been requested.  Those

13  interrogatories were served in this case back in June, but

14  they would provide the Court was some insight into the volume

15  of data that's being requested.  But that is specific to the

16  requests for production, --

17         THE COURT:  Well, --

18         MR. ST. GEORGE:  -- not the interrogatories.

19         THE COURT:  I remember seeing that in a footnote.  I

20  don't remember specifically which footnote.  Do you remember

21  which footnote number that was?  And I remember you saying you

22  could submit it if I wanted.

23         MR. ST. GEORGE:  Right.

24         THE COURT:  But since it is your burden and I'm going

25  to be ruling today, my understanding of the case law is that

1   it should have been submitted if you wanted me to have

2   considered it *in camera* prior to determination.

3         MR. ST. GEORGE:  Well, we are happy to submit it.

4         THE COURT:  Too late.  We're here at the hearing.  I'm

5   ruling today.

6         MR. ST. GEORGE:  Understood.  Understood.  We

7   mentioned that it would be submitted upon invitation.  But

8   these numbers aren't going to be disputed in terms of the

9   volume of data.

10     But there's no affidavit.  Again, the issues here are

11   largely facial with respect to the requests themselves and the

12   lack of relevance, tailoring, any tailoring, as well as the

13   obvious concerns that would arise with respect to a production

14   of hundreds of thousands of reports with highly confidential

15   consumer information in them.

16         THE COURT:  Can you move the microphone a little

17   closer to you?

18         MR. ST. GEORGE:  Yes.

19         THE COURT:  Thank you.

20         MR. ST. GEORGE:  Yes, Your Honor.

21         THE COURT:  All right.  Well, as I understood the

22   issues remaining, and I'm glad that the parties were able to

23   resolve some of the issues, what we've got left is

24   Interrogatory #15.  Maybe.  I'll ask about that.

25   Interrogatories 16 and 17.  And while there was a reference to

1    Requests for Production Numbers 2 and 3, only #2 was

2    specifically addressed in the joint submission.  So, did I

3    miss any issues?

4            MR. ST. GEORGE:  No, Your Honor.

5            THE COURT:  Did I miss any issues?

6            MR. SOUMILAS:  No, Your Honor.

7            THE COURT:  All right.  So let's talk about 15.  Did

8    the Defendant supplement its response by January 8th, as

9    represented in the joint submission?

10           MR. ST. GEORGE:  So, we were -- we have not.  We were

11   prepared to do that, and to put -- we actually had that in the

12   agreed order that we were going to submit to the Court, but it

13   was removed by the Plaintiff's counsel and they did not want

14   to include it.  We are certainly prepared to supplement that

15   information, but we haven't done it yet because we're not sure

16   what issue remains and why we're here on that point.

17           THE COURT:  Okay.

18           MR. ST. GEORGE:  If there's some reason why our

19   proposed supplementations, the timeline or the pledge, is not

20   sufficient, we wanted to hash that out with the Court today.

21           THE COURT:  Okay.

22           MR. ST. GEORGE:  But from our opinion, there is no

23   substantive dispute remaining on this interrogatory.  And that

24   is the interrogatory that is actually tailored to the class

25   definition, --

1          THE COURT:  Right.

2          MR. ST. GEORGE:  -- which is why we have promised to

3   respond and will respond.  I do have preliminary data from the

4   client, and we should be able to make a response next week,

5   assuming that there is nothing further, apart from responding.

6       Again, without posturing, we're not really sure why that

7   dispute was -- was insisted on being included for today.

8          THE COURT:  Well, as I read the joint submission -- I

9   don't know.  The Plaintiff will tell me in a minute.  But as I

10  read it, there were going to be two answers -- the current

11  answer is none, --

12         MR. ST. GEORGE:  Uh-huh.

13         THE COURT:  -- and either you were going to produce

14  something or say, We can't get it because there's no way to

15  find it through a "automatic query" --

16         MR. ST. GEORGE:  Right.

17         THE COURT:  -- of records.

18         MR. ST. GEORGE:  Right.

19         THE COURT:  So, to the extent that the Defendant was

20  going to say, We can't get it, --

21         MR. ST. GEORGE:  That isn't --

22         THE COURT:  -- that would be a reason to be here.

23         MR. ST. GEORGE:  Right.  And that is, based on the

24  preliminary data that I've seen back from the client, that is

25  not going to be the response.  The response, based on the work

1  we've done over the holiday, will be a substantive response to

2  the interrogatory.

