**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| DIANE D. JONES, individually and on behalf of herself and all others similarly situated, | ) ) ) | Civ. No. 3:19-cv-02087-B |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REALPAGE, INC. d/b/a LEASINGDESK SCREENING, | ) ) | |
| | ) | |
| *Defendant.* | | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS**

**TABLE OF CONTENTS**

I.   Introduction ......................................................................................................... 1

II.  Factual Background............................................................................................. 3

    A.   Plaintiff Consistently Proposed A Name Mismatch Class Definition .................... 3

    B.   Defendant "Misread" And Refused To Respond To Plaintiff's First Set Of Interrogatories Seeking Targeted Name Mismatch Class Data ............................. 3

    C.   Defendant Again "Misread" And Refused To Respond To Plaintiff's Revised Interrogatories Seeking Name Mismatch Class Data .............................. 4

    D.   Plaintiff's Motion To Compel and This Court's January 15, 2020 Order ............. 5

    E.   As Deposition Testimony Established, Defendant's Response To Interrogatory 15 Does Not Reflect The Information Sought ................................. 6

III. Legal Standard.................................................................................................... 8

IV.  Argument ............................................................................................................ 9

    A.   Defendant Should Be Compelled To Produce A Correct Response to Plaintiff's Interrogatory 15 And A Competent Witness To Testify Regarding The Process Used To Derive Its Response........................................... 9

    B.   Defendant Should Be Compelled To Produce The Dataset Used To Derive Its Response to Interrogatory 15 ......................................................................... 10

    C.   This Court Should Impose Sanctions On Defendant For Its Repeated Failure to Provide Available And Relevant Discovery........................................ 12

    D.   The Case Deadlines In This Matter Should Be Extended Until After Defendant Produces The Requested Data............................................................ 14

V.   Conclusion ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chiasson v. Zapata Gulf Marine Corp.*,
    988 F.2d 513 (5th Cir. 1993)................................................................................. 8

*Childs v. Resident Collect, Inc.*,
    No. 3:15-CV-403-L, 2017 WL 3980621 (N.D. Tex. Sept. 11, 2017)............................. 13

*Coane v. Ferrara Pan Candy Co.*,
    898 F.2d 1030, 1033 (5th Cir. 1990) .............................................................. 8

*Dartson v. Villa*,
    No. 3:17-cv-569-M, 2018 WL 3528721 (N.D. Tex. Apr. 2, 2018) ................................... 9

*Lincoln General Insurance Co. v. U.S. Auto Insurance Services, Inc.*,
    No. 3:16-cv-3198-B, 2018 WL 5885543 (N.D. Tex. Aug. 31, 2018) ......................... 9, 10

*Mary Kay Inc. v. Reibel*,
    No. 3:17-cv-2634-D, 2019 WL 1128959 (N.D. Tex. Mar. 11, 2019) .............................. 13

*Pressey v. Patterson*,
    898 F.2d 1018 (5th Cir. 1990) ........................................................................ 9

*S.E.C. v. Kiselak Capital Group, LLC*,
    No. 4:09-CV-256-A, 2012 WL 369450 (N.D. Tex. Feb. 3, 2012) ................................... 9

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
    685 F.3d 486 (5th Cir. 2012) ......................................................................... 9

*Truck Treads, Inc. v. Armstrong Rubber Co.*,
    818 F.2d 427 (5th Cir. 1987) ........................................................................ 11

**Rules**

Fed. R. Civ. P. 37(b) ...................................................................................... 8, 11, 12

Fed. R. Civ. P. 37(d) ...................................................................................... 8, 9, 12

I.      **Introduction**

Regrettably, Plaintiff Diane D. Jones is left with no recourse other than filing this second

motion to compel on the same class composition discovery that formed the basis of her previous

motion to compel with this Court, filed on December 6, 2019.  Doc. 79.  As will be discussed in

detail below, Defendant RealPage Inc. has obstructed Plaintiff's efforts to identify the "name

mismatch" class that she seeks to represent in this matter for over seven months now, and despite

this Court's Order of January 15, 2020.  Doc. 97.[1]

Plaintiff now moves for a second time to obtain discovery identifying name mismatch class

members – Interrogatory 15 and records responsive to Document Request 2.  Because this

discovery dispute has dragged on unnecessarily for many months and has now required two

motions to compel and (thus far) one hearing before this Court, Plaintiff also seeks sanctions

against Defendant.

