IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JONES, | ) | **Case No. 3:19-cv-02087-B** |
| | ) | |
| Plaintiff, | ) | Dallas, Texas |
| | ) | March 19, 2020 |
| v. | ) | 10:00 a.m. |
| | ) | |
| REALPAGE, INC., | ) | MOTION TO COMPEL AND FOR |
| | ) | SANCTIONS (#103) |
| Defendant. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE IRMA CARRILLO RAMIREZ,
UNITED STATES MAGISTRATE JUDGE.

TELEPHONIC APPEARANCES:

For the Plaintiff:          John Soumilas
                            FRANCIS MAILMAN SOUMILAS, P.C.
                            1600 Market Street, Suite 2510
                            Philadelphia, PA  19103
                            (215) 735-8600

For the Plaintiff:          Donna Lee
                            LOEWINSOHN FLEGLE DEARY SIMON,
                              LLP
                            12377 Merit Drive, Suite 900
                            Dallas, TX  75251
                            (214) 572-1700

For the Defendant:          Timothy James St. George
                            TROUTMAN SANDERS, LLP
                            1001 Haxall Point
                            P.O. Box 1122
                            Richmond, VA  23218
                            (804) 697-5410

Recorded by:                Marie Castañeda
                            UNITED STATES DISTRICT COURT
                            1100 Commerce Street, Room 1452
                            Dallas, TX  75242-1003
                            (214) 753-2167

Transcribed by:                Kathy Rehling
                               311 Paradise Cove
                               Shady Shores, TX   76208
                               (972) 786-3063

                   Proceedings recorded by electronic sound recording;
                      transcript produced by transcription service.

1      <u>DALLAS, TEXAS - MARCH 19, 2020 - 10:01 A.M.</u>

2          THE COURT:  Good morning.  We are on the record in the

3      matter of Diane Jones versus RealPage.  This is Civil Action

4      3:19-cv-2087-B.  Before the Court this morning is -- I'm

5      waiting for it to pull up on my computer -- the Motion to

6      Compel and for Sanctions filed by the Plaintiff on February

7      21st, 2020.

8         Who do I have on the phone with me, please, starting with

9      the Plaintiff's side?

10         MR. SOUMILAS:  Judge Ramirez, good morning.  My name

11     is John Soumilas of Francis, Mailman, Soumilas, P.C., for the

12     Plaintiff, Diane D. Jones.

13         THE COURT:  All right.

14         MS. LEE:  Good morning, Your Honor.  This is Donna

15     Lee.  I am with the law firm Loewinsohn Flegle Deary Simon,

16     also for the Plaintiff.

17         MR. ST. GEORGE:  And good morning, Your Honor.  This

18     is Timothy St. George, counsel for RealPage, Inc., attending

19     for the Defendant.

20         THE COURT:  All right.  Was there anyone else for the

21     Plaintiff other than Mr. Soumilas and Ms. Lee?

22         MR. SOUMILAS:  Not for us, Your Honor.

23         THE COURT:  Okay.  And then, for the Defense?  Do we

24     only have Mr. St. George for the Defense?

25         MR. ST. GEORGE:  Yes, Your Honor.

1          THE COURT:  All right.  Because we're on the

2     telephone, and to keep this orderly, and because sometimes

3     there's a delay, I'm going to call on each side separately and

4     ask questions, and then I'm going to ask that when you're

5     finished with your answer if you let me know that that's all.

6     And then I'll call on the other side.  And that way we don't

7     have anyone talking over anyone.  The hearing is being

8     recorded.  I want to be sure we keep the record clear.  And

9     sometimes it's difficult to do that in a telephonic

10    conference.

11        All right.  I've had an opportunity to review the motion,

12    the appendices, the briefs, as well as the response.  So I

13    have questions for both sides.  Let's see.  Mr. St. George, I

14    have Interrogatory No. 5 in front of me.  And while I will

15    admit that I had to read it several times to make sure that I

16    understand it, I'm unclear as to the misunderstanding here.  I

17    agree with you that it says "either," not "neither," but I

18    can't see that that distinction makes a difference.

19          MR. ST. GEORGE:  Would you like me to respond, Your

20    Honor?

21          THE COURT:  I would, please.

22          MR. ST. GEORGE:  So, Your Honor, looking at the

23    interrogatory, it's clearly disjunctive, so it says it's not a

24    character-for-character match to either the name of the

25    offender or any of the alias names listed on the criminal

1   record.

2       So when we look at that interrogatory, taking the plain-

3   text interpretation of it, it's either the name of the

4   offender, which is the offender that is listed on the criminal

5   record, or any of the alias names, or not a character-for-

6   character match.  That is how we responded to the

7   interrogatory.  Because it was disjunctive and it used the

8   word "any," that -- it signaled to us, based on its plain

9   text, that it was looking for the name of the offender not

10  matching or one or more of the alias names not matching.

11      Now, in order to modify the interrogatories to have been

12  exclusive in the way that Plaintiff's counsel evidently

13  intended to draft it, it would have had to say -- it would

14  have had to say one of two things, essentially.  It would have

15  to have been neither -- a character-for-character match to

16  neither the name of the offender nor any of the alias names,

17  or it would have to say either the name of the offender or

18  none of the alias names.  If either one of those had -- those

19  interrogatories had been propounded, then the answer would

20  have been different.  But that is how we read the

21  interrogatory based on the plain text of how it was

22  propounded.  Disjunctive and the plain meaning of term "any,"

23  meaning one or more, as supported by some of the authority

24  that we cited to you in our memorandum.

