**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |  |
|---|---|---|
| DIANE D. JONES, individually and on behalf of herself and all others similarly situated, | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | Civ. No. 3:19-cv-02087-B |
| REALPAGE, INC. d/b/a LEASINGDESK SCREENING, | § § § | |
| *Defendant*. | § § § | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF DIANE D. JONES'S**
**<u>MOTION TO CERTIFY CLASS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

I.   INTRODUCTION ................................................................................. 1

II.  FACTS ................................................................................................. 5

    A.   Nature of the Business ................................................................ 5

    B.   The Acquisition of Criminal Records Data From a Vendor ................... 5

    C.   The Toni Taylor Records ............................................................ 7

    D.   Matching Criminal Records to Tenant Applicants, and Non-Matches.......... 7

    E.   The History and Purpose of the Matching Logic .............................. 10

    F.   The Diane D. Jones - Toni Taylor Non-Match ............................... 11

    G.   Thousands of Other Confirmed Non-Matches.................................. 12

    H.   RealPage Already Has Better Procedures to Assure Accuracy Available to It, But Employs Them Only After the Damage Is Done.......................... 15

III. LAW AND ARGUMENT ..................................................................... 17

    A.   Legal Standard ........................................................................ 17

    B.   The Proposed Class Satisfies Rule 23's Requirements........................ 17

        1.   The Class Is Ascertainable...................................................... 17

        2.   The Class and Sub-Class Satisfy the Rule 23(a) Prerequisites. ............ 18

            a.   The Class and Sub-Class Are Sufficiently Numerous. ................. 18

            b.   The Class and Sub-Class Share Common Questions of Law and Fact....................................................................... 19

            c.   Plaintiff's Claim Is Typical of Other Class Members' Claims. ...................................................................... 19

            d.   Plaintiff and Her Counsel Will Adequately Represent the Interests of Absent Class Members............................... 20

        3.   The Class and Sub-Class Also Meets the Rule 23(b)(3) Prerequisites. ................................................................. 21

       a.     Common Issues Predominate.......................................................... 21

       b.     A Class Action Is the Superior Means of Litigating These
                Claims. ........................................................................................ 23

IV.  CONCLUSION...................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997).................................................................21

*Church v. Consolidated Freightways, Inc.*,
  1991 WL 284083 (N.D. Cal. June 14, 1991).......................................18

*Clark v. Trans Union LLC*,
  No. 3:15-cv-00391-MHL, ECF No. 273 (E.D. Va. Aug. 29, 2018).....................4

*Clark v. TransUnion, LLC*,
  2017 WL 814252 (E.D. Vir. Mar. 1, 2017).........................................4

*Cortez v. Trans Union, LLC*,
  617 F.3d 688 (3d Cir. 2010).....................................................22

*Dalton v. Capital Associated Industries, Inc.*,
  257 F.3d 409 (4th Cir. 2001)....................................................22

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014)....................................................19

*Feder v. ElectronicData Systems Corp.*,
  429 F.3d 125 (5th Cir. 2005)....................................................20

*Feliciano v. CoreLogic Rental Property Solutions., LLC*,
  332 F.R.D. 98 (S.D.N.Y. July 29, 2019)..........................................4

*Fischl v. Gen. Motors Acceptance Corp.*,
  708 F.2d 143 (5th Cir. 1983)....................................................22

*Head v. Citigroup, Inc.*,
  2020 WL 1671583 (D. Ariz., Apr. 3, 2020)........................................18

*In re Heartland Payment Sys., Inc., Customer Data Security Breach Litigation*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012)...........................................5

*Mace v. Van Ru Credit Corp.*,
  109 F.3d 338 345 (7th Cir. 1997)................................................23

*Mullen v. Treasure Chest Casino, LLC*,
  186 F.3d 620 (5th Cir. 1999)................................................20, 23

*Murray v. GMAC Mortgage Corp.*,
   434 F.3d 948 (7th Cir. 2006) ................................................22

*Patel v. Trans Union, LLC*,
   308 F.R.D. 292 (N.D. Cal. 2015).............................................5

*Perrill v. Equifax Information Services, LLC*,
   205 F. Supp. 3d 869 (W.D. Tex. Aug. 31, 2016)...................22

*Ramirez v. Trans Union, LLC*,
   301 F.R.D. 408 (N.D. Cal. 2014), *affirmed* 951 F.3d 1008 (9th Cir. 2020) ...........................22

*Ramirez v. TransUnion, LLC*,
   951 F.3d 1008 (9th Cir. 2020) .............................................4, 22, 23

*Robins v. Spokeo, Inc.*,
   867 F.3d 1108 (9th Cir. 2017) ..............................................22

*Seeligson v. Devon Energy Production Co., L.P.*,
   761 F. App'x 329 (5th Cir. 2019) ........................ 17-18, 19, 21

*Seeligson v. Devon Energy Production Co., L.P.*,
   2020 WL 636224 (N.D. Tex. Feb. 11, 2020)........................17

*Soutter v. Equifax Information Services., LLC*,
   307 F.R.D. 183 (E.D. Va. Apr. 15, 2015)..............................4

*Stillmock v. Weis Markets, Inc.*,
   385 Fed. App'x 267 (4th Cir. 2010) ......................................22

*Three Expo Events, L.L.C. v. City of Dallas, Texas*,
   907 F.3d 333 (5th Cir. 2018) ................................................22

## STATUTES & FEDERAL RULES

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, *et seq.* ............................................... *passim*