3      The answer was none because there was some confusion from

4  a definitional perspective.  That was resolved in the meet-

5  and-confer process, and this is now underway and will be

6  supplemented.

7          THE COURT:  Okay.  So, does that address the

8  Plaintiff's concern on 15?

9          MR. SOUMILAS:  So, Your Honor, the reason -- the

10  answer is no.  The reason why 15 is still at issue are --

11  there are two reasons.  One, there is a scheduling order in

12  this case, Your Honor, where we must meet certain deadlines,

13  including a certification motion by mid-April.  So, without a

14  firm date, which we still don't have, or any data as to when

15  it would be coming, who will verify this interrogatory,

16  whether we'll get a shot to depose that person to test it, we

17  can't just put it in an agreed order and then not get it in

18  time.

19          THE COURT:  Well, isn't that what we're here for?  I

20  will set a deadline.  First, we need to resolve the issues and

21  objections.  So, I will impose a deadline by which any

22  response must be made.  But as far as the substance of his

23  response, given that he has now informed the Court that there

24  will be a substantive response, would that -- does that

25  address the issue that was raised in the joint submission?

1        MR. SOUMILAS:  So, the answer to that question is yes,

2   Your Honor.

3        THE COURT:  Okay.

4        MR. SOUMILAS:  That's why we raised it as an issue,

5   because we want a substantive response within a time frame

6   that we could work with with the Court's order.  And assuming

7   we get that, then that will resolve 15.

8        THE COURT:  Okay.  All right.  Let's move on to 15.  I

9   mean, 16 and 17.  As I understand the issue that's presented,

10  these interrogatories ask for information regarding subsets of

11  the class that's identified in the amended complaint, but

12  these were not identified as subclasses within the amended

13  complaint.

14        MR. SOUMILAS:  That's correct.

15        THE COURT:  All right.  And the case law that you

16  provided me didn't specifically address the issue of

17  discovery, pre-certification discovery concerning subclasses

18  that were not identified.

19        MR. SOUMILAS:  I don't know that we've cited a case

20  directly on that point, Your Honor, or that there is one.

21  However, in -- there are a couple of issues there.  One is

22  that discovery under Rule 23 is governed by material that

23  could lead to admissible evidence, and certainly this could

24  lead to admissible evidence regardless of how a particular

25  complaint frames the class definition or a subclass.

1        Secondly, in class action practice, it is not the

2   definition in the complaint that governs.  You frame your

3   definition at certification based on what the evidence shows.

4   And certainly we are not looking to get evidence beyond the

5   complaint.  So this is not some new theory.  This is a more

6   refined version of the same theory.

7        And if I might, Your Honor, just so that the Court is

8   fully aware of what we're doing here:  We're looking for non-

9   matches, like Ms. Jones' case, where a criminal record does

10  not match the tenant applicant, even though it's on the

11  applicant's report.  In the case of Ms. Jones, it was a

12  criminal record for a Toni Taylor, who has an alias of Tina

13  Jones.  The year of birth of the two women is the same, but

14  not the date of birth.

15       Therefore, in trying to identify non-matches, the broadest

16  possible category is people whose criminal records doesn't

17  match because of their name.  A subcategory is neither the

18  name nor the specific date of birth match.  That's not a

19  broader category.  It's a narrower, more refined category, and

20  frankly, we think one that has a much stronger inference to be

21  made that the record just belongs to a completely different

22  person, when we don't even have -- we have neither a name nor

23  a date of birth.

24       So, in our view, the date of birth interrogatories at 16

25  and 17 are simply a subset that could fit the definition of

1    this case.  I don't know that it will be a subclass, Your

2    Honor.  It could be the only class we move to certify.  It

3    depends on what the data looks like, what the numbers look

4    like, how we could test their validity and so forth.  But in

5    our view, it's clearly within the Rule -- the ambit of Rule

6    26.