In her previous motion to compel with this Court, Plaintiff sought, *inter alia*, the answer to

Interrogatory 15 and the production responsive to Document Request 2.  Docs. 79-81, 93.

Interrogatory 2 is aimed at identifying name mismatch tenant applicants such as Plaintiff, where

the criminal record on their RealPage background report did not match their name.  Doc. 87-2 at

071.  Document Request 2 asks for Defendant's records from which Plaintiff could derive the

---

[1]      "Name mismatch" is used here as a shorthand for one of classes that Plaintiff seeks to
represent in her Second Amended Complaint, Doc. 66 at ¶ 38(a), the operative complaint in this
matter.  Plaintiff has sought to represent this class from the beginning of this litigation.  *See* Doc.
1 at ¶ 34.  This class would be comprised of tenant applicants such as Plaintiff for whom Defendant
prepared a background report with a criminal record on it even though the name on the criminal
record does not match the name of the tenant applicant.  In Plaintiff Diane D. Jones's case,
Defendant placed a criminal record on her background report to a prospective landlord with a drug
crime committed by a "Toni Taylor."  Neither Toni Taylor nor any of Taylor's 13 alias names
match "Diane Jones."  Indeed, the closest alias name was "Tina Jones."  Plaintiff contends in this
case that such imprecise name matching of criminal records to tenant applicants does not assure
reporting with "maximum possible accuracy," as required by the Fair Credit Report Act ("FCRA")
at section 1681e(b), 15 U.S.C. § 1681e(b).

composition of that same class.   At the hearing on the previous motion, Defendant stated that it would answer Interrogatory 15 (despite months of previous objections and meaningless answers) so long as it did not have to produce documents responsive to Document Request 2.  Doc. 101 at 17:9-13, 19:3-10.  Plaintiff agreed as a compromise and this Court directed Defendant, *inter alia*, to answer Interrogatory 15.  Doc. 97.

Defendant provided an answer to Interrogatory 15 on February 15, 2010, but following a deposition of the verifier of the interrogatory it became obvious that Defendant had given a bogus answer, later feigning that it "misunderstood" the interrogatory, as it had allegedly done for months.  That excuse is not realistic given the context of this dispute.  Indeed, Defendant's bogus answer was calculated in a way that would include within the class persons who *did not* have a name mismatch.  The way Defendant answered would include situations where the criminal's name could actually match the tenant applicant's name character-for-character – so a record where "Diane Jones" would be matched with "Diane Jones." There can be no justifiable basis for thinking that Plaintiff was seeking actual name matches, rather that *mismatches*, with this interrogatory. Defendant's answer, were it not uncovered to be bogus during the deposition, would have completely undermined Plaintiff's ability to certify an appropriate class here, and would have allowed Defendant to baselessly argue that the "name mismatch" class contained some or many names which actually matched.

Defendant now says that, at the eleventh hour, it will provide a purportedly correct response to Interrogatory 15, but has still not done so as of the time of this filing.  Plaintiff seeks to have that response compelled by court order. Plaintiff also seeks to corroborate that response, which is absolutely necessary given all of Defendant's previous gamesmanship and misdirection on this subject. Plaintiff therefore also seeks the documents (responsive to Document Request 2) and a

deposition of the person who could truly verify the correct response to Interrogatory 15.  Defendant

has refused. And so, as discussed below, Plaintiff now moves this Court again for the same written

discovery as the previous motion to compel (Interrogatory 15 and Document Request 2), for a

deposition of the verifier of Interrogatory 15, and for sanctions.   It has now become obvious that

without the Court's involvement, Defendant will simply not provide information which can

correctly identify the "name mismatch" class that Plaintiff seeks to represent in this class action.

II.      **Factual Background**

   **A.  Plaintiff Consistently Proposed A Name Mismatch Class Definition**

Since the outset of this case, Plaintiff has made clear that she seeks to represent similarly

situated consumers who were affected by RealPage's imprecise name matching procedures.  In

her original complaint, she sought to represent a class of consumers whose first and last name did

not match the first and last name of the offender listed on the criminal record:

> All persons residing in the United States and its Territories, beginning five years
> prior to the filing of this Complaint and continuing through the resolution of the
> action, about whom RealPage furnished a consumer report which included one or
> more items of criminal record information for which the first and last name of the
> offender did not match the first and last name of the person who was the subject
> of the report.