25              THE COURT:  All right.  So you're saying that -- I'm

1  sorry, were you done?

2          MR. ST. GEORGE:  Yes, Your Honor.  I'm sorry.

3          THE COURT:  All right.  So you're saying you looked at

4  it as it doesn't match either the name or it doesn't match any

5  of the aliases.  So if it matched the name but none of the

6  aliases, that was included?

7          MR. ST. GEORGE:  That would have been included, yes,

8  among others.

9          THE COURT:  As I read Mr. -- I'm sorry.  Were you

10  done?

11          MR. ST. GEORGE:  Yes, Your Honor.

12          THE COURT:  Okay.  As I read Mr. Sohal's deposition,

13  there were -- there were records included for people for whom

14  some of -- well, this says "any of the alias names."  It

15  doesn't match -- if we take out -- let's -- because, to take

16  your reading of it, let's just take out name of the offender

17  and look at the second clause, if it truly is disjunctive and

18  we're just looking at the second clause, if the subject of the

19  report was not a character match to any of the alias names,

20  that seems inconsistent with what Mr. Sohal said, that there

21  were records for people for whom there was a match to one of

22  the alias names.

23          MR. ST. GEORGE:  Right.  So the way that Mr. Sohal

24  interpreted the interrogatory was to take the word "any" and

25  to use its plain text to say, "one or more."  So if we had two

alias names, and one of the alias names did not match, then

that was included within the universe of reports that we

deemed to be responsive to the interrogatory.  Just like

asking, you know, if you were to say, have, you know, any of

you, you know, collectively speaking to a group of people, you

know, gone to New York City, you know, the plain meaning of

the term "any" meaning one or more, that's how it was

interpreted by Mr. Sohal and that's how it was responded.  Or,

and that's how it was disclosed in the deposition, you know,

clearly, to have been responded to by RealPage.

I'm done speaking, Your Honor.

THE COURT:  Okay.  If there was any question as to

what this interrogatory meant, why wasn't that addressed at

the initial face-to-face conference?

MR. ST. GEORGE:  It didn't come up, Your Honor.  There

was no -- frankly, we didn't think the interrogatory was

unclear.  But in terms of the meet-and-confer discussions on

this specific issue, whether "any" was, within the context of

the interrogatory, intended to mean "none," to be exclusive,

that's just not something that was ever addressed during any

of the meet-and-confers.

I will note that, you know, in our objections we did lodge

an objection that we didn't believe that this interrogatory

synced up with the class definition, but as -- and notified

Plaintiff's counsel as such in our objections.  But that

1   wasn't an objection that they ever asked to have us meet-and-

2   confer on.  Instead, it was simply -- the only meet-and-confer

3   discussions that occurred surrounded the meaning of the term

4   "name" and how that was being interpreted.  There wasn't any

5   discussion further about whether "any" was intended to mean

6   "none" or whether or not they actually intended to say

7   "neither/nor," is just not an issue that came up.  And I was

8   involved in all of those meet-and-confer discussions, Your

9   Honor.

10          And I'm done speaking.

11          THE COURT:  It's -- I'm trying to pull up the

12   objection to look at the specificity of the vagueness

13   objection.  But if it is the Defendant's burden to produce and

14   they're -- it contends that the question is vague, isn't it

15   your burden to ask what exactly is being requested as part of

16   the face-to-face?

17          MR. ST. GEORGE:  Well, to be clear, we didn't believe,

18   Your Honor, that the question was vague at all.  I mean, this

19   was not -- this is not even an issue that was discussed.

20          You know, the way that the -- the interrogatory could have

21   been drafted in either way that I described.  In our mind, it

22   was actually asking for an exclusive list of alias exclusions,

23   but we did not object to the interrogatory as being vague.  We

24   still do not object to the interrogatory as being vague as it

25   was drafted.

1          We did object to the interrogatory as not tracking the

2    class definition and objecting on relevance grounds for that

3    basis.  But pursuant to the compromise that we reached at the

4    last oral argument in January, we agreed to respond to that

5    interrogatory and 16 and 17 as part of the deal.

6          So, just to be clear, we don't regard this interrogatory

7    as vague.  We regard it -- we regard it as actually clear in

8    terms of what was being asked, and the disjunctive nature of

9    the request and the plain meaning of the term "any."  So that

10   was our position.  And that's not why it came up.  And during

11   those meet-and-confer discussions, we discussed the relevance

12   objection, but ultimately, as you know, during the oral

13   argument, the parties reached a compromise on that.  Not

14   withdrawing that objection, but -- or not, you know, sort of

15   mooting that objection for purposes of anything having to do

16   with class certification, but for purposes of discovery, just

17   withdrawing it and providing the response.

18         I'm done with my answer.

19              THE COURT:  All right.  Now, the email in your

20   submission says that a new -- that you would agree to provide

21   a new response.  That was email of February 19th at Page 13 of

22   your appendix, which is Document 117.

23              MR. ST. GEORGE:  The February -- the February 19th

24   email, Your Honor?