   15 U.S.C. § 1681b(a)(3)(A) ..................................................22

   15 U.S.C. § 1681e(a)............................................................22

   15 U.S.C. § 1681e(b) .................................................... *passim*

   15 U.S.C. § 1681g(a) .............................................................4

   15 U.S.C. § 1681n...................................................................4

   15 U.S.C. § 1681n(a) ...............................................19, 20, 23

Fed. R. Civ. P. 16 .............................................................................................................20

Fed. R. Civ. P. 23 .............................................................................................................17

    Fed. R. Civ. P. 23(a) ...............................................................................................18, 21

    Fed. R. Civ. P. 23(a)(1) ......................................................................................... 18-19

    Fed. R. Civ. P. 23(a)(2) ...............................................................................................19

    Fed. R. Civ. P. 23(a)(3) ...............................................................................................19

    Fed. R. Civ. P. 23(a)(4) ...............................................................................................20

    Fed. R. Civ. P. 23(b) ...................................................................................................21

    Fed. R. Civ. P. 23(b)(3) .........................................................................................21, 23

Fed. R. Civ. P. 30(b)(6)............................................................................................ *passim*

## OTHER AUTHORITIES

CFPB Consent Order – Admin Proceeding No. 2015-CFPB-0028, available at
    http://files.consumerfinance.gov/f/201510_cfpb_consent-order_general-
    information-service-inc.pdf ........................................................................................17

## I.    INTRODUCTION

Discovery in this Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681-1681x, case has unearthed thousands of inaccurate background reports prepared and sold to third parties by Defendant RealPage Inc. (RealPage) about prospective tenant applicants.  The inaccurate reporting by RealPage is serious, wide-spread and uniform – it falsely associates criminal records with thousands of tenant applicants who did not commit those crimes.

That is exactly what happened with proposed class representative Plaintiff Diane D. Jones in this class action.  Plaintiff Jones has no criminal history, yet in a background report to a potential landlord on August 28, 2017, RealPage reported that Plaintiff, a life-long Ohio resident, had been convicted of narcotics offenses in Georgia, where she never resided.  Worse, the RealPage background report stated that Plaintiff uses the name "Toni Taylor," and that she also used several aliases in perpetrating her alleged crimes. All of this was false and defamatory.  Predictably, Plaintiff Jones had her tenant application denied because of the RealPage background report and was also embarrassed and humiliated.

This type of inaccurate reporting is rooted in Defendant RealPage's procedures for matching criminal records to tenant applicants in preparing background reports.  Like other consumer reporting agencies (CRAs), Defendant is required by the FCRA to follow "reasonable procedures" that "assure" the "maximum possible accuracy" of records that it places on any one person's report.  15 U.S.C. § 1681e(b).  Two of Defendant's procedures, at issue here, are flawed and have led to thousands of false reports just like Plaintiff's.

The first procedure challenged here is Defendant's acquisition of incomplete criminal records from secondary sources.  Defendant does not obtain actual and publicly available court records of crimes.  Instead, it purchases abbreviated records from a low-priced private vendor called BackgroundChecks.Com (BGC).  There is a single controlling contract, 12 pages long.

These records may be inexpensive, but they often do not contain enough information to properly identify the perpetrator of the crime.  Following its usual procedures, Defendant purchased abbreviated Department of Corrections records from BGC about the Georgia narcotics crimes at issue here.  Those records did not contain the perpetrator's social security number, street address, or complete date of birth.  The actual court records for this same crime (from the Fulton County Superior Court in Georgia, which Plaintiff obtained in this litigation) identified the perpetrator by name, street address, full social security number and full date of birth.  The actual court records plainly show that Plaintiff is not the perpetrator, as she has a different name, address, social security number and date of birth.  Had Defendant acquired the actual court records, the false reporting as to Plaintiff would not have occurred.

The second procedure challenged here is Defendant's "matching logic" set forth in a three-page document REDACTED  This is the procedure that Defendant uses to match a particular criminal record to a particular tenant applicant. REDACTED

REDACTED

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████.[1]

After the damage was done, Defendant determined that the criminal records from Georgia do not actually match the Plaintiff – so it classified her case within its computer records as a "non-match." A "non-match" is a situation according to Defendant's records and procedures where "a criminal record showing on their [the tenant applicant's] consumer report does not belong to them." Discovery to date has revealed over 11,000 confirmed non-matches over the previous five years or so, and REDACTED in the previous two years.

Among the population who, like Plaintiff Jones, has disputed that a criminal record RealPage reported about them did not belong to them, Defendant's records show that about 65% of the time Defendant has to remove the criminal record from the report, which is done in order to correct a previous "non-match." This 65% *confirmed non-match* rate is staggering, and surely does not reach the "maximum possible accuracy" standard required by the FCRA.

Defendant has no data and no idea what its error rate is among the population who did not dispute or know how to dispute or whether a dispute was possible in these circumstances. (And the FCRA section 1681e(b) claim, like the one here, has no dispute pre-requisite or element, *see* 15 U.S.C. § 1681e(b)). Discovery in this case, however, has revealed that, *regardless of any*

---

[1]     Defendant had previously represented to the Court while the case was originally pending in the Northern District of Ohio that under the matching logic "Diane" matches with "Pamela," but in now appears that is not the case.

*dispute record*, for well over REDACTED tenant applicants Defendant has placed a criminal record on their background reports even though the first and last name of the perpetrator of the crime (include any and all alias used by the perpetrator) is *not* a match to the tenant applicants first and last name as it appears either on the rental application *or* his or her credit report.

Because Defendant continues to knowingly sell thousands of background reports with these staggering facial discrepancies and inaccuracies, Plaintiff now moves to certify a class of criminal "non-matches" and proposes the following definition for a general class and a sub-class, both of which Ms. Jones is a member:

> *Facially Non-matching Records Class*: All persons residing in the United States and its Territories, beginning two years prior to the filing of the Complaint in this matter and continuing through the resolution of the action, about whom RealPage furnished a consumer report which included one or more items of criminal record information for which the first and last name of the offender did not match the first and last name of the person who was the subject of the report.