7         And one final point there, Your Honor, is that we took the

8    Interrogatories 16 and 17 as a -- as an option in relation to

9    Request for Production 2.  In other words, if they don't want

10   to do those searches for us, we think we could do them

11   ourselves.  We know we could do them ourselves.  We have --

12   now that we have the format that these documents are in, we

13   know that we could do them.  So our view would be that they

14   should either answer those or give us the documents so that we

15   could get at the number of consumers who have not only a name

16   not matching precisely but also a date of birth that is not a

17   precise match.

18        So I think, Your Honor, our view is that it's a subset, a

19   more narrowly-tailored subset, and a highly relevant one here

20   that could be admissible.

21        THE COURT:  All right.  So I did my own research,

22   since the parties didn't give me anything, any case law on

23   point or that was close to it, or really, any legal argument

24   other than it's not relevant and contact information --

25   discovery that asks for contact information isn't fatal.  So I

1    found one case out of the Northern District of California from

2    last year.  *A-I-R-A-M, LLC v. KB Home*, 2019 WL 2896785, at

3    *3, where the Court noted that several of the discovery

4    requests sought to identify members of the putative class and

5    subclass, and it says how many members of any -- each class or

6    subclass had, noted that the courts generally permitted the

7    discovery, noted that the discovery requests appeared to

8    incorporate the class and subclass definitions of the amended

9    complaint, and found that, under the circumstances, it

10   concluded that, absent a more substantial showing, plaintiffs

11   may only obtain class-related discovery that is strictly

12   commensurate with their class and subclass definitions and

13   necessary to a determination of the existence, size, and

14   membership of the class and subclass, as set forth below.

15       So the Court was looking specifically at the definition of

16   the class and any subclasses.  There's not any -- there aren't

17   any identified here.  You've just got one class.

18       There was a case out of the Eastern District of Louisiana

19   which was very general, *Melder v. Allstate Corporation*, 2007

20   WL 9777975.  In ruling on relevance disputes and the limited

21   scope of discovery imposed by the case management order, I

22   must consider the definitions of the class and subclass

23   proposed by plaintiffs in their class certification motion.

24       So that looked to the motion, but the couple of cases that

25   I found looking at discovery on class and subclasses looked at

1    what had been identified.

2        If I order production of information under Request #2,

3    isn't that going to allow you to identify these subclasses on

4    your own?

5        MR. SOUMILAS:  So, the answer to that question, Your

6    Honor, is yes.  I also think that we have two classes pled in

7    the amended class action complaint, a facially-inaccurate

8    record class and a confirmed non-match class.  I think the

9    data that we're looking for in Interrogatories 16 and 17, and

10   also Document Request 2, is clearly within the definition of

11   (a), facially inaccurate.  There's -- this is not a different

12   class, a different theory.  I don't even know that I would

13   call it a subclass, Your Honor.  It's just a question of, at

14   the time of certification, what exactly are going to be the

15   criteria so class members could objectively determine whether

16   they're in or out.  And I think a date of birth could be one

17   of those criteria.  It doesn't need to be in the definition,

18   Your Honor.

19       So I would just take -- I think the cases that Your Honor

20   has cited, we did not provide, but they don't sound at all

21   inconsistent with my understanding, which is that you could

22   take discovery that will formulate and identify the people in

23   your class.  We think 16 and 17 will identify people in the

24   facially-inaccurate records class.  And so will Document

25   Request #2.

1          THE COURT:  Isn't some of this information already

2     going to be provided in response to the other discovery

3     requests?  Because if I'm looking at proportionality, which I

4     am required to do *sua sponte*, if you're already getting this

5     information, then why do you need it separate -- a separate

6     number?  If you're getting the underlying data, which is

7     something that you told me you wanted in your portion of the

8     joint submission, then why are these numbers specifically

9     needed?

10          MR. SOUMILAS:  Yeah.  So, Your Honor, that's an

11     excellent question, which begs the issue, I mean, why we're

12     here today.  Because if they're willing to answer 15 and they

13     had given us this data two weeks ago and it adds up to our

14     experience and what we project, we probably wouldn't be here

15     at all.