Compl., Doc. 1 at ¶ 34.  Plaintiff has included this definition in each of the subsequent complaints.

Am. Compl., Doc. 12 at ¶ 45; 2d Am. Compl., Doc. 66 at ¶ 38(a).

   **B.  Defendant "Misread" And Refused To Respond To Plaintiff's First Set Of
        Interrogatories Seeking Targeted Name Mismatch Class Data**

Plaintiff sought to identify this class in her interrogatories by tailoring a request to account

for both offender name mismatches and also alias name mismatches.  Specifically, in June 2019,

Plaintiff served her Interrogatory 6, which sought

> the total number of consumers with an address in the United States and its
> Territories about whom you sold a report for each calendar year between March 6,
> 2014 and the present which included one or more items of criminal record

information, for which the first and last name of the individual who was the subject of the report was not a character for character match to either the Name of the offender or any of the alias names list on the criminal record.

87-2 at 063.

In its July 18, 2019 interrogatory responses and supplemental responses provided thereafter, RealPage stated that the number of consumers meeting this criteria was "none" despite the fact that Plaintiff, for one, obviously meets this criteria. Doc. 87-2 at 063-064. After the parties met and conferred regarding this request, Defendant took the position that it was not able to provide a response from its records. Defendant took this position with respect to several other interrogatories in this matter, including those seeking the number of disputes Defendant received and removed a "nonmatch" record as the result of the dispute. *See* Doc. 87-2 at 020-022 (Defendant's July 18, 2019 Responses to Plaintiff Arnold's Interrogatories 4-6). Dispute records existed, those with a confirmed "nonmatch" were ascertainable, and thus Defendant produced such discovery after Plaintiff initiated motion to compel proceedings in the Northern District of Ohio, where this case was pending originally. *See* Docs. 25, 28. These proceedings also referenced Jones Interrogatory 6, among others, and while that dispute was pending, the case was transferred to the Northern District of Texas. *Id.*; Doc. 41.

### C. Defendant Again "Misread" And Refused To Respond To Plaintiff's Revised Interrogatories Seeking Name Mismatch Class Data

Following transfer, Plaintiff served revised interrogatories in an attempt to make them as clear and understandable as possible, and to limit them as closely as possible to Plaintiff's circumstances. These interrogatories, including Interrogatory 15, were served on October 23, 2019. Doc. 87-2 at 002-005. Interrogatory 15 is substantially similar to Interrogatory 6, and sought:

> the total number of consumers about whom you provided a consumer report to a
> third party from March 6, 2017 to the present which included one or more items of

4

criminal record information for which the Name of the individual who was the subject of the report was not a character for character match to neither the Name of the offender or any of the alias Names listed on the criminal record.

Doc. 87-2 at 053.  Nonetheless, in its November 22, 2019 responses, Defendant once again stated that the number of consumers meeting the criteria of Interrogatory 15 was "none," and that it was unable to provide responses to the similar Interrogatories 16 and 17.  *Id.* at 053-054.  When Plaintiff once again explained in detail during meet and confer discussions exactly what was sought by Interrogatory 15 (reports which, like that about Plaintiff, contained a criminal record where neither the offender name nor any alias name(s) was a character for character match) Defendant stated that even if properly interpreted, it would state that it was unable to provide a response to Interrogatory 15.

### D.  Plaintiff's Motion To Compel and This Court's January 15, 2020 Order

Defendant's repeated refusal to answer Plaintiff's interrogatories led to Plaintiff's December 6, 2019 Motion to Compel with this Court.  Docs. 79-81, 93.  Plaintiff made clear in the Motion to Compel and subsequent Joint Statement of Discovery Dispute that Interrogatory 15 was aimed at identifying "reports with characteristics similar to the report sold and Plaintiff – indicia that the criminal record included on the report did not pertain to the report's subject."  Doc. 93 at p. 6.  Plaintiff further clarified exactly what Interrogatory 15 is seeking, stating that it "is specifically targeted to identify consumers who are similarly situated… the name 'Diane Jones' is not a character-for-character match to 'Toni Taylor' or to any of the alias names listed" on the report at issue, which listed 13 different alias names, none of which matched "Diane Jones" character for character.  Doc. 94 at p. 6.  Plaintiff also expressed the nature of the information requested on the record during the January 15, 2020 hearing with the Court.  Doc. 101 at 12:7-17.