25              THE COURT:  Yes.

1          MR. ST. GEORGE:  Is that what you're referencing?

2          THE COURT:  Yes.

3          MR. ST. GEORGE:  Okay.

4          THE COURT:  Yes.

5          MR. ST. GEORGE:  Yes, Your Honor.

6          THE COURT:  You offered to provide a new response.

7     Has a new response been provided?

8          MR. ST. GEORGE:  It has not been provided as of yet.

9     The analysis has been run.  But because Plaintiff's counsel

10    would not agree that that would be sufficient, it hasn't been

11    provided.  It can be provided, and frankly, we were -- I asked

12    for a new interrogatory to be served, but we didn't get one.

13    But in any event, we will -- and that's why I was trying

14    during the discussion to reach agreement on the exact

15    parameters, to eliminate any drafting issue in the future.  So

16    the interrogatory analysis has been run.  It can be produced.

17    It has not been produced to date because of this contested

18    posture and the request that it be coupled with more data

19    that's already been resolved by court order.  But it certainly

20    can be.

21        I'm done speaking, Your Honor.

22          THE COURT:  All right.  Thank you.

23        All right.  Mr. Soumilas, if they offered -- if they

24    provided what sounds like a rational explanation for the

25    reading that they contend is the appropriate reading and

1   offered to redo it, you could have had the answer that you

2   were seeking weeks ago.  Why are we here?

3          MR. SOUMILAS:  Your Honor, first of all, let me thank

4   the Court for allowing us to have this hearing via telephone,

5   given what is going on with the coronavirus pandemic.  I'm in

6   Philadelphia at home, so I appreciate that.

7      But to answer Your Honor's question about Interrogatory

8   15, it's the first subject of dispute today, we did request

9   that they give us the actual answer to that interrogatory, but

10  they declined that.  We're still waiting for it.  We have not

11  gotten it.  But the reason why we are here today is because

12  that answer is no longer sufficient, Your Honor, because the

13  answer to Interrogatory 15, what we have here is a case of

14  obstruction, not a case of confusion.  And if I might, Your

15  Honor, address those points that defense counsel made,

16  starting with the plain reading of Interrogatory 15.

17     It's before the Court.  It was served in October of 2019.

18  And it asks for situations that do not match to either the

19  name on a criminal record or any of the alias names.  Now, the

20  most important word in that interrogatory is "not."  It is a

21  very clear question, a question that has been answered in

22  other similar litigation by other defendants like this company

23  that does tenant screening.  It is a very simple question that

24  a six-year-old could answer.  It is, you know, identify for me

25  shapes that are not either a square or a triangle.  If the

1   answer is circle or rhombus, that is correct.  If the answer

2   is square, that is plainly not correct.  It is asking for

3   situations that are not either A or B.

4    We think that question was clear from the get-go.  The

5   reason it was clear from the get-go is because it's not just

6   an abstract question, Your Honor.  It's a question targeted at

7   identifying the name mismatch class pled in this case, which

8   has always been pled in this case, about situations like the

9   Plaintiff Jones, where Diane Jones does not match, does not

10  match, to either Toni Taylor, the name on the criminal record,

11  or to any of the alias names on that criminal record.  So when

12  you deal with the interrogatory, Your Honor, and the

13  interrogatory is a hundred percent clear, one hundred percent

14  clear, grammatically correct, precise, a hundred percent clear

15  -- now, the very first objection to that interrogatory, Mr.

16  St. George said, we find it ambiguous for purposes of

17  answering, but we did not object to ambiguity.  The very first

18  objection is, RealPage objects to this Interrogatory 15 as

19  vague and ambiguous on the whole.

20   That was as of November 23, 2019, a month after the

21  interrogatory was served.  That's before the Court at Docket

22  110, Page 6 of that Joint Appendix that the parties provided,

23  the very, very first objection.  And in fact, we met and

24  conferred about that issue over the phone, I was there, in

25  writing, in emails, I was copied on them and participated in

1   some of them, via video link, in person, over multiple times

2   in November and December of 2019 to make it crystal clear to

3   this Defendant that we're looking for situations that do not

4   match, not match, A or B.

5       Now, their answer to that interrogatory, which they served

6   on November 23rd -- I'm sorry -- 22nd, 2019, changes the word

7   of the question from "either" to "neither," with an N.  That

8   is also before this Court.  It is, again, Docket 110, Page 6.

9   We do not ask that question.  We think the proper grammar on

10  the question is that something does not match either A or B.

11  That is the correct grammar.  That is what we're looking for.

12  That is the class definition.  That's what this case is about.

13  They changed it to does not match neither A or B.

14      Now, we don't think this is proper grammar.  We do not

15  think that that is a question.  We do not think that it

16  changes the meaning of the answer.  We're still looking for

17  conditions that do not match either or neither A or B.

18      So, in our view, Your Honor, the question was clear, and

19  we conferred about it over the phone, in person, via video, in

20  writing, and even up to the January 15th hearing before this

21  Court.  We made a joint statement.  We quote from that

22  statement in our papers to the Court, that we're looking for

23  "reports of (inaudible) similar to the report sold and for

24  Plaintiff, addition of the criminal record included.  Now, the

25  report does not pertain to the subject of the report."

1    We further say specifically -- the question is,

2    "specifically targeted to identify consumers who are similarly

3    situated to the named Plaintiff, Diane Jones, is not a

4    character-for-character match to 'Toni Taylor' or any of the

5    alias names listed."