> *Confirmed Non-match Sub-Class*: All persons residing in the United States and its Territories, beginning two years prior to the filing of the Complaint in this matter and continuing through the resolution of the action, about whom RealPage furnished a consumer report which included one or more items of criminal record information, and for whom RealPage subsequently determined that the item(s) of criminal record information was a "non-match."

Plaintiff seeks statutory damages of up to $1,000 for each class member under FCRA § 1681n, and punitive damages.[2]

---

[2]    Consumer class actions brought under FCRA section 1681e(b) involving CRAs reporting inaccurate public records information on consumers' reports and seeking FCRA statutory damages, like the one at bar, have been successfully brought across the country. *See Feliciano v. CoreLogic Rental Prop. Sols., LLC*, 332 F.R.D. 98 (S.D.N.Y. July 29, 2019) (granting class certification motion where plaintiff tenant brought FCRA section 1681e(b) and NYFRAC claims alleging CRA inaccurately reported that housing court suits against tenants were ongoing when suits had been favorably resolved in favor of tenant); *Clark v. TransUnion, LLC*, Civ. A. No. 3:15-cv-391, 2017 WL 814252 (E.D. Vir. Mar. 1, 2017) (certifying FCRA class action arising out of TransUnion's alleged violations in disclosing and reporting public records); *Clark v. Trans Union LLC*, No. 3:15-cv-00391-MHL, ECF No. 273 (E.D. Va. Aug. 29, 2018) (order granting final approval of FCRA section 1681e(b) and 1681g(a) settlement regarding reporting of tax lien and civil judgment records); *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183 (E.D. Va. Apr. 15, 2015) (in FCRA section 1681e(b) case, granting certification to a class of persons whose judgment information allegedly was inaccurately reported, despite the company's supposed knowledge of flaws in its data and reporting system). *See also Ramirez v. TransUnion, LLC*, 951 F.3d 1008 (9th Cir. 2020) (in FCRA section 1681e(b) and 1681g(a) case, affirming

## II.   FACTS

### A.   Nature of the Business

Defendant RealPage is in the tenant screening business and is regulated by the FCRA as consumer reporting agency or CRA, among other laws.  *See* 2018 RealPage Annual Report, p. 30.[3] It prepares millions of tenant screening or background reports.  *See* Ex. 1, Def. Juris. Rog. Resp. No. 7 (11,945,877 reports sold through the "Leasing Desk" team alone since 2016) (A-009-10).[4] These reports are customized to each individual tenant applicant, and are intended to provide accurate information to landlords and property management firms about the tenant applicant's rental, credit and criminal history.  *See* Ex. 2, RealPage Leasing Desk Screening Policies and Procedures at p. 1 ("It is also the goal of LeasingDesk Screening to provide consumer reports that are accurate and complete.") (A-024); Dkt. No. 20, Answer at ¶ 10.  Defendant maintains massive databases of information from which it prepares these reports, like the one it prepared on Plaintiff Diane D. Jones.  Ex. 3, Ramesh Dep. at 37:1-38:10 (A-062-63).[5]

### B.   The Acquisition of Criminal Records Data From a Vendor

In acquiring information about crimes for its databases, Defendant does not collect the actual or official records of crimes from courthouses where the convictions are recorded.  Ex. 3,

---

denial of all defendant's post-verdict motions, including the class certification ruling, in class action related to inaccurate reporting of consumer matches to Department of Treasury's Office of Foreign Asset Controls ("OFAC") public list of international fugitives); *Patel v. Trans Union, LLC*, 308 F.R.D. 292 (N.D. Cal. 2015) (certifying FCRA section 1681e(b) class against CRA for misreporting certain criminal/terrorist records); *see also In re Heartland Payment Sys., Inc., Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012) (approving FCRA settlement class).

[3]     *See* https://d1io3yog0oux5.cloudfront.net/_e1ca2b8baff5c6ca4ce9adc9e44fc608/realpage/db/737/5930/annual_report/650555_RealPage_AR_2018_bmk_final.pdf.

[4]     References to Exhibits will be referred to by Exhibit number ("Ex. __"), and references to any information or testimony on a specific page will be to a specific page number of the Appendix filed herewith "(A-[Appendix page number])".

[5]     The deposition of Pavithra Ramesh was taken on August 9, 2019.  Ms. Ramesh was Defendant's main corporate representative here and was designated as Defendant's Rule 30(b)(6) witness for 13 of 18 topics.

Ramesh Dep. at 18:22-20:21; 30:15-32:4 (A-043-45, A-055-57).  Instead, Defendant contracts with a private vendor for select and abbreviated criminal records data.  Ex. 3, Ramesh Dep. at 20:9-17 (A-045).  The vendor is BackgroundChecks.Com (BGC).  *Id.*  Some witnesses referred to the vendor as Genuine Data Services (GDS), a BGC commonly-owned company.  *Id.*  But there is a single controlling 12-page contract with BGC for all of the criminal records data.  Ex. 4 (Vendor Contract) (A-181-92).

Through counsel, the parties have stipulated that the BGC contract is the controlling contract for Defendant's acquisition of criminal records from both BGC and GDS for all Leasing Desk background reports.  Ex. 5 (8-14-19 email exchange among counsel) (A-194-96).  The vendor will be called "BGC" herein, and this encompasses GDS.