16        The concern that I have is that we're going to get an

17     answer to 15 two weeks from now and it's going to say

18     something like it said before:  None.  Or, One.  And that

19     makes no sense whatsoever, and I cannot prosecute this case

20     with just a bare answer like that.

21        That's why we took, you know, a couple of bites at the

22     apple.  Let's look at the date of birth information.  Let's

23     look at the records themselves.  And we've talked for weeks as

24     to, is it appropriate to narrow the request for records or to

25     put more protections in place for privacy?  We have no

1    interest in people's Social Security numbers or other private

2    information.  We just want to see whether public criminal

3    records match the identities of people for whom they've

4    already sold third-party reports.  So, Your Honor, our view on

5    this is that it depends.  It depends.  If 15 gives us that

6    answer, then we might not need very much more.  I just don't

7    know because we haven't been able to get it for literally

8    months.

9         MR. ST. GEORGE:  Your Honor, we'll -- we'll provide

10   that response to 15.  I mean, and if what I'm hearing from Mr.

11   Soumilas is that if we respond to the interrogatories, I mean,

12   including 16 or 17, then that would terminate the issue, we

13   would be willing to compromise in that regard.  In fact, it's

14   something we had in connection with the meet-and-confer, but

15   it was withdrawn.

16       And we do think that 16 and 17 are not subsets.  In fact,

17   they don't -- they're not even coext... they have no relation

18   to the class that's pled in the complaint, which is defined by

19   a name.  But if that is -- if that short-circuits this issue,

20   to provide the interrogatories, to have them verified, to make

21   the verifying witness go under a deposition for her sworn

22   testimony, and to modify the schedules -- we have no intention

23   of jamming them on a schedule; we just stipulated and Judge

24   Boyle entered a stipulation giving us more time while we work

25   these issues -- there's nothing further to discuss and we can

1   just resolve this.

2       I'm hearing a slightly different position today than we

3   did in the meet-and-confer.  But if it's the interrogatories

4   that they want, more time, and a deposition of the verifying

5   witness, we'll do it.

6           THE COURT:  All right.  Well, I'm -- we're not here on

7   a deposition.  I did not see anything about compelling a

8   deposition.

9           MR. ST. GEORGE:  There is nothing to compel.  Right.

10          THE COURT:  All right.  So I'm not clear on what it is

11  that you're saying on 16 and 17.  Are you saying you're --

12  you're willing to answer these?

13          MR. ST. GEORGE:  If that's -- if that is the

14  compromise position, that we will remove our objections to 16.

15  We -- we're not objecting to 15, which is the relevant

16  interrogatory.  If we respond to 16 and 17, we verify them, we

17  provide them the substantive responses, and we make that

18  witness available for a deposition in short order but adjust

19  the schedule accordingly, and that resolves the pending motion

20  to compel, then we will do that.

21          THE COURT:  Well, so you're saying you'll answ... I'm

22  not sure.  You're --

23          MR. ST. GEORGE:  Yes, we'll --

24          THE COURT:  What I hear you saying is --

25          MR. ST. GEORGE:  We will --

1          THE COURT:  -- you'll answer 16 and 17 if you don't

2     have to provide --

3          MR. ST. GEORGE:  Right.  If it's the underlying data.

4     So the requests for production essentially fall away, we

5     provide the interrogatories, we verify them, we make a witness

6     available for a deposition, and that resolves the motion to

7     compel today, with the Plaintiffs reserving their rights if

8     somehow the witness isn't knowledgeable or what have you.  If

9     that's the position that we're willing to enter into today,

10    then we'll do that.

11         Otherwise, we think we have a very principled position

12    that 16 and 17 don't relate to the class definition.  You've

13    heard an outdated quotation of Rule 26.  Likely to lead to

14    admissible evidence.  It was amended.  That's not the

15    standard.

16         THE COURT:  Right.

17         MR. ST. GEORGE:  Claims or defenses' relevance, which

18    is why the 2018 cases you've cited hold that way.

19         I'll also note we're here on our third complaint already

20    in this case, with shifting class definitions each time.  So

21    this is not like we're at the beginning of this case and have

22    our first complaint and we're hearing a new theory.