Plaintiff also sought documents responsive to Document Request 2, which would allow her to derive the same class herself from Defendant's business records.  Doc. 80; Doc. 88 at p. 12-14.

In discussions regarding the Joint Statement of Discovery Dispute as late as December 19, 2019, Defendant continued to state that it might be unable to derive a response to Interrogatory 15 from its business records.  Then, at the January 15, 2020 hearing, Defendant indicated for the first time that it was in fact able to provide a substantive response to Interrogatory 15, and indeed had "preliminary data" available.  Doc. 101 at 9:2-4. Because Plaintiff agreed that a proper answer to Interrogatory 15 and a deposition of the verifier of this answer should be sufficient, she agreed that a production responsive to Document Request 2 would not be necessary at that time.  *Id.* at 20:2-24.

This Court issued an Order on January 15, 2020 granting the motion to compel a response to Interrogatory 15.  Doc. 97.  This Court denied as moot Plaintiff's motion with request to Document Request 2, with the right to file a progressive motion to compel if necessary.  *Id.*; Doc. 101 at 22:22-23:2.

> **E.  As Deposition Testimony Established, Defendant's Response To Interrogatory 15 Does Not Reflect The Information Sought**

Defendant provided its response to Interrogatory 15 on February 5, 2020, following an agreed one-week extension beyond the time permitted by the Court's order on the discovery dispute. Ex. 1 (Appendix 007).  The response went from "none" to **REDACTED**.  *Id.*  Plaintiff then took the deposition of Manjit Sohal, the individual who verified the supplemental response to Interrogatory 15, regarding the steps taken to derive the figures provided.

Mr. Sohal's testimony revealed that Defendant, despite its protestations, was able to derive an answer from its records with relatively little burden. **REDACTED**

Ex. 2, Tr. of Sohal Dep. at 37:8-13 (Appendix 016).  **REDACTED**

**REDACTED** *Id.* at 24:10-19,

38:24-39:7 (Appendix 014-018).

More importantly, Mr. Sohal's testimony also revealed that Defendant entirely failed to answer the question posed by Interrogatory 15. As Plaintiff repeatedly made clear, Interrogatory 15 sought the number of individuals for whom the name of the tenant applicant who was the subject of the report was **not** a character for character match to any of the names on the criminal record placed on the report – the offender's name or any of the alias names. **REDACTED**

Ex. 2 at 48:22-50:9 (Appendix 020-022).

**REDACTED**

Ex. 2 at 71:4-11 (Appendix 024).  In other words, the bogus answer to the interrogatory was calculated in such a way as to include exact name matches – situations, *not* sought by Plaintiff, where "Diane Jones" matches with "Diane Jones."

Defendant's reading of Interrogatory 15 ignored the word "neither" and the phrase "any of the alias Name**s**." It is simply meaningless to include as part of the answer to Interrogatory 15 situations where the name of the offender is a match but one alias is not.  It is also meaningless to include situations where a single alias does not match, but one or more other alias names do match, but that is precisely what Defendant did.

This "misreading" by Defendant cannot be viewed as innocent, after months of conferring about this subject matter, motion practice, and a hearing before the Court.  There can be no question that Plaintiff is seeking to represent a class of tenant applicants with *nonmatching* criminal records on their RealPage background reports, not people whose names do match character-for-character to a name on the criminal record.

III.    **Legal Standard**

The Federal Rules of Civil Procedure governing discovery require parties to provide truthful and relevant evidence in order to promote the efficient and fair resolution of litigation. *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993).  "The discovery rules are designed to aid in the expedient flow of litigation so that meritorious disputes may be heard and resolved in a reasonable period of time and at a reasonable cost to the parties. *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1033 (5th Cir. 1990). Counsel have "an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1486 (5th Cir. 1990).