6    There could be no question in our view, from the plain

7    reading of the question, from the meet-and-confers, from the

8    joint statement to the Court, from the class definition, any

9    which way you could conceivably read this question, that we

10   are not asking for situations where a criminal record for a

11   Diane Jones is matched to an applicant Diane Jones.  That is

12   the exact opposite of what we're looking for.  We're not

13   looking for names that match character-for-character, yet

14   that's exactly what we got in response to Interrogatory 15

15   after this Court ordered the Defendant to provide a response.

16   Now, what we did at that hearing, Your Honor, is we said,

17   so long as we get the proper response and a deposition of a

18   person who knows how it's calculated, we will not need to look

19   at the underlying documents.  The reason we wanted the

20   underlying documents, Your Honor, is because the original

21   response to this very question, the original response was, The

22   answer is zero.  That is also in front of the Court at Docket

23   110, Page 7 of the Joint Appendix.  They said none.  Nobody

24   matches this profile.  We said -- this is back in November,

25   Your Honor -- we said, well, that's impossible.  Our Plaintiff

1    matches the profile.

2          The next answer was, well, we cannot do it under our

3    records.  We said, okay, give us the records -- we asked for

4    the records in Document Request No. 2 -- and we will do it.

5    We hired an expert.  We're prepared to do this ourselves if

6    you're unwilling to do it.

7          Then they said, oh, actually, we can do it.  We can do it,

8    so we'll do it, but we're not going to give you the records.

9          We said, all right.  So as long as we get a correct

10   answer, you can do it.

11         Then they give us an answer, the answer goes from none to

12   we can't do it.  There's 64,178.

13         Now Mr. St. George says that there's a fourth answer to

14   this question.  It's going to be something else.  We still

15   don't have it.  I asked for it in email correspondence.  I've

16   been waiting for it.  I have not seen it.  But Your Honor, I'm

17   afraid that this answer is not going to be sufficient at this

18   point.

19         I am trying to represent a class of consumers, and having

20   Defendant for six months play games with answering a single

21   question that says I want a scenario that is not either A or

22   B, and what they've managed to give me is four different

23   answers, and the last one is an answer that says, it could be,

24   actually, either A or B.

25         Well, that's not what the question asks for.  That's not

1   what we ever wanted.

2        There is no possibility, in our view, that there is

3   confusion here.  We've met and conferred so many times about

4   this issue.  And I don't think the question is confusing to

5   begin with.  It's precise.  It's grammatical.  I don't know

6   why they altered the answer, but it doesn't change the

7   reality, Your Honor, which is that we don't know what the

8   answer is to this day.  Discovery has closed.  They identified

9   a couple of new witnesses on the last day of discovery.  We

10  don't know what they're going to say.  And at this point, Your

11  Honor, we're here because we need the documents.

12       The documents are going to be able to give us the type of

13  evidence that courts require, that when we have an answer,

14  Interrogatory 15 is backed up, it's solid, it's credible, and

15  we're certainly prepared, as we have in multiple other cases,

16  including two that I could recall right now in the Northern

17  District of Georgia and a second one in the Eastern District

18  of Pennsylvania, assure the secure transmittal of records.  Of

19  course, we don't -- there's protective order in this case.  It

20  will be pursuant to that.  And I think that's up to the

21  parties to make sure that the transmittal of records, Your

22  Honor, is secure and not lost.  We have a similar interest in

23  that regard.

24       We're here today, to answer your question, because the

25  answer that they've given us has changed four or five times.

1  We do not have a legitimate answer.  We do not believe that

2  there's any confusion or a legitimate objection as to

3  confusion, and there never was.  What we have is obstruction.

4  And now we want the documents so that we get the answer

5  verified and make sure it's correct.

6      And we really think it should not take multiple motions to

7  the Court to answer a rather simple question like this, when

8  we know that they can do it.  This is what this company does.

9  It matches names to records.  That's its very business model.

10 Mr. St. George even admitted that they could do it and that

11 they'd give us the answer.  They still haven't.

12     So that's why we're here today, Your Honor, and I'm done

13 speaking for now.

14         THE COURT:  All right.  I certainly understand your

15 frustration at not having the documents that you requested --

16 or the information that you requested several months ago.  But

17 I can't agree with you that the question is one hundred

18 percent clear.  Maybe you did not hear me tell Mr. St. George

19 that I had to read it several times to be sure that I

20 understood it.  So, to me, it was not a hundred percent clear.

21 And maybe that's a reflection on my intelligence, but

22 certainly I did not understand it the first time I read it.  I

23 had to read it several times to try to understand the parties'

24 dispute regarding the proper interpretation.

25     I am confused as to why this -- why we are here at this

juncture still trying to interpret it.  But it appears to me

that we are all on the same page now as to what you intended

it to mean, which I think was reflected or paraphrased by the

Defendant in the February 19th email, that it's neither and

none.  No match of the name and no match of any alias.  Is

that accurate, Mr. Soumilas?  That's what you were intending

to ask?

MR. SOUMILAS:  So Your Honor, I think that email is

accurate.  I think that's what we've always intended to ask.

And I do think that that is what we ask in the original

Interrogatory 15.  You could ask the question multiple times.

We chose what we think is a simple, grammatically-correct way

to ask it.

And I do want to emphasize, Your Honor, that if this was

November and we were having this discussion, okay, let's have

a discussion and make sure we're all on the same page.  But

Your Honor, I could assure you, we had this discussion in

November and December and January and before the Court at the

hearing and submitting the papers.  Nobody by the January

hearing thought that there was any confusion about this

question.  We just didn't get the straight answer.