Defendant does not know what specifically BGC does to gather criminal records information or whether BGC gathers all of the publicly available information about any given crime.  Ex. 3, Ramesh Dep. at 24:6-23 (A-049).  Defendant's main Rule 30(b)(6) corporate representative testified that she has *never* seen a social security number in criminal records data provided by BGC.  *Id.* at 30:7-32:9 (A-055-57).  The full dates of birth on the criminal records are sometimes provided to Defendant by BGC and sometimes not.  *Id.* at 32:10-35:5 (A-057-60).

Defendant buys records "in bulk" from BGC, and pays less than $0.22 per report sold on the average to acquire criminal records for inclusion in its database.  *See* Ex. 4 at section 5.1 (A-185); Ex. 1 at Resp. No. 7 (A-009-10).[6]  Defendant sells reports like the one it prepared about

---

[6]     From 2016 through June 2019 (a 42-month period), RealPage sold 11,945,877 tenant reports through its LeasingDesk platform.  Ex. 1 at Resp. No. 7 (A-009-10).  The contract between RealPage and BGC specifies that RealPage will pay $62,500 per month for continuing delivery and updating of criminal records.  Ex. 4 at section 5.1 (A-185).  Thus, over the same 42-month period, RealPage paid BGC $2,625,000 for any criminal records placed on those nearly 12 million reports – less than $0.22 per report.

Plaintiff Jones for $12.00.  Ex. 6, Jones First Supp. Rog. No. 3 (A-200).[7]

### C.    The Toni Taylor Records

The criminal record that Defendant placed upon Plaintiff Jones's background report dated August 28, 2017 (and delivered to Plaintiff's potential landlord) did not belong to her, but rather to an unrelated person from Georgia named "Toni Taylor."  Ex. 7, RealPage 8-28-17 Screening Detail Report for Plaintiff Jones (A-212).  BGC delivered some data to RealPage about this record from the Georgia Department of Corrections (DOC).  Ex. 3, Ramesh Dep. at 36:11-23 (A-061).

The DOC records that BGC delivered to Defendant did not include an address, a social security number or a date of birth.  Ex. 7, p. 3 (A-212).  Rather, the record had the name Toni Taylor, several aliases, and the year of birth 1961.  *Id.*; *see also* Ex. 8, Georgia DOC records available for free online (A-214-15).  The only data that matches Plaintiff's personal identifying information was the last name "Jones" (used in two of the aliases) and the birth year "1961."  Ex. 7 at p. 3 (A-212).

The actual court records for this crime are far more complete, as actual court records tend to be.  Plaintiff acquired the publicly available records from Fulton Court Superior Court, Georgia, for purposes of this litigation, for the crime that Defendant's report associated with her.  Ex. 9, Certified Fulton County Court Records for Toni Taylor offense (A-217-76).  The actual court records show a name, address, full social security number and full date of birth for the criminal defendant Toni Taylor.  Ex. 9 at p. 1 (redactions by Plaintiff's counsel) (A-217).  None of this information matches Plaintiff, except for the birth year 1961.

### D.    Matching Criminal Records to Tenant Applicants, and Non-Matches

REDACTED

---

[7]    Notably, RealPage is required to pay BGC only $7.00 to conduct a reinvestigation of criminal records in the event of a consumer dispute.  Ex. 4 at section 5.3 (A-185).

7

REDACTED

**REDACTED**

<span style="background:black"> </span>

Predictably, on a regular basis this very imprecise matching logic will cause a criminal record to match with a tenant applicant who simply has nothing to do with the crime, and surely was not the perpetrator of the crime.  Defendant has a name for this situation – called a "non-match."  Ex. 11 at JONES/REALPAGE 000614 (Exhibit 2 to Deposition of Rebecca Boyst) (A-290) ("a criminal record showing on their [the tenant applicant's] consumer report does not belong to them"); *see also* Ex. 12, Boyst Dep. at 13:9-12 (A-313).[8]  Defendant has known about non-matches at least since 2013 or 2014.  *Id.* at 13:3-5 (A-313).  Since 2014, Defendant has confirmed 11,232 non-matches, following 17,104 consumer disputes.  *Id.* at 21:5-25 (A-321).

**REDACTED**

---

[8]     Rebecca Boyst served as a Rule 30(b)(6) witness for certain topics, including non-matches, and her deposition was held on August 9, 2019.  Ex. 12, Boyst Dep. at 6:16-8:9 (A-306-08).



REDACTED

### E.   The History and Purpose of the Matching Logic

Plaintiff's counsel questioned Defendant's main Rule 30(b)(6) corporate witness at some length about the origins and purposes of the matching logic – and the responses were puzzling to say the least. REDACTED

She was unaware of when the "enhancement" to the matching logic originated or the reason it was initiated. REDACTED

The Rule 30(b)(6) witness testified that Defendant was concerned about "under-reporting" crime to its landlord customers. *Id.* at 46:22-47:2, 55:8-57:11 (A-071-72, 080-82).  But when

asked about data on under-reporting she knew of none and testified that Defendant has no systemic way of tracking under-reporting. *Id*. at 55:8-58:25 (A-080-83). When asked for anecdotal evidence, the only examples that she had ever heard of involved the types of crimes that certain states legally prohibit from being reported (because they are too old, for example). *Id.* at 98:17-102:4 (A-123-27). She had to concede that this was not under-reporting, but rather the purposeful and proper exclusion of criminal data. *Id*. at 100:14-101:18 (A-125-26).

In sum, Defendant apparently has no study, audit or data at all as to whether its matching logic is effective in assuring accuracy or how and to what extent it prevents under-reporting of criminal data. What we do know from Defendant's records and Rule 30(b)(6) testimony is that the matching logic caused significant *over-reporting* of criminal activity – REDACTED

;

Ex. 12, Boyst Dep. at 21:5-25 (A-321).