23         But, as I've mentioned, compromise.  We'll move on.  The

24    parties will resolve this motion to compel.  That's what I

25    believe I'm hearing from Plaintiff's counsel, and I think

1    that's the most efficient way to proceed.

2         MR. SOUMILAS:  So, Your Honor, looking at our

3    position, has been this for weeks, which is:  If they answered

4    all the interrogatories, we don't need the documents.  I think

5    we could get the answers one way or the other.

6         The difficulty has been is that they have not answered

7    Interrogatories 15, 16, or 17 to date.  So if the position

8    today is they will give meaningful answers -- not "None" or

9    "We can't get to it" -- and then we'll have an opportunity,

10   which is not before the Court as a motion to compel because

11   it's not there yet, but I hear Counsel offering a witness to

12   vet those answers, I think that's a reasonable position and we

13   don't need the production of tons of documents if

14   interrogatories will provide those answers.  We'd rather do it

15   that way.

16        But just the concern that I have is that I haven't seen it

17   yet and I'm a little hesitant about just, you know, agreeing

18   to that without knowing what's in the box.  But I think that's

19   a reasonable compromise.  We need either the data or the

20   answers to interrogatories, because we're looking, at the end

21   of the day, for the same thing, which is just to identify

22   these people who don't have criminal records and who had them

23   on their reports.

24        So we could do it one way or the other.

25        MR. ST. GEORGE:  Your Honor, I might suggest,

1   appending to your thoughts, that we set a deadline for a

2   response, we then set a status report or a -- I don't know how

3   Your Honor would typically handle these things, a conference

4   call or a joint submission to advise the Court, you know,

5   within ten days after that to schedule the deposition.  If

6   there are any issues with the substance of the responses,

7   we'll highlight them.

8       My strong suspicion is that the status report will say

9   that the parties have provided the information, the deposition

10  is being scheduled, and there's nothing for the Court to do at

11  that time.

12          THE COURT:  Well, I don't find status reports to be

13  that beneficial.  And --

14          MR. ST. GEORGE:  However you -- however --

15          THE COURT:  -- it's an extra step for --

16          MR. ST. GEORGE:  -- you want to handle it.

17          THE COURT:  -- the parties and their clients who bear

18  the costs.

19      In a normal case, I would say produce -- I would order

20  production within 14 days.  This is a class action, so I

21  understand that you may need a little longer.  You said you

22  would be ready to produce next week on 15.

23          MR. ST. GEORGE:  Right.

24          THE COURT:  How long do you need to produce on 16 and

25  17?

1          MR. ST. GEORGE:  You know, if we can have an extra

2    week, maybe.

3          And if, Your Honor, if it's just as -- if it's just as

4    well, you know, if we're entering into this compromise

5    position, maybe we could -- if we could agree to 15 within two

6    weeks, because I know that that's in process, and if we'd

7    agree to 16 and 17 within three weeks, that would be agreeable

8    to us.

9          And obviously, we're happy to accommodate the schedule.  I

10   know that the Plaintiff's counsel had a deadline, for

11   instance, for expert disclosures relating to class

12   certification.  We are happy to accommodate that as well, as

13   we always are in this case.  There's no intention to jam

14   anyone.

15          THE COURT:  All right.  So, 14 days for 15, and 21

16   days for 16 and 17?

17          MR. ST. GEORGE:  Yes.

18          THE COURT:  And then, once you get that -- is that

19   sufficiently soon enough?

20          MR. SOUMILAS:  That seems reasonable, Your Honor.

21   Thank you.

22          THE COURT:  All right.  And then if there are issues

23   with the production, then you can file another motion.  You

24   know, Rule 37 provides for progressive motions.  And once

25   there is an order, if you're contending that they failed to

1    comply with the order, then you move -- you move for sanctions

2    for failing to comply with the order.

3        All right.  So, given their agreement to respond to 16 and

4    17 substantively within 21 days, that moots the motion as to

5    Request #2?

6        MR. SOUMILAS:  So, I think -- I think so, Your Honor,

7    with the caveat that the Court just made, that if they don't

8    fully comply with what they just promised, we might need to be

9    back here.  But I suspect we will not be.