Parties which fail to properly respond to discovery may be subject to sanctions, even in the absence of an order compelling a response.  *See* Fed. R. Civ. P. 37(d)(1)(A)(ii) ("[a] court may order sanctions if a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections or written response.");[2] Fed. R. Civ. P. 37(b)(2)(A); *Lincoln General Insurance Co. v. U.S. Auto Insurance Services, Inc.*,

---

[2] "Rule 37(d) addresses sanctions for failing to answer interrogatories or to respond to request for production. It has been interpreted to encompass responses which are evasive or misleading." *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1031 n.1 (5th Cir. 1990).

No. 3:16-cv-3198-B, 2018 WL 5885543, at *2 (N.D. Tex. Aug. 31, 2018) (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012)).

In addition to the sanctions set forth in Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii), "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). A district court has "broad discretion" under Rule 37(b) "to fashion remedies suited to the misconduct." *Lincoln*, 2018 WL 5885543, at *3 (quoting *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990)). The sanction should be "the least severe sanction adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances." *Id.* A finding of "bad faith" or "willful misconduct" is normally required to support the most severe remedies under Rule 37(b), such as striking pleadings or dismissal of a case. *Id.* "Lesser" sanctions do not require such a finding and the lack of "willful, contumacious, or prolonged misconduct [does not] prohibit[] all sanctions." *Dartson v. Villa*, No. 3:17-cv-569-M, 2018 WL 3528721, at *7 (N.D. Tex. Apr. 2, 2018).

"The burden rests on the party who failed to comply with the order to show that an award of attorney's fees would be unjust or that the opposing party's position was substantially justified." *Lincoln*, 2018 WL 5885543, at *2 (quoting *S.E.C. v. Kiselak Capital Group, LLC*, No. 4:09-CV-256-A, 2012 WL 369450, at *5 (N.D. Tex. Feb. 3, 2012)).

## IV.    Argument

### A.    Defendant Should Be Compelled To Produce A Correct Response to Plaintiff's Interrogatory 15 And A Competent Witness To Testify Regarding The Process Used To Derive Its Response

For all the reasons the Court previously ordered Defendant to provide a response to Interrogatory 15, it should require RealPage to conduct the query again, this time properly applying

9

the criteria in the Interrogatory to identify reports that fit the same profile as Plaintiff Jones. Namely, the response should identify those reports where the name of the individual who is the subject of the report is not a character for character match to the offender, and also does not match to any of the alias names listed on the report for the offender. Defendant has indicated that it is willing to provide a revised response to Interrogatory 15, but has not yet done so.

In addition to providing a revised, correct response that addresses the actual data requested, Defendant should be compelled to produce a witness with knowledge regarding the design of the query conducted. Without careful questioning of Mr. Sohal, Plaintiff would have never discovered that Defendant's supplemental answer to Interrogatory 15 was bogus. Had Plaintiff not taken that deposition, she would have been severely prejudiced at the motion for certification stage, because Defendant would have set up its own typicality and commonality defense through its misleading response. Rather than a class of individuals with a name mismatch problem similar to Plaintiff's, Defendant would have argued that the individuals identified in its response to Interrogatory 15 included those whose names were actually an exact match to the offender. Plaintiff therefore respectfully requests that this Court also require Defendant to produce an appropriate witness to testify regarding a revised response, to ensure that any revised response in fact reflects the information sought.

B.      **Defendant Should Be Compelled To Produce The Dataset Used To Derive Its Response to Interrogatory 15**

In light of this Court's "broad discretion" to fashion an appropriate remedy for discovery misconduct, Plaintiff respectfully submits that the remedy here should include an order requiring Defendant to provide the underlying consumer reports and already-extracted data at issue here, so that Plaintiff can assure any revised answer to Interrogatory 15 is correct. *See Lincoln*, 2018 WL

10

5885543, at *3 ("district court has "broad discretion" under Rule 37(b) "to fashion remedies suited to the misconduct.").

**REDACTED**

Ex. 2 at 24:10-19, 38:24-39:7 (Appendix 014-018). Although it ran the *wrong* query, there is no question that Defendant is, and has always been, capable of providing a response to Interrogatory 15, and the other interrogatories Plaintiff has served seeking to identify the composition of the name mismatch class here. The only explanation for Defendant's sustained refusal to provide this information appears to be a systematic and intentional effort to frustrate the taking of relevant discovery. Furthermore, Plaintiff's consistent and repeated efforts to make abundantly clear exactly the information she sought through Interrogatory 15 demonstrate that any argument that Defendant "misunderstood" the question lacks credibility.