So that's my answer, and I'm done speaking for now.

THE COURT:  All right.  So, back to my original

question.  You agree that the characterization in the February

19, 2020 email that's at Page 13 of Appendix at Document 117

1   is the information that you are seeking?

2          MR. SOUMILAS:  Let me just -- I know I wrote that

3   email, and it was between me and Mr. St. George, Your Honor,

4   but let me just make sure that I'm looking at the correct one.

5   And I'm sorry, Your Honor, could you repeat the page number of

6   that?

7          THE COURT:  Page 13.

8          MR. SOUMILAS:  So, yes, Your Honor, that's what -- it

9   is Page 9 of the Appendix, Page 13 of 22 of the filing.  That

10  is correct.

11         THE COURT:  All right.  Mr. St. George, I understand

12  that the analysis for the definition as you have characterized

13  it on Page 13 of Document 117 has been done and you have that

14  number to produce immediately.

15         MR. ST. GEORGE:  I'm in the process of finally QC-ing

16  it.  I sent one email -- and I'm sorry, I should say quality

17  control -- in terms of the response.  I sent an email to the

18  technical team this morning, I would expect a response on that

19  within the next day, and then we should be able to produce the

20  information next week.  So that is almost immediately, but

21  there may be, you know, the need for a day or two (inaudible),

22  especially given that half of the client is currently working

23  offsite and remote and essentially furloughed.  They're on A

24  and B teams at RealPage at the moment in terms of actually

25  coming in and working with the databases.

1     But that is -- it is in its very final stages and ready

2    for production, subject to final verification.

3        THE COURT:  I would like for you to please respond to

4    Mr. Soumilas' assertion that the parties have had numerous

5    conversations about what this interrogatory means.

6        MR. ST. GEORGE:  Sure.  So, there was no discussion

7    ever about this issue in terms of whether or not they intended

8    to ask for an exclusive list.  The meet-and-confer discussions

9    that occurred and which is why we answered the question "none"

10   originally was because there was confusion as to what was

11   being asked due to capital term, Name.  That is what the meet-

12   and-confer discussions centered around.

13     We would have had no reason and no incentive and no

14   possible, you know, strategic advantage to somehow acting

15   contrary to meet-and-confer discussions in a court order.  Mr.

16   Soumilas knows me.  It's not anything we ever would have done,

17   especially when we offered up -- freely offered up the

18   deponent, who then testified to exactly what we did.  There

19   wasn't going to be any hiding on this issue.  We knew that

20   this was going to be the subject of a deposition.  And the

21   issue was raised early and clearly.

22     I think you can see from the deposition testimony that we

23   appended, even in the deposition itself, Mr. Soumilas was

24   changing the language in the interrogatory to make it

25   exclusive.

1      But I can personally represent as an officer of the Court

2   who has supervised this process, there was never any intention

3   to operate in a way that was contrary to the text of the

4   interrogatory as we read it or any meet-and-confer discussions

5   or this specific issue regarding whether or not they actually

6   intended to ask for none of the aliases or for neither/nor.

7   That was never raised.  It wouldn't have served our client's

8   interest.  We would have never done it.

9      There is a simple solution to this, which we proposed

10   immediately coming out of the deposition in response to his

11   letter, which is, there seems to be confusion.  We say it's on

12   their end.  They say it's on our end.  But there seems to be

13   confusion, so why don't we just agree to rerun the query in

14   the way that he's now explained it in the deposition, using

15   different language, and we will reproduce a verified response.

16   We'll give you another deposition.  And if you're asking for a

17   stipulation of the class certification period, or discovery

18   period, that's also something we would take to our client,

19   especially because class certification briefing isn't due

20   until May 29th of this year.

21      I don't know why we are here.  There is absolutely no

22   basis to contend that anyone ever operated in anything other

23   than the utmost good faith here.  We think that we have the

24   correct textual read of the interrogatory.

25      And keep in mind, Your Honor, this broad interrogatory

1   that doesn't track the class definition was itself followed by

2   two also specific interrogatories, which we responded to as

3   part of the compromise and which there's no debate that we've

4   fully and accurately responded to.

5       What we understood to be happening here was, on the plain

6   text of the interrogatory, they wanted essentially a full

7   universe of any report that could even possibly theoretically

8   be involved in this class, and then drilling down on that in

9   two subsequent interrogatories.

10      You have my representation there's no bad faith, as an

11  officer of the Court.  We've been involved in every meet-and-

12  confer discussion.  Mr. Soumilas cannot point you to a single

13  piece of correspondence where this issue was ever raised in a

14  meet-and-confer posture, because it never was.

15      And even in the joint statement, the statements are being

16  made such as, "We want to explore in Interrogatory 15 people

17  who are similar to the Plaintiff."  And the Plaintiff is

18  included in the response to No. 15 as we provided it and

19  verified it and Mr. Sohal testified to that.

20      So, again, there's no clarity from Plaintiff's counsel on

21  this point.  An ambiguity that was discussed regarding the

22  meaning of the term "Name," well, that was clarified and we

23  agreed to provide the response.  We did so.

24      The interrogatory could have been drafted and should have

25  been drafted and argued in multiple ways that would have given

 1   it precision to what the Plaintiff's counsel evidently

 2   intended.  They never clarified anything.