**F.    The Diane D. Jones - Toni Taylor Non-Match**

The matching logic found that Plaintiff Diane D. Jones was a "match" to the Georgia narcotics crime of Toni Taylor REDACTED

*see also* 81:4-83:19 (A-106-08). Because of this "match," Plaintiff had her reputation tarnished, being falsely associated with a criminal defendant, and also lost the apartment that she had applied to rent. Ex. 13 (Denial Letter) (A-362). She disputed with RealPage on August 29, 2019 and, some time later, Defendant confirmed that the Toni Taylor narcotics records was a non-match. Ex. 12, Boyst Dep. at 26:14-28:4 (A-326-28); *see also* Ex. 14, Defendant's Activity Log for Plaintiff (A-364-79). Defendant removed the criminal record and its computer system noted that, as of October 11, 2017, Plaintiff's tenant application would now have been acceptable and approved,

but for the fact it was two months too late.  Ex. 12, Boyst Dep. at 27:23-29:4 (A-327-29); *see also* Ex. 14 (A-364-79).

### G.   Thousands of Other Confirmed Non-Matches

Discovery has revealed that Plaintiff's Jones' non-match is but the tip of the iceberg.  From March 2014 until August 2019, Defendant received 17,104 disputes that it characterized as a non-match.  Ex. 12, Boyst Dep. at 19:11-24 (A-319).  It is Defendant's computer system and employees who classify any given dispute as a non-match.  *Id.* at 39:2-24 (A-339).  Of those disputes classified as a non-match, Defendant had to remove the criminal record from the disputing consumer's file after an investigation in 11,232 cases, or just over 65% of the time.  Ex. 12, Boyst Dep. at 20:6-12 (A-320).

Defendant testified that the removal of the criminal record indicates a confirmed non-match, and that records are so removed because they, in fact, were not properly matched in the first instance.  *Id.* at 21:5-25 (A-321).  Defendant could not confirm that for the remaining 35% the criminal record stayed on the file because the disputing consumer had actually committed the crime at issue or truly had a criminal history.  *Id*. at 40:11-19 (A-340).

Within the two-year statute of limitations period applicable here, Defendant has provided supplemental discovery showing that between March 6, 2017 and December 20, 2019, RealPage processed REDACTED criminal "non-match" disputes received from consumers, and removed a criminal record from the report as a result of its investigation for REDACTED such disputes.  REDACTED REDACTED  Again the error rate for the disputing population in this more recent, post-enhancement time period is approximately 65%.

Defendant had no data about what percentage of the population which did not dispute had accurate criminal records attributed to them as a result of the matching logic.  Ex. 3, Ramesh Dep.

at 58:16-25 (A-083).  Of course, a dispute is not a pre-requisite for, nor an element of, an FCRA section 1681e(b) claim, 15 U.S.C. § 1681e(b), such as the one at bar, and it is widely known that many consumers do not dispute or even know how to dispute.

Examining reports prepared and sold by Defendant about tenant applicants, *regardless of dispute*, discovery has revealed that between March 6, 2017 and February 25, 2020, Defendant furnished ███████ reports that included one or more items of criminal record information for which the first and last name of the individual input by the property was: (1) not a character-for-character match to the first and last name of the offender listed on the criminal record; and (2) also was not a character-for-character match to any of the alias names listed on the criminal record.  ███████

███████████████████████████████████████████████████████████

███████████████████████████  In ███████ such cases, the name on the criminal record did not match a further data-point – the additional name(s) identified by one of the nationwide consumer reporting agencies as being used by the same individual in a credit report relating to the applicant that was obtained by RealPage at the time of the screening report.  *Id.*

In other words, for over ███████ tenant applicants, Defendant has placed a criminal record on their background reports even though the first and last name of the perpetrator of the crime (including any and all alias used by the perpetrator) was *not* a match to the tenant applicant's first and last name as it appears either on the rental application *or* his or her credit report.

The disparity in possible names that can comprise this non-match population is vast and astounding.  For example, Defendant's Manjit Sohal, who oversaw the name-non-match searches and verified Defendant's interrogatory responses, testified that each of the hypothetical names in

13

the list below would be *within* both the ▮REDACTED▮ and ▮REDACTED▮ populations:

| | Tenant Applicant Name | Criminal Record Name | Criminal Alias Name | Response to Interrogatory 15 In | Out |
|---|---|---|---|---|---|
| 1 | Geoffrey Smith | George Smith | n/a | ✓ | |
| 2 | James Jackson | Jamal Jackson | James Washington | ✓ | |
| 3 | Jamal Jones | George Jones | Sandra Fuller | ✓ | |
| 4 | Gina Rivera | Jane Rivera | Jane Austen | ✓ | |
| 5 | Gina Rivera | Jane Austen | Jane Rivera | ✓ | |
| 6 | Dana Reed | Jimmy Jones | Tony Reed | ✓ | |
| 7 | Diane Jones | Tina Jones | n/a | ✓ | |
| 8 | Diane Jones | Toni Taylor | Tina Jones | ✓ | |
| 9 | Alexander Johnson | Stephanie Sola | Sandy Fuller | ✓ | |
| 10 | John Kim | Jean Kim | Rose Park | ✓ | |

If RealPage sold a report with the following names:

**EXHIBIT 3** Soha 1-2087 2-11-2020 CS

**Exhibit 6** 3:19-cv-02087-B Sohal 4/17/2020

**REDACTED** (previously also marked as Ex. 3 to the February 11, 2020 deposition of Mr. Sohal) (checkmarks added by Mr. Sohal during his deposition).