10       THE COURT:  All right.  All right.  So, on the

11   extension of time, that's really -- that's Judge Boyle's

12   scheduling order, but I understand that you've already

13   stipulated -- I think she typically allows you to stipulate to

14   extensions, as long as it doesn't push the big deadlines.  So,

15   is this one that the parties can stipulate to?

16       MR. ST. GEORGE:  Yes, I believe so.  So, we're

17   operating within a fairly extended overall discovery period,

18   and the last stipulation was a 30-day extension.  It didn't

19   affect the overall discovery period, because this all relates

20   to class certification.  Judge Boyle entered it the next day,

21   I believe, without any consultation.

22       So we're happy to work together to do a stipulation.  I

23   understand that that is the district judge's prerogative,

24   whether or not to do that.  But I would hope and expect, as

25   long as we are -- especially in view of this production

1  timeline, that I don't think it would be an issue.  And we've

2  never had any issues working out dates.

3         THE COURT:  What I typically do is order the

4  production even if it -- if the production will occur outside

5  of the deadline, without otherwise disturbing the deadline.

6         MR. ST. GEORGE:  Okay.

7         THE COURT:  So that the district --

8         MR. ST. GEORGE:  We'll --

9         THE COURT:  It still remains the district judge's

10 deadline, --

11        MR. ST. GEORGE:  Right.

12        THE COURT:  -- but I can say, you know, I -- you have

13 to produce this, but it has to be produced by this date, even

14 though it's past the deadline.

15        MR. ST. GEORGE:  Right.  Okay.  And we'll -- I'm sure

16 we can get a stipulation on file this week for the judge.

17        THE COURT:  All right.  So, motion to compel has been

18 resolved by agreement of the parties, and I will order

19 production of the response to Interrogatory 15 within 14 days

20 from today.  And the relevance objection is withdrawn.  That's

21 the only one that was briefed.  And so I'll order production

22 as to Interrogatories 16 and 17 within 21 days of today's

23 date.  And I always add "unless otherwise agreed by the

24 parties" to give you flexibility if anything comes up --

25        MR. ST. GEORGE:  Okay.

1          THE COURT:  -- for whatever reason.  But it has to be

2     a joint agreement.

3          MR. ST. GEORGE:  Okay.

4          THE COURT:  And then the parties will stipulate on any

5     extension.  And the motion is deemed moot as to #2, Request

6     #2.  All right.

7        I didn't see an issue over fees or anything, so there's

8     nothing left to resolve.  Is that correct?  You weren't asking

9     for fees?

10         MR. SOUMILAS:  That is correct, Your Honor.  There is

11    nothing left to resolve for -- from our perspective today.

12         THE COURT:  Okay.

13         MR. ST. GEORGE:  Same here, Your Honor.

14         THE COURT:  Okay.  If there are any future discovery

15    disputes that I will be addressing, I will be going through

16    them request by request unless they're grouped together.

17    Sometimes the objections are the same and we can group some

18    together.  And I will be addressing the objections that are in

19    the joint submission, and I'll be looking for case law from

20    both sides to help me get through it more quickly.

21         MR. SOUMILAS:  Understood, Your Honor.

22         THE COURT:  All right.  Well, thank you very much.

23    Good luck to both sides.  We are adjourned.

24         MR. ST. GEORGE:  Thank you.

25         MR. SOUMILAS:  Thank you.

1          THE CLERK:  All rise.

2       (Proceedings concluded at 9:31 a.m.)

3                      --oOo--

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20                    CERTIFICATE

21      I certify that the foregoing is a correct transcript from
   the electronic sound recording of the proceedings in the
22 above-entitled matter.

23   **/s/ Kathy Rehling**                        **02/13/2020**

24 _____     _____
   Kathy Rehling, CETD-444                     Date
25 Certified Electronic Court Transcriber

```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

INDEX

PROCEEDINGS                                              3

WITNESSES

-none-

EXHIBITS

-none-

RULINGS                                                24

END OF PROCEEDINGS                                     26

INDEX                                                  27