The documents responsive to Plaintiff's Document Request 2 (Doc. 87-2 at 071) take on added importance now that Defendant has played fast and loose with the response to Interrogatory 15, even after a Court order requiring it to provide the correct response. In addition to allowing Plaintiff to confirm an accurate response, the documents may also be used to verify that none of the reports sold about class members here include a real match to a criminal record. Indeed, the documents can be used to rebut any suggestion that class members for the name mismatch class would not have an FCRA section 1681e(b) claim.

The Federal Rules permit a range of severe sanctions for repeated bad discovery behavior such as that engaged in by Defendant here, which include directing that certain facts be taken as established, or default judgment. *See* Fed. R. Civ. P. 37(b). Courts have approved such severe sanctions in instances where a party provided "grossly inadequate" or "evasive" interrogatory

**Redacted Portions Proposed to be Sealed**                    11

responses despite the existence of a court order on the subject. *See Truck Treads, Inc. v. Armstrong Rubber Co.*, 818 F.2d 427, 430 (5th Cir. 1987) (affirming dismissal of the action with prejudice after repeated discovery misconduct). No violation of a court order is necessary to impose sanctions under Rule 37(b). *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

Here, although Defendant's evasions and refusals to respond demonstrate a level of misconduct which warrants a severe sanction, Plaintiff seeks the more modest remedy of production of relevant confirmatory data, as well as the attorneys' fees and expenses set forth in section IV.C. below.

At bottom, Defendant's representations regarding the information given in response to Plaintiff's class composition discovery requests, even when verified in writing, cannot be relied upon. Therefore, Plaintiff respectfully submits that part of the consequence for Defendant's failure to provide the correct response to Interrogatory 15 should include an order requiring Defendant to produce of the full dataset extracted from Defendant's database and used to conduct the query. This will allow Plaintiff to review and independently test the requested inquiry to assure that any provided response is valid. Given Defendant's history of misrepresentations and purported "misunderstandings" regarding the data requested, production of the underlying reports and data is a reasonable and proportionate step that will serve the interests of justice in this matter by ensuring that the class composition data is accurate. Defendant continues to object to providing this underlying data, and Plaintiff therefore requests that the Court order Defendant to produce it.

### C.   This Court Should Impose Sanctions On Defendant For Its Repeated Failure to Provide Available And Relevant Discovery

Both Rule 37(d)(3) and Rule 37(b)(2) permits a court to require a party found to have committed discovery misconduct "to pay the reasonable expenses, including attorney's fees,

caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3); Fed. R. Civ. P. 37(b)(2)(C). Courts within this District regularly impose sanctions on parties failing to provide proper responses to compelled discovery in the form of attorneys' fees and expenses incurred in connection with the failure. *See Mary Kay Inc. v. Reibel*, No. 3:17-cv-2634-D, 2019 WL 1128959 (N.D. Tex. Mar. 11, 2019); *Childs v. Resident Collect, Inc.*, No. 3:15-CV-403-L, 2017 WL 3980621, at \*13-14 (N.D. Tex. Sept. 11, 2017). In *Mary Kay, Inc.*, the defendant failed to provide a complete response to an interrogatory, and the court granted a motion to compel such a response, finding that:

> [d]iscovery by interrogatory requires candor in responding and that [a] partial answer by a party reserving an undisclosed objection to answering fully is not candid," but "evasive. The fact that an interrogatory calls for a thorough response— one that will take time and effort to answer—does not make it improper. . . [The responding party] must pull together a verified answer by reviewing all sources of responsive information reasonably available to him and providing the responsive, relevant facts reasonably available to him.

2019 WL 1128959 at \*1 (citations and internal quotation marks omitted). When the defendant failed to comply with the order compelling a response, the court imposed "the least severe sanctions adequate to achieve the proper functions of Rule 37(b)(2)," which included paying for all fees and costs for preparing for and attending a second deposition about the then-unproduced documents and fees and expenses incurred in preparing the sanctions motions. *Id.* at \*19.