 3       The reason why the word "neither," by the way, appears in

 4   our response, it was a simple typographical error of the

 5   paralegal who was preparing the shell.  There's no doubt as to

 6   what Plaintiff asked in the actual text of the interrogatory.

 7       But it's very clear what happened here.  What we don't

 8   understand ultimately is why we're back in front of the Court

 9   in terms of motion practice.  There is a simple solution for

10   this.  We offered it.  It was rejected.  And there's no basis

11   for -- there wasn't any basis for any motion to compel, both

12   on the merits, because of mootness; certainly, no basis for a

13   claim of sanctions.

14       So I hope that provides some clarity in terms of the

15   actual meet-and-confer process.  Again, I was involved in

16   every one of those discussions.

17       And I'm done speaking now, Your Honor.

18           THE COURT:  Tell me where in your brief you talk about

19   what "any" means.

20           MR. ST. GEORGE:  I'm sorry, Your Honor.  So, if you

21   look at Page 6 of our submission, motion in opposition, we say

22   that -- this is I(a) Sub (1).  So if either the offender --

23   and towards the middle of the paragraph, the sentence says,

24   "Thus, if either the offender name did not exactly match, or

25   any, *i.e.*, one or more, of the alias names did not exactly

1    match, that reporter was included -- that report, excuse me,

2    was included in RealPage's numerical response.  We cite *U.S.*

3    *v. Gonzales*, citing *Webster's Third*.

4        The issue in *U.S. versus Gonzales* was the meaning of the

5    term "any" in terms of any term of imprisonment.  The

6    Government wanted to limit that to simply federal terms of

7    imprisonment.  The issue is whether it also included state

8    terms of imprisonment.  There were two -- there were two terms

9    of imprisonment on the table, and the Court said -- and the

10   Supreme Court in that case said no, it can be either.  It can

11   be a federal or it can be a state.  That's what the word "any"

12   means.

13       But again, at the very least, again, we think we're

14   correct under the text of the interrogatory as it was

15   requested.  And, you know, in your briefing, you see them

16   shift to the word "neither."  In the deposition testimony, you

17   see him asking either/nor, you know, again modifying the text

18   of the interrogatory as it was drafted.

19       So that is -- was just one of the cases and definitions of

20   the word "any" that we cited.

21       There were multiple ways to make this interrogatory

22   precise in terms of what they asked, and it wasn't precise.

23   In fact, we think it was precise the other way.  But at the

24   very least, this issue itself was never the subject of

25   discussion.  It was other aspects of the interrogatory that

1    were part of the meet-and-confer in terms of ambiguity and why

2    we provided the revised response.

3              THE COURT:  All right.  I'm sorry.  Were you done?

4              MR. ST. GEORGE:  I'm sorry.  Yes.  Yes, Your Honor,

5    I'm done speaking.

6              THE COURT:  You mentioned earlier that, in addition to

7    providing the number that was requested in Interrogatory --

8    that was intended to be requested in Interrogatory 15, without

9    making a determination of whether it actually was or not, you

10   were also willing to provide another deposition.

11             MR. ST. GEORGE:  Yes.

12             THE COURT:  All right.

13             MR. ST. GEORGE:  And we've made that clear in our

14   meet-and-confer correspondence, in terms of the fact that if

15   they wanted to notice the deposition, we would -- that's

16   something we could accommodate.  We asked them if they wanted

17   to ask for a stipulation of the discovery cutoff in order to

18   accommodate that.  Discovery cutoff for class certification, I

19   should add.  And we do not have agreement on that.

20             THE COURT:  All right.  Thank you.

21        All right.  Mr. Soumilas, it is your motion.  I am happy

22   to hear anything that you would like for me to consider in

23   making my ruling.

24             MR. SOUMILAS:  Your Honor, thank you.  Just, I want to

25   add a couple of additional points that I have not had a chance

1    to make and which I think might be responsive to the last set

2    of comments by Mr. St. George.

3        So, let me begin by saying that I have worked with Mr. St.

4    George for years and I respect him a great deal.  I'm not

5    saying that, you know, he is being below-board or unethical in

6    this -- at all in this situation.  What we are saying is that

7    this Defendant, his client, clearly wishes to not provide data

8    that would comprise a class that would not at all look like a

9    particularly, you know, appealing class in litigation purposes

10   because it's people who have criminal records on their files

11   and the criminal records have names that don't match their

12   names.

13       And they have tried repeatedly not to give us that answer.

14   The very first meet-and-confer, when the answer was zero, that

15   is precisely what we talked about.  How could it be zero, but

16   when you look at the question, No. 15, Diane Jones meets that

17   pattern?  She's one of those people who does not -- her name

18   does not, those people who are not matched, either the name

19   Toni Taylor or any of the aliases.

20       And so I think that there was clarity about what we're

21   looking for.  The idea that they would give us data that

22   includes exact name matches, which is what they did, what the

23   Defendant did, and Mr. Sohal testified that that was his

24   search, is completely harmful to us and it undermines

25   completely our ability to argue that this Defendant has a

1   procedure that is unreasonable because it associates criminal

2   records with completely different names to people who don't

3   have criminal histories.  When the names is exactly a

4   character-for-character match, then -- then that's a

5   reasonable procedure.  And that's not a class definition.