The "Diane Jones" vs. "Toni Taylor" a/k/a "Tina Jones" scenario is under entries 7 and 8 on the list above. There is no question that other names on the list above would also result in a "match" according to Defendant's loose name and double metaphone matching logic.[9] Moreover, although the actual names of the persons in these populations has not yet been turned over in discovery, the ▮REDACTED▮ and ▮REDACTED▮ non-match figures that comprise Defendant's third supplemental response to Plaintiff's Interrogatory 15 come from searches in RealPage's tenant screening database and represent individual tenant applicants such as Ms. Jones. **REDACTED**

▮REDACTED▮

---

[9]    REDACTED
▮REDACTED▮

**H.**    **RealPage Already Has Better Procedures to Assure Accuracy**
**Available to It, But Employs Them Only After the Damage Is Done**



REDACTED

REDACTED

This is the case even though CRAs such as Defendant have been put on notice for years that they must exercise great care on matching criminal records to consumers in preparing background reports.  For example, the Consumer Financial Protection Bureau (CFPB), pursuant to its enforcement authority for the FCRA, found in 2015 following an investigation that GIS, one of Defendant's competitors, had systematically failed to employ reasonable procedures to assure maximum possible accuracy.  CFPB Consent Order – Admin Proceeding No. 2015-CFPB-0028 at

p. 1.[10]  The CFPB made clear that CRAs should use as many personal identifiers as were available on the public record, including social security number, and should employ special algorithms for common names, such as Jones.  *Id.* at pp. 11-12.

More particularly, this very Defendant was fined $3 million by the Federal Trade Commission (FTC) in October 2018 for its failure to comply with the FCRA in several respects, including failing to assure the maximum possible accuracy of criminal records data in its tenant screening reports.  *See* https://www.ftc.gov/enforcement/cases-proceedings/152-3059/realpage-inc.  The FTC Complaint noted that "in numerous instances, RealPage provided consumer reports to clients, including landlords and property managers, that included criminal records of individuals other than the applicant . . . ."  *Id.*, FTC Complaint ¶ 23.  Regrettably, this practice continues.

## III.   LAW AND ARGUMENT

### A.   Legal Standard

The legal standard under Fed. R. Civ. P. 23 that a movant must satisfy in order for a court to certify a class is well known.  *See Seeligson v. Devon Energy Prod. Co., L.P.*, No. 3:16-CV-00082-K, 2020 WL 636224, at *3 (N.D. Tex. Feb. 11, 2020) (leave to appeal denied, No. 20-90011, 2020 WL 2517089 (5th Cir. May 15, 2020)).  Plaintiff satisfies this standard here.

### B.   The Proposed Class Satisfies Rule 23's Requirements.

#### 1.   The Class Is Ascertainable.

Implicitly, and as a threshold matter, Rule 23 requires a class to be precisely defined so that its membership is ascertainable.  *Seeligson v. Devon Energy Prod. Co., L.P.*, 761 F. App'x 329, 334 (5th Cir. 2019) (a party need only demonstrate — "at some stage of the proceeding" — that the class is "adequately defined and clearly ascertainable.") (citations omitted).  That is the

---

[10]     Available   at   http://files.consumerfinance.gov/f/201510_cfpb_consent_order_general-information-service-inc.pdf

case here.

The general class uses objective data from the face of Defendant's own background reports to identify those class members for whom Defendant placed a criminal record on their reports even though their first and last names did not match the first and last names on the criminal record attributed to them.  **REDACTED**

**REDACTED**

**REDACTED**

**REDACTED** *see also* Ex. 12, Boyst Dep. at 20:6-21:25 (A-320-21).  The class and sub-class are therefore well defined and ascertainable from Defendant's own business records.[11]

Every class member here can be identified using objective data, and members who meet the class definition can be pinpointed by name and address, since Defendant has prepared background reports for each of them and keeps such reports in its database.

    2.    <u>The Class and Sub-Class Satisfy the Rule 23(a) Prerequisites.</u>

        *a.*    *The Class and Sub-Class Are Sufficiently Numerous.*

The first of the four prerequisites to certification found in Rule 23(a), numerosity, requires that the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, there are **REDACTED** of class members in the main class and over **REDACTED**

---

[11]      The fact that Plaintiff proposes both a class and sub-class is of no moment.   Federal courts have routinely appointed one class representative to represent both a class and sub-class, or even multiple classes.  *See Head v. Citigroup, Inc.*, No. CV-18-08189-PCT-DLR, 2020 WL 1671583 (D. Ariz., Apr. 3, 2020) (granting motion to amend to add second named plaintiff to represent both class and sub-class where one named plaintiff already represented both class and sub-class); *LaRocque v. TRS Recovery Servs.*, Inc., 285 F.R.D. 139, 149-51 (D. Maine 2012) (certifying class with one named plaintiff representing each of the four classes); *Church v. Consol. Freightways, Inc.*, No. C-90-2290, 1991 WL 284083, *7 (N.D. Cal. June 14, 1991) (certifying class in which named plaintiffs represented both the class and the sub-class).

in the sub-class.  REDACTED  The class and sub-class are obviously

numerous.

> b.    The Class and Sub-Class Share Common Questions of Law
>        and Fact.

Commonality requires that "there are questions of law or fact common to the class." Fed.

R. Civ. P. 23(a)(2).  A common question "must be of such a nature that it is capable of classwide

resolution — which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each one of the claims in one stroke."  *Seeligson*, 761 F. App'x at 334

(quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  This requirement "can be

satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious

effects – the damages – are diverse."  *In re Deepwater Horizon*, 739 F.3d 790, 810-11 (5th Cir.

2014).

Here, the core factual and legal issues are common to all class members:  Defendant

acquired all its criminal records data from BGC (Ex. 4 (A-181-92)), it matched it to class members

using its matching logic (Ex. 10 (A-278-80)), REDACTED

REDACTED , and because of this non-match all class members had false and

harmful information associated with them.  The class and sub-class's legal issues are also the same.