After refusing for over seven months to provide class composition discovery because Defendant allegedly could not identify the requested information from its database, it turns out that Defendant is able to do so with a query that takes only a few days to construct and only a matter of minutes to run. Defendant's failure to respond has no justification whatsoever, much less a justification substantial enough to avoid the imposition of sanctions. As a result of Defendant's repeated refusal to respond to Plaintiff's class composition discovery requests in this matter, Plaintiff has expended substantial additional resources on two motions to compel and

13

associated briefing, travel to a hearing in Dallas, follow up discovery, the instant motion to compel, and further follow up discovery.  Plaintiff therefore respectfully requests that this Court impose sanctions in the form of payment of the following:

- Plaintiff's attorneys' fees for preparing the original motion to compel and associated Joint Statement of Discovery Dispute (Docs. 79-81, 93-94);

- Plaintiff's attorneys' fees and expenses for preparation, travel and appearance at the January 15, 2020 hearing before this Court;

- Plaintiff's attorneys' fees for time expended in preparing the instant motion and any Joint Statement to be submitted;

- Plaintiff's attorneys' fees and expenses time for travel and appearance at any future hearing this Court may hold in connection with the instant motion.

- Plaintiff's future attorneys' fees and expenses associated with the deposition of the verifier of a further supplemental response by RealPage to Plaintiff's Interrogatory 15.

As set forth in the attached Declaration of John Soumilas, Plaintiff's counsel have, to date, spent 91.6 hours and incurred expenses of $1,146.95 in connection with the matters listed above.[3] Plaintiff is prepared to provide detailed time entry and expense records documenting this sanction if deemed appropriate by the Court.

**D.      The Case Deadlines In This Matter Should Be Extended Until After Defendant Produces The Requested Data**

In the event this Court orders Defendant to produce the extracted data used to derive its response to Interrogatory 15 in order for Plaintiff to identify class members through her own review, Plaintiff respectfully requests that the deadlines related to expert discovery for class certification purposes be extended accordingly.  As noted in the original motion to compel,

---

[3]      This figure includes only the expenses and attorney time incurred by Plaintiff's lead counsel at Francis Mailman Soumilas P.C.  Although other firms have incurred attorney time and expenses in connection with Plaintiff's efforts to obtain class composition discovery here, Plaintiff's request for sanctions does not include this time or expenses.

Plaintiff has retained a computer system and database expert with experience in searching data sets, and anticipates providing the extracted data to this expert for search and analysis. Plaintiff therefore requests that the deadline for disclosure of affirmative expert reports in this matter be extended to 30 days after the date of Defendant's production, and that the remaining case deadlines be extended accordingly.

## V.        Conclusion

Defendant's repeated failure to provide proper responses to Plaintiff's targeted class composition discovery requests, despite its ability to derive the requested information with relatively little burden, and in the face of this Court's order requiring it to do so, is improper and warrants a further order to compel and for sanctions. For the reasons set forth above, Plaintiff respectfully requests that this Court order Defendant to provide the correct response to Interrogatory 15, produce the already extracted reports and data used to derive this response, and a knowledgeable witness for testimony about the process it used to do so. Plaintiff further requests that this Court impose sanctions on Defendant as outlined above. Finally, Plaintiff requests that this Court extend class discovery in this matter until after Defendant has made a complete production, and that the remaining case management deadlines be extended accordingly.

Respectfully submitted,

*/s/ John Soumilas*
James A. Francis
John Soumilas
Lauren KW Brennan
**Francis Mailman Soumilas, P.C.**
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000

Michael A. Caddell
Cynthia B. Chapman
Amy E. Tabor
**Caddell & Chapman**
628 East 9th Street
Houston, TX 77007
T: 713.751.0400
E. mac@caddellchapman.com
E: cbc@caddellchapman.com
E: aet@caddellchapman.com

Jim Flegle
**Loewinsohn Flegle Deary Simon LLP**
12377 Merit Drive, Suite 900
Dallas, TX 75251
T: 214.572.1700
E: jimf@lfdslaw.com

Edward Y. Kroub
**Cohen & Mizrahi LLP**
300 Cadman Plaza West, 12th Floor
Brooklyn, NY  11201
T:  929/575-4175
F: 929/575-4195
E: edward@cml.legal


*Attorneys for Plaintiff Diane D. Jones*

Dated:  February 21, 2020

16