6   That's not what the question asked.  There's no way that

7   anyone could have interpreted that question in this case to

8   think that what -- we're looking for situations of the

9   opposite of Ms. Jones.

10       So I do take exception to the varying answers:  zero,

11   can't be done, 54,000, some other number.  And at this point,

12   Your Honor, we do need some level of corroboration.  We can't

13   just -- if it was November and we had the answer after the

14   initial meet-and-confer, that would be one thing, but now it's

15   six months later and I feel like the reason why we are taking

16   up the Court's time again is because I do not have confidence

17   that we're going to get the correct answer in this case.  And

18   I certainly don't want to get an answer that again, you know,

19   misdirects us into situations where there is a character-for-

20   character match between criminal records and tenant

21   applicants.  We were never looking for that.  There's no

22   possibility you could read that question to ask for that.

23       So the thing that I'd like to leave this Court with, Your

24   Honor, is that we will certainly want a verified answer.  We

25   will certainly, you know, want a deposition to be able to know

1  that we have the right answer this time.  But we have, you

2  know, very deep suspicions that this Defendant justified over

3  six months of not giving us the right answer, and we think

4  that at least some sampling of documents, some spot-checking,

5  if you will, Your Honor, to make sure that we're getting a

6  straight answer is now appropriate.

7      This is not November anymore.  We're in the middle of

8  March.  And I want to make sure that when we get our answer, I

9  could, you know, go back to the Court in a motion for

10 certification and say, you know, this is the right answer.

11 This is a legitimate answer and it's not some, you know, made-

12 up answer or some answer that answers the opposite of what

13 we've been trying to get in this case.

14     So I would implore the Court to give us at least some

15 level of documentation in response to Document Request 2 so

16 that we could be assured and the Court could be assured that

17 the answer to Interrogatory 15 is final and correct.

18     And that's what I wish to add to the record, Your Honor.

19 Thank you.

20     THE COURT:  All right.  Thank you.  Mr. St. George,

21 did you have anything that you wanted to argue before the

22 Court before I make my determination?

23     MR. ST. GEORGE:  Just one small point.  So, the

24 documentation issue was resolved.  It was part of the

25 compromise.  There'll be a verified response.  There'll be a

1   deposition under oath.  Clearly, RealPage will not be in a

2   position to back away from the verified response and under-

3   oath deposition for purposes of the class certification

4   briefing.  There will, of course, be other arguments, but the

5   execution of this query and the accuracy of the data provided

6   will not be one of them.

7       I would say, as an additional step, if the Plaintiff's

8   counsel are somehow interested in looking at the actual search

9   query that has been executed against the dataset for an

10  additional level of corroboration on their end in terms of the

11  query that was run, I also would be happy to provide the

12  technical SQL queries that were run against the database that

13  they can review.

14      So, you know, there's nothing here but transparency on

15  RealPage's end.  We don't need to get into the merits of

16  whether our client has been suspicious.  It has not.  It's

17  been fully transparent, and which we remain committed to being

18  fully transparent, but this -- there's no basis to modify the

19  prior court order and the compromise that was brokered across

20  the three interrogatories.

21      So that's our position.  And I think we've been eminently

22  reasonable and transparent in terms of what we offered, what

23  we are willing to offer, and that should put the issue to

24  rest.  And in fact, we never should have been here in the

25  first place.

1      And Your Honor, I'm done speaking.

2          THE COURT:  Thank you.  Mr. Soumilas, you have the

3  last word, since it is your motion.

4          MR. SOUMILAS:  Your Honor, the last thing I wish to

5  say is that this Court has already ordered this Defendant to

6  properly answer Interrogatory 15.  I think at the time of that

7  order in January of this year there was no confusion about

8  what we are seeking.  I think the papers submitted by the

9  parties after meeting and conferring about the motion,

10  including in person, Your Honor, and that is at Docket 110,

11  Page 5 of our brief, for example, explains some of our -- I'm

12  sorry -- Docket 110, Page 5 of our brief quotes some of those

13  discussions and the joint report that the parties prepared

14  leading up to the January 15th conference.  We think that

15  there was no question what we were looking for.  There's no

16  possibility that we were looking for actual character-for-

17  character matches.  And this Defendant did not answer this

18  question.

19      And now Mr. St. George says, but they could and they will,

20  but we're back a second time doing it.  And for that reason, I

21  think there needs to be some more teeth to this order.  We

22  have to have assurance that this answer now is finally

23  correct.  And surely I would accept Mr. St. George's offer to

24  look at the computer program or search query, I would want to

25  see that, and would encourage the Court to direct them to

1    provide that as well as a deposition and a verified answer.

2         And, you know, our view is that the documents should also

3    be produced, but if the Court is not willing to do that, then

4    I would encourage the Court to at least allow us the

5    possibility of a small sampling of the documents, a random

6    sampling, so that we can be sure that this answer to the class

7    size is finally correct.

8         And thank you very much, Your Honor.  I'm done speaking.

9         THE COURT:  If you'll give me just a moment to go back

10   to the parties' joint submission.

11       (Pause.)

12       THE COURT:  All right.  I've had the opportunity to

13   read the Plaintiff's position on Interrogatory No. 15 in the

14   joint submission.