They each have a claim under FCRA section 1681e(b) stemming from the same uniformly faulty

procedures; and they each seek uniform statutory damages under FCRA section 1681n(a).  The

requirements of Fed. R. Civ. P. 23(a)(2) are satisfied.

> c.    Plaintiff's Claim Is Typical of Other Class Members'
>        Claims.

Typicality requires that "the claims or defenses of the representative parties are typical of

the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The test for typicality is "not

demanding" and "focuses on the similarity between the named plaintiffs' legal and remedial

theories and the theories of those whom they purport to represent." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (citation omitted).   Here, either Defendant's criminal data acquisition and matching logic procedures are reasonable, or they are not, under FCRA section 1681e(b).   Plaintiff's and all class member claims, therefore, will rise or fall together.   Further, the relief sought in the form of statutory damages is uniform under FCRA section 1681n(a).   Typicality is satisfied.

        d.       *Plaintiff and Her Counsel Will Adequately Represent the Interests of Absent Class Members.*

The adequacy requirement ensures that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).   In determining adequacy of representation, courts must determine: (1) whether the class members have interests that are not antagonistic of one another and (2) whether class counsel are qualified, experienced and generally able to conduct the litigation.  *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

Here, these standards are easily met.   Plaintiff will fairly and adequately protect the interests of the class and has no antagonistic interests that conflict with those of the class.   She attended the Rule 16 conference in person in the Northern District of Ohio, produced documents, verified interrogatories, sat for a deposition, knows the case well and has fully met her responsibilities as a class representative.  *See* Ex. 20, Plaintiff's Dep., January 14, 2020, at 41:14-52:17 (A-612-23).

Likewise, Plaintiff's counsel satisfy the adequacy requirement of Rule 23(a)(4), as they are qualified, experienced in class action and FCRA litigation, and are able to vigorously conduct the litigation.   *See* Ex. 21 (Francis Mailman Soumilas, P.C. firm biography); *see also* https://www.consumerlawfirm.com/;   https://www.caddellchapman.com/;   https://lfdslaw.com/; https://www.omdplaw.com/; https://www.cml.legal/.

3.      The Class and Sub-Class Also Meets the Rule 23(b)(3)
        Prerequisites.

In addition to meeting the four requirements of Rule 23(a), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b).  Rule 23(b)(3), at issue here, requires the court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b).  Predominance and superiority are found here.

*a.  Common Issues Predominate.*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  The predominance inquiry "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials."  *Seeligson*, 761 F. App'x at 338.

The elements of Plaintiff's substantive claims are subject to proof by generalized, common evidence:  First, Defendant's 12-page contract with BGC forms the basis for the quality, standards and pricing for the acquisition of all of the criminal records data that was inaccurately associated with class members.  Ex. 4 (A-181-92).  REDACTED

REDACTED

REDACTED

These are the absolutely central and predominating liability issues in this case.  Indeed, these two exhibits (Exs. 4 (A-181-92) and REDACTED as well as testimony of Defendant's Rule 30(b)(6) witnesses Ms. Ramesh REDACTED  and Ms. Boyst (Ex. 12) (A-301-60) will

allow a jury to determine whether the non-matches that affected all class members were a result of "reasonable procedures" that assured the "maximum" level of accuracy.

In this case, as in most FCRA class actions, Plaintiff seeks uniform statutory damages up to $1,000 per class member.  *See Stillmock v. Weis Markets, Inc.*, 385 Fed. App'x 267, 273 (4th Cir. 2010) (common damage issues predominate where class seeks statutory damages); *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 423 (N.D. Cal. 2014) (finding predominance satisfied and certifying FCRA section 1681e(b) claims of class of consumers seeking statutory damages who had false terrorist alerts from a government watchlist placed on their credit reports), *affirmed Ramirez v. TransUnion, LLC*, 951 F.3d 1008 (9th Cir. 2020).[12]  The same statutory damages relief is sought here.  Accordingly, this case readily meets the predominance standard.

---

[12]      Further, the fact that Plaintiff is seeking statutory damages in this motion, and does not have the burden of proving actual damages, does not at all suggest that she was not injured – she was.  The reporting of false information about consumers on their reports is in-itself injurious.  *See Ramirez v. TransUnion, LLC*, 951 F.3d 1008, 1029 (9th Cir. 2020).  Defendant may suggest that the publication of the false criminal records is not enough in itself to show injury, but this argument would be mistaken.  *See Three Expo Events, L.L.C. v. City of Dallas, Texas,* 907 F.3d 333, 342 (5th Cir. 2018) (reversing district court's Art. III lack of injury finding where plaintiff's "reputational injury [is] likely redressable by injunctive or declaratory relief" and noting that "'[t]he Supreme Court has long recognized that an injury to reputation will satisfy the injury element of standing.'") (*quoting  Gully v. Nat'l Credit Union Admin. Bd*., 341 F.3d 155, 161 (2d Cir. 2003) (*citing Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 139, 71 S.Ct. 624, 95 L.Ed. 817 (1951))*; Robins v. Spokeo, Inc. ("Spokeo III")*, 867 F.3d 1108, 1114 (9th Cir. 2017) (finding in FCRA case concrete injury sufficient to satisfy Art. III standing where "the threat to a consumer's livelihood is caused by the very existence of inaccurate information in his credit report and the likelihood that such information will be important to one of the many entities who make use of such reports"); *Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 875 (W.D. Tex. Aug. 31, 2016) (in FCRA § 1681b(a)(3)(A) and § 1681e(a) class action, finding invasion of privacy to be concrete injury sufficient to establish Art. III standing and denying motion to dismiss in part on those grounds); *see also Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001) ("Damages for . . . loss of reputation as a result of the false report . . . are recoverable under FCRA"); *Fischl v. Gen. Motors Acceptance Corp*., 708 F.2d 143, 148 (5th Cir. 1983) (damages may include "out-of-pocket monetary losses, injury to credit reputation and mental anguish, humiliation or embarrassment"); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 719 (3d Cir. 2010) ("The psychological and stress-related suffering that Cortez had to endure is the very kind of injury that would be expected to result from erroneously associating a consumer with a "Specially Designated National" on her report). Indeed, courts have understood that because some of these concrete yet non-economic harms are difficult to quantify, statutes like the FCRA allow for the alternative form of relief of statutory damages. *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 952 (7th Cir. 2006) (the FCRA provides for modest statutory damages without proof of actual damages because actual losses may be small and hard to quantify).