15       All right.  Well, here is the reasoning for my ruling.

16   It was certainly not clear to me at the hearing in January

17   that there was a dispute as to what the -- what Interrogatory

18   15 actually sought, only a dispute as to whether a response to

19   this interrogatory should be compelled.  While I certainly had

20   to read the interrogatory several times to make sure that I

21   understood what I thought was being asked, and I -- my initial

22   reading was in line with what the Plaintiff's reading is, I

23   cannot say, after considering the Defense's argument regarding

24   its reading and what the meaning of the word "any" is, or the

25   reading of it as a disjunctive, that it is, in fact, as clear

1    as what the Plaintiff says.  I think this is a genuine dispute

2    about what this really means.

3         I am not sure why this dispute wasn't resolved at the

4    face-to-face conference.  That's exactly what is supposed to

5    happen at that type of conference.  But it may be that the

6    parties did not understand that that was an issue.

7         I understand that the parties disagree vehemently as to

8    whether there was confusion.  But there is nothing in the

9    record before me, after reviewing the appendices submitted by

10   the parties, and going back independently to the joint

11   submission, that tells me that this specific issue was, in

12   fact, discussed and there was an agreement or clarification.

13   There's nothing in the record.  So what I have before me is a

14   genuine dispute as to what this interrogatory means.

15        While I certainly understand the frustration at not having

16   a response after seven months, I note that it's only two

17   months after my ruling, and that there was an offer certainly

18   to provide a new answer in line with the clarification that

19   the parties agreed with what was intended to be asked, and

20   again, not deciding whether it was in fact asked, and this

21   information could have been provided earlier.

22        Nevertheless, the interrogatory could be read to request

23   the information that Plaintiff is seeking, undisputedly, so I

24   am granting the motion in part.  I'm going to order the

25   Defendant to provide a verified answer to Interrogatory 15 by

1    Monday, the 23rd.  End of business Monday, the 23rd.  Well,

2    actually, just the 23rd.  That gives you a little more time.

3        I'm going to order that it provide the queries that it

4    used to derive the answer that it provides, and that it make

5    available a witness for a deposition regarding the query, and

6    that deposition may be taken outside of the discovery deadline

7    of March 6th for the class certification.

8        Because there was -- because I find that there was a

9    genuine dispute over what Interrogatory 15 meant, I do not

10   find that fees should be awarded.  I did not think that fees

11   going back would be appropriate, even if I had fully granted

12   the motion, and because the information that was sought is

13   being provided, the Plaintiff is getting the benefit of its

14   bargain, and so there is no reason to revisit my prior ruling

15   on Request for Production No. 2.  The Plaintiff is getting the

16   information that it sought in Interrogatory 15.

17       And to the extent that there is any confusion at all,

18   which I will not be receptive to any argument regarding

19   confusion or genuine dispute going forward, from what I heard

20   on the record today, it appears that Defendant's

21   characterization of what's being requested is appropriately

22   set forth on Page 13 of its appendix at Document 117.  So the

23   motion for fees and sanctions is denied.

24       With regard to the request for an extension of deadlines,

25   as I've noted, I'm allowing the deposition to be taken after

1    the deadline, so there's no need for an extension of that

2    deadline.  And to the extent that an extension of the class

3    certification deadline is required, that's more appropriately

4    addressed to Judge Boyle in a separate motion, as opposed to a

5    part of this discovery motion.

6         So that will be the ruling of the Court.  I will issue an

7    order that memorializes my ruling, and that should go out

8    today.

9         Are there any questions about my order or my ruling?  Mr.

10   Soumilas?

11        MR. SOUMILAS:  Your Honor, thank you.  The one thing

12   that I'm not sure I heard, is there any deadline that the

13   Court has identified for the production of the query and this

14   witness?  I understand that the response should be by March

15   23rd, but is there a deadline by which to complete the

16   deposition, seeing the query, so that -- that will inform me

17   as to whether we need to seek any extension of the remaining

18   deadlines from Judge Boyle or whether we can still meet the

19   current deadlines.

20        THE COURT:  If I did not make clear, I intended the

21   queries to also be produced with the response to Interrogatory

22   15 on the 23rd.

23        MR. SOUMILAS:  Thank you.

24        THE COURT:  Obviously, you will need time to review

25   the response and the query before deciding whether you wish to

1   pursue a second deposition.  But certainly, to the extent that

2   you do, I think that it should be completed no later than 30

3   days from today.

4          MR. SOUMILAS:  Very well, Your Honor.  Thank you.

5          THE COURT:  Mr. St. George?

6          MR. ST. GEORGE:  No, Your Honor, I do not have any

7   further questions for you.

8          THE COURT:  All right.

9          MS. ST. GEORGE:  Thank you for your time.

10         THE COURT:  All right.  Thank you both.  Stay safe.

11   Stay well.  Be careful.  We are adjourned.

12         MR. ST. GEORGE:  Thank you, Your Honor.

13         MR. SOUMILAS:  Thank you.

14      (Proceedings concluded at 10:59 a.m.)

15                      --oOo--

16

17

18

19                      CERTIFICATE

20      I certify that the foregoing is a correct transcript from
     the electronic sound recording of the proceedings in the
21   above-entitled matter.

22    **/s/ Kathy Rehling**                    **04/03/2020**

23   _____        _____

24   Kathy Rehling, CETD-444                          Date
     Certified Electronic Court Transcriber

25

36

INDEX

PROCEEDINGS                                                    3

WITNESSES

 -none-

EXHIBITS

 -none-

RULINGS                                                      31

END OF PROCEEDINGS                                           35

INDEX                                                        36