           b.      *A Class Action Is the Superior Means of Litigating These Claims.*

Rule 23(b)(3) also requires the court to find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See Mullen*, 186 F.3d at 627 (class actions can promote judicial economy by avoiding wasteful, duplicative litigation). [13]

Here, Plaintiff seeks statutory and punitive damages, along with attorney's fees and costs under the FCRA. *See* 15 U.S.C. § 1681n(a). None of the individual class members possess any controlling interest in the litigation. Likewise, the absence of any competing classes or numerous other individual claims suggests that without the certification of this class, it is unlikely that the class members would obtain any form of relief. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997). No serious manageability issues exist here. Indeed, a similar FCRA section 1681e(b) class action involving inaccurate reporting of public records data (in that case involving OFAC alerts from the Department of Treasury) was tried to verdict in less than two weeks in 2017. *Ramirez v. TransUnion, LLC*, 951 F.3d 1008 (9th Cir. 2020) (affirming class certification, willful liability findings, and FCRA statutory damages, but reducing punitive damages for class members to 4:1 ratio). Finally, unless this class is certified, it is highly probable that the putative class members will receive no relief. For these reasons, the requirements of Rule 23(b)(3) are also satisfied.

## IV.    CONCLUSION

In sum, Defendant here has turned Blackstone's maxim – that it's better for ten guilty people to go free than one innocent person to suffer – on its head. Through intentionally inferior

---

[13] The factors relevant to assessing superiority include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

record-collection and record-matching practices, Defendant ensures that every year thousands of individuals are inaccurately and falsely linked to crimes they did not commit, and defamed and denied housing in the process.  Even more gallingly, and willful under FCRA section 1681e(b), only after one of its reports has injured someone and they dispute the false records contained therein does Defendant employ the types of accuracy-assuring procedures to correct the report that the FCRA mandates it use in the first instance "to assure maximum possible accuracy" every time it prepares a report.  This is closing the stable door after the horse bolts on a truly astounding level, with thousands of corrected reports over the class period and an inaccuracy rate for those who disputed in the area for 65%.

Based on the foregoing evidence and arguments, Plaintiff respectfully requests that this Court enter an order certifying the class defined above, deem Plaintiff Jones an adequate representatives of the class, and appoint Jim Flegle and Donna Lee of Loewinsohn Flegle Deary Simon, LLC; Michael A. Caddell, Cynthia B. Chapman and Amy E. Tabor of Caddell & Chapman; John Soumilas, David A. Searles, Lauren KW Brennan and Edward H. Skipton of Francis Mailman Soumilas, P.C.; and Edward Y. Kroub of Cohen & Mizrahi LLP as Class Counsel.

DATED:        May 29, 2020

Respectfully submitted,

**FRANCIS MAILMAN SOUMILAS, P.C.**

 /s/ John Soumilas
John Soumilas (*pro hac vice*)
David A. Searles (*pro hac vice*)
Lauren KW Brennan (*pro hac vice*)
Edward H. Skipton (*pro hac vice*)
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Telephone:     (215) 735-8600
Facsimile:     (215) 940-8000
Email:         jsoumilas@consumerlawfirm.com
               dsearles@consumerlawfirm.com
               lbrennan@consumerlawfirm.com
               eskipton@consumerlawfirm.com

Michael A. Caddell
Cynthia B. Chapman
Amy E. Tabor
**Caddell & Chapman**
628 East 9th Street
Houston, TX 77007
T: 713.751.0400
E. mac@caddellchapman.com
E: cbc@caddellchapman.com
E: aet@caddellchapman.com

Jim Flegle
Donna Lee
**Loewinsohn Flegle Deary Simon LLP**
12377 Merit Drive, Suite 900
Dallas, TX 75251
T: 214.572.1700
E: jimf@lfdslaw.com
E: donnal@lfdslaw.com

25

Matthew A. Dooley (0081482)
Stephen M. Bosak, Jr. (0092443)
**O'TOOLE, McLAUGHLIN, DOOLEY &**
**PECORA, CO., LPA**
5455 Detroit Road
Sheffield Village, Ohio  44054
Telephone:    (440) 930-4001
Facsimile:    (440) 934-7208
Email:         mdooley@omdplaw.com
                sbosak@omdplaw.com

Edward Y. Kroub
**Cohen & Mizrahi LLP**
300 Cadman Plaza West, 12th Floor
Brooklyn, NY  11201
T:  929/575-4175
F: 929/575-4195
E: edward@cml.legal

*Counsel for Plaintiffs and the Proposed Class*

### CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2020, caused a copy of Plaintiff's Motion for Class Certification was electronically filed with the Court's CM/ECF system, which shall send electronic notification of this filing to all counsel/parties of record.

*/s/ John Soumilas*
John Soumilas
*Counsel for Plaintiff*

26