**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| DIANE D. JONES, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civ. No. 3:19-cv-02087-B |
| | ) | |
| REALPAGE, INC. d/b/a LEASINGDESK SCREENING, | ) | |
| | ) | |
| | ) | |
| *Defendant*. | ) | |

**DEFENDANT REALPAGE, INC.'S MEMORANDUM IN SUPPORT OF ITS
<u>OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

FACTS ................................................................................................................. 3

I.   THE BACKGROUND SCREENING INDUSTRY MUST ACCOUNT FOR
     VARIABILITY IN CRIMINAL RECORDS FROM THOUSANDS OF
     JURISDICTIONS. ......................................................................................... 3

II.  REALPAGE'S MATCHING LOGIC IS HIGHLY COMPLEX AND VARIED............. 4

III. IN SEPTEMBER 2017, REALPAGE IMPLEMENTED A NEW MATCHING
     LOGIC VARIABLE. ....................................................................................... 6

IV.  REALPAGE'S DISPUTE PROCEDURES....................................................... 6

V.   PLAINTIFF'S 2017 APPLICATION FOR HOUSING. ...................................... 7

LEGAL STANDARD............................................................................................. 8

ARGUMENT ...................................................................................................... 10

I.   THE PROPOSED CLASS DEFINITIONS DO NOT TRACE THE ELEMENTS
     OF PLAINTIFF'S CLAIM. ........................................................................... 11

II.  INDIVIDUAL ISSUES PREDOMINATE, MAKING CLASS CERTIFICATION
     INAPPROPRIATE. ..................................................................................... 12

     A.    Individualized issues will predominate with respect to determining
           whether there was an inaccuracy on each putative class member's
           consumer report. ............................................................................ 12

           i.    There is no proof of inaccuracy for anyone in the principal
                 proposed class. ...................................................................... 13

           ii.   There is no proof of inaccuracy for the dispute-based putative
                 "subclass."............................................................................. 14

     B.    Individualized issues about the reasonableness of RealPage's matching for
           any given consumer report predominate............................................ 16

     C.    Individualized causation and damages determinations would be required.......... 19

     D.    Plaintiff's identified common questions are underinclusive and irrelevant........ 21

III. PLAINTIFF'S MOTION FAILS BASED ON NUMEROUS OTHER RULE 23
     ELEMENTS............................................................................................... 22

     A.    Plaintiff is an atypical and inadequate class representative. ................. 22

     B.    A class action is an inferior method of adjudication for this case. ...... 24

CONCLUSION................................................................................................... 26

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) ................................................................................24

*Barnett v. Experian Info. Solutions, Inc.*,
   No. 00-CV-175, 2004 WL 4032909 (E.D. Tex. Sept. 30, 2004)......................................10, 25

*Benavides v. Chi. Title Ins.*,
   636 F.3d 699 (5th Cir. 2011) ................................................................................15

*Broussard v. Meineke*,
   155 F.3d 331 (4th Cir. 1998) ................................................................................25

*Castano v. American Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) ................................................................................9

*Chavez v. Plan Benefit Servs., Inc.*,
   957 F.3d 542 (5th Cir. 2020) ................................................................................9

*Childress v. Experian Info. Solutions, Inc.*,
   790 F.3d 745 (7th Cir. 2015) ................................................................................22

*Clark v. Experian Info. Solutions, Inc.*,
   No. 00-CV-1217-24, 2001 WL 1946329 (D.S.C. Mar. 19, 2001)..........................................10

*Clark v. Experian Info. Solutions, Inc.*,
   No. 16-CV-32, Dkt. No. 150 (E.D. Va. Feb. 1, 2019)............................................10

*Clark v. Trans Union LLC*,
   No. 15-CV-00391, Dkt. No. 273 (E.D. Va. Aug. 29, 2018)....................................11

*Comcast Corp. v. Behrend*,
   133 S.Ct. 1426 (2013)................................................................................20

*In re Constar Int'l Sec. Litig.*,
   585 F.3d 774 (3d Cir. 2009)................................................................................8

*Cousin v. Trans Union Corp.*,
   246 F.3d 359 (5th Cir. 2001) ................................................................................18

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
   895 F.3d 1166 (9th Cir. 2018) ................................................................................19

**TABLE OF AUTHORITIES**
(continued)

**Page**

*E. Texas Motor Freight Sys. Inc. v. Rodriguez*,
  97 S. Ct. 1891 (1977) ............................................................................................................. 9

*Farmer v. Phillips Agency, Inc.*,
  285 F.R.D. 688 (N.D. Ga. 2012) ............................................................................ 12, 17, 22

*Feliciano v. CoreLogic Rental Property Solutions, LLC*,
  322 F.R.D. 98 (S.D.N.Y. July 29, 2019) .............................................................................. 11

*Fisher v. Ciba Specialty Chems. Corp.*,
  238 F.R.D. 273 (S.D. Al. 2006) ........................................................................................... 21

*Flecha v. Medicredit, Inc.*,
  946 F.3d 762 (5th Cir. 2020) ............................................................................................... 24

*FTC v. RealPage, Inc.*,
  18-CV-2737, Dkt. No. 1 (N.D. Tex. 2018) ............................................................................ 6

*Go-Bart Importing Co. v. United States*,
  282 U.S. 344 (1931) ............................................................................................................. 16

*Gomez v. Kroll Factual Data, Inc.*,
  No. 13-CV-445, 2014 WL 1456530 (D. Colo. Apr. 14, 2014) ............................... 2, 10, 12, 16

*Harper v. Trans Union, LLC*,
  No. 04-CV-3510, 2006 WL 3762035 (E.D. Pa. Dec. 20, 2006) ................................. 10, 13, 25

*In re Heartland Payment Sys., Inc.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................................... 11

*Johnson v. Kansas City S.*,
  224 F.R.D. 382 (S.D. Miss. 2004) ......................................................................................... 9

*Jones v. Sterling Infosystems*,
  317 F.R.D. 404 (S.D.N.Y. 2016) ......................................................................................... 19

*Kalodner v. Michaels Stores, Inc.*,
  172 F.R.D. 200 (N.D. Tex. 1997) ..................................................................................... 9, 22

*Khalif L. v. City of Union City*,
  No. 09-CV-2723, 2012 WL 13048876 (N.D. Cal. May 8, 2012) .......................................... 11

*Klotz v. Trans Union LLC*,
  246 F.R.D. 208 (E.D. Pa. 2007) ..................................................................................... 13, 25

**TABLE OF AUTHORITIES**
(continued)

Page

*Lee v. Verizon Commc'ns, Inc.*,
   837 F.3d 523 (5th Cir. 2016) ................................................................19

*Lindsey v. Normet*,
   405 U.S. 56 (1972)................................................................................10

*Madison v. Chalmette Ref., L.L.C.*,
   637 F.3d 551 (5th Cir. 2011) ..............................................................3, 9

*Moore v. First Advantage Enter. Screening Corp.*,
   No. 12-CV-92, 2013 WL 1662959 (N.D. Ohio Apr. 17, 2013)..............5, 16, 22, 24

*Owner-Operator Independent Drivers Ass'n v. USIS Commercial Svcs, Inc.*,
   537 F.3d 1184 (10th Cir. 2008) .......................................................10, 12

*Patel v. Trans Union, LLC*,
   308 F.R.D. 292 (N.D. Cal. 2015) ..........................................................11

*Pendleton v. Trans Union Systems*,
   76 F.R.D. 192 (E.D. Pa. 1977)..............................................................10

*Pinson v. Equifax*,
   No. 06-CV-162, 2008 WL 906222 (N.D. Okla. 2008) ...........................14

*Potter v. Greensky, LLC*,
   No. 19-CV-581, 2019 WL 5292494 (W.D. Tx. Oct. 18, 2019)...............19

*Ramirez v. TransUnion, LLC*,
   951 F.3d 1008 (9th Cir. 2020) ..............................................................11

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007)................................................................................18

*Sarver v. Experian Info. Sols.*,
   390 F.3d 969 (7th Cir. 2004) ................................................................22

*Sepulvado v. CSC Credit Servs., Inc.*,
   158 F.3d 890 (5th Cir. 1998) ................................................................10

*Smith v. E-Backgroundchecks.com, Inc.*,
   81 F. Supp. 3d 1342 (N.D. Ga. 2015) ...................................................16

*Smith v. LexisNexis Screening Sols., Inc.*,
   837 F.3d 604 (6th Cir. 2016) ...........................................................19, 23

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Soutter v. Equifax Info. Servs., LLC*,
    307 F.R.D. 183 (E.D. Va. Apr. 15, 2015) ..........................................................................11, 24

*Soutter v. Equifax Info. Servs., LLC*,
    498 Fed. App'x 260, 265 (4th Cir. 2012) ...............................................................................20

*Stillmock v. Weis Mkts., Inc.*,
    385 Fed. App'x. 267 (4th Cir. 2010) .......................................................................................11

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011).....................................................................................................11

*Toliver v. Experian Info. Sols., Inc.*,
    973 F. Supp. 2d 707 (S.D. Tex. 2013) ..............................................................................10, 12

*Wal-Mart Stores v. Dukes*,
    131 S. Ct. 2541 (2011)..............................................................................9, 10, 19, 21, 22

*Wenning v. On-Site Manager, Inc.*,
    No. 14-CV-9693, 2016 WL 3538379 (S.D.N.Y. June 22, 2016) ...........................................23

*Williams v. LexisNexis Risk Mgmt., Inc.*,
    No. 06-CV-241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007)..............................................10

*Wilson v. CoreLogic SafeRent, LLC*,
    No. 14-CV-2477, 2017 WL 4357568 (S.D.N.Y. Sept. 29, 2017)....................................10, 15

*Zachery v. Texaco Expl. & Prod., Inc.*,
    185 F.R.D. 230 (W.D. Tex. 1999) ...........................................................................................9

**Statutes**

15 U.S.C. § 1681e(b) ..........................................................1, 2, 10, 11, 12, 14, 15, 16, 19, 21, 23

15 U.S.C. § 1681i...................................................................................................................14

15 U.S.C. § 1681n(a) ........................................................................................................18, 20

15 U.S.C. § 1681o..................................................................................................................25

Fed. R. Civ. P. 23 ..............................................................................2, 3, 6, 9, 12, 20, 22, 25

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Other Authorities**

Philips, L., "Double Metaphone Search Algorithm.," *C/C++ Users J.* 18, at pp.
    38-43 (2000)...........................................................................................................................4

Defendant RealPage, Inc. ("RealPage"), by counsel, submits the following Opposition to Plaintiff Diane Jones's ("Plaintiff") Motion for Class Certification ("Motion," Dkt. No. 127).

## **INTRODUCTION**

Plaintiff seeks the certification of a class under 15 U.S.C. § 1681e(b) of the Fair Credit Reporting Act ("FCRA") for instances where she alleges RealPage "willfully" used "unreasonable procedures" to match criminal records to housing applicants. To do so, Plaintiff must prove: (1) there was an inaccuracy in every class members' consumer report; (2) that the inaccuracy was the product of uniformly unreasonable procedures that were willfully violative of § 1681e(b) for each class member; (3) that the procedures caused harm to each class member; and (4) did so in ways capable of resolution through a single damages determination. Yet, she cannot even meet the first element. She has not identified a *single* "inaccurate" record for a *single* other putative class member, and such an inquiry would require tens of thousands of individualized report-by-report comparisons with underlying criminal records from thousands of jurisdictions. Plaintiff instead proposes a proxy for "inaccuracy" that is based on nothing more than when a criminal record was matched to an offender with a first name that was one or more characters off from the applicant's name, despite the record otherwise being required to pass at least six additional, robust record filtering steps that do not implicate an applicant's first name (*i.e.*, a match on first name alone is insufficient). That proxy is neither credible nor rigorous. Likewise, Plaintiff's proposal to certify a purported "subclass" based on the existence of a prior consumer dispute fails because a dispute is not even indicative of a prior report, let alone an inaccurate one.

Accuracy issues aside, Plaintiff also must prove that RealPage acted unreasonably in the same manner for every screening report it generated with respect to its decision to match criminal records to the tens of thousands of consumers who comprise the proposed class. Yet, RealPage's matching logic contains *hundreds* of different combinations, all of which would implicate differing

facts informing an assessment of the reasonableness of RealPage's procedures. That determination would further implicate the identifying information that the relevant court system/agency did or did not make available about an offender. Plaintiff's proposed classes implicate *thousands* of court systems and agencies, each with differing procedures. And, even within a single jurisdiction the information made publicly available varies from record to record, case to case, and over time.

Plaintiff's Motion does not even attempt to address these flaws, which are individualized inquiries that cause courts to routinely deny certification under § 1681e(b). *Gomez v. Kroll Factual Data, Inc.*, No. 13-CV-445, 2014 WL 1456530, at *4 (D. Colo. Apr. 14, 2014) ("The individualized nature of a [§ 1681e(b)] claim—particularly one seeking statutory damages—has led most courts to deny class certification in these types of cases.") (collecting cases).

Plaintiff's Motion also fails to satisfy multiple other elements under Fed. R. Civ. P. 23(a) and (b)(3). For instance, Plaintiff is an inadequate and atypical class representative, including because her individual circumstances – where her dispute was resolved by RealPage in one day and where she was then offered the apartment – do not support a "willful" violation of the FCRA. Additionally, a month after her screening report was prepared, RealPage implemented a different matching logic process. Plaintiff cannot represent those differently-situated consumers. Plaintiff also appears to suggest that RealPage should have gathered paper files of court records to locate "additional" identifiers for matching, including Social Security numbers. Yet, for her supposed "proof" that the paper court file contained more identifying information than was identified by RealPage, she presented the file from a completely different and irrelevant court case. And, in any event, such a "paper-file" inquiry would be highly individualized for each class member.

The proposed class action also is an inferior method of adjudication based on the need for thousands of individual mini-trials, the availability of relief via individual litigation, and the lack of any trial plan.

Because of "the important due process concerns . . . inherent in the certification decision, the Supreme Court requires district courts to conduct a rigorous analysis of Rule 23 prerequisites." *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 554 (5th Cir. 2011).  And, the party seeking certification bears the burden of establishing that all of the requirements of Rule 23 have been met. *Id.* at 554-55.  Plaintiff falls <u>*far*</u> short of meeting her rigorous burden of proof.

## FACTS

I.     **The background screening industry must account for variability in criminal records from thousands of jurisdictions.**

Thousands of jurisdictions nationwide make public records available regarding criminal history, such as: county and city courts, state departments of corrections, state sex offender registries, and various national criminal lists and databases.  (**Ex. 2**, Declaration of Jessica Jordan ("Jordan Decl."), ¶ 5 (A. 06).)  There is no centralized database of criminal records.  (**Ex. 1**, Declaration of Manjit Sohal ("Sohal Decl."), ¶ 5 (A. 01).)  Instead, records must be collected from each jurisdiction, through whatever means the jurisdiction allows, *e.g.*, electronic case access, public terminal searches, clerk-assisted searches, or bulk data files.  (*Id.*)  Thus, compiling complete and accurate criminal records data for use and inclusion in screening reports is a monumental task.

Given that complexity, RealPage engages a vendor with expertise to supply it with that information from different jurisdictions across the country: Genuine Data Services, LLC ("GDS"). (**Ex. 2**, Jordan Decl., ¶ 4 (A. 06).)  GDS seeks to gather all available personally identifiable information ("PII") associated with the criminal records across all jurisdictions.  (*Id.*, ¶ 6 (A. 06).) However, criminal records contain identifying information that varies significantly across jurisdictions and over time.  (*Id.*, ¶¶ 7-11 (A. 07).)  For instance, some court systems and their records do not include middle names, and others lack full dates of birth or any age information. (*Id.*, ¶¶ 6, 9, 10 (A. 06-7).) Social Security numbers are very rarely, if ever, provided by any

jurisdiction.  (*Id.*, ¶¶ 6, 7, 9, 10 (A. 06-7).)  Some jurisdictions report demographic data such as

gender, race, and photographs, while others omit such information from the public record.  (*Id.*)

## II.    RealPage's matching logic is highly complex and varied.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████,[2] ██████

---

[1] Philips, L., "Double Metaphone Search Algorithm.," *C/C++ Users J.* 18, at pp. 38-43 (2000).

[2] ██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

**III.    In September 2017, RealPage implemented a new matching logic variable.**

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████  ████

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████

**IV.    RealPage's Dispute Procedures**

RealPage recognizes the importance of quickly resolving consumer disputes from consumers who believe some aspect of their report is incorrect.  (**Ex. 3**, Declaration of Lee Castiglione ("Castiglione Decl."), at ¶ 4 (A. 09).)[5]  Consumers contact RealPage to submit disputes for various reasons, such as where consumers learn about the existence of criminal records through file disclosure requests to RealPage, which is a process that does not require the issuance of any

---

[4] Plaintiff cites to the FTC's consent order with RealPage.  While that consent order arising out of a settlement has *no probative effect here*, and is not evidence under Rule 23, the consent order only covered the period before the September 2017 machine learning process went into effect.  *FTC v. RealPage, Inc.*, 18-CV-2737, Dkt. No. 1 at p. 5 (N.D. Tex. 2018).  A 2015 settlement involving a third party that is also cited by Plaintiff is similarly irrelevant.  (*See* Motion at pp. 16-17.)

[5] RealPage also accepts disputes directly from property managers, which can be resolved on an expedited basis without any prompt from a consumer.  (*Id.*)

prior consumer report.  (*Id.*, ¶ 8 (A. 10-11).)  In such circumstances, the dispute is investigated, and the consumer's file may be amended absent any prior report.  (*Id.*)

When an applicant submits a criminal records dispute, the dispute can be classified as a "non-match" based on the consumer's description.[6]  (*Id.*, ¶ 6 (A. 09-10.)  RealPage, however, does not have any further sub-codes within that "non-match" category.  (*Id.*)  Additionally, RealPage will investigate any "non-match" dispute submitted by a consumer, even where there was an exact first and last name match with respect to the applicant and the offender information.  (*Id.*)  The dispute also will be resolved in favor of the consumer if RealPage cannot definitively confirm the record's attribution to the consumer at the time of its investigation.  (*Id.*, ¶ 7 (A. 10).)  RealPage thus frequently errs in favor of the consumer when resolving disputes, and a dispute resolved in favor of the consumer does not correlate to an "admission" that the initial reporting by RealPage was inaccurate.  (*Id.*)

## V.    Plaintiff's 2017 application for housing.

In the Spring of 2017, Plaintiff applied for housing at the Marietta Road Senior High Rise apartment complex in Marietta, Georgia ("Marietta").  (**Ex. 4**, Declaration of Kevin Cook, ("Cook Decl."), ¶ 2 (A. 18).)

Marietta is managed by The Michaels Organization, which manages numerous properties in multiple states.  (*Id.*, ¶ 4 (A. 18-19).)  Each property establishes its own selection criteria to account for the credit, eviction, and criminal history of applicants.  (*Id.*, ¶¶ 4-5 (A. 18-19).)  Those criteria also can vary over time with respect to even one property.  (*Id.*)  Based on those criteria,

---

[6]  The RealPage team responsible for investigating and resolving disputes does not change the initial "non-match" dispute classification based on the outcome of the investigation and whether the record was removed because the record did not belong to a consumer, as opposed to some other reason (such as a record being sealed or expunged).  (*Id.*, ¶ 7 (A. 010).)  Thus, a "non-match" dispute may ultimately be resolved for reasons having nothing to do with the original attribution of the match to the consumer.  (*Id.*)

the existence of a criminal record may or may not be disqualifying, and a criminal record that may be disqualifying at one property will not be disqualifying elsewhere.  (*Id.*, ¶ 6 (A. 19).)

On August 21, 2017, Marietta entered Plaintiff's information into the LeasingDesk software to generate a tenant screening report.  (**Ex. 1**, Sohal Decl., ¶ 13 (A. 04-5).)  Using the information input by Marietta, RealPage's software identified a criminal record previously obtained by GDS from the Georgia Department of Corrections.  (*Id.*) ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

On August 26, 2017, Plaintiff contacted RealPage to dispute the attribution of the Georgia criminal record to her.  (**Ex. 3**, Castiglione Decl., ¶ 9 (A. 11).)  One day later, RealPage amended her report to remove the Georgia criminal record and sent an amended version of the report to the property.  (*Id.*)  From that date on, Plaintiff was eligible to rent an apartment at Marietta, but she informed Marietta that she did not have the funds needed to pursue the apartment and never moved forward with the application.  (**Ex. 4**, Cook Decl., ¶ 9 (A. 20).)

Despite the amendment of her report and her decision to abandon the application, Plaintiff claims substantial actual emotional distress damages, along with the increased rent she claims she paid to another property after she was allegedly denied housing at Marietta.  (Jones Dep. Tr., at 65:21-69:25, Dkt. No. 136, at pp. 636-640.)  However, her counsel abandoned her actual damages claims in the Motion, seeking only statutory/punitive damages for herself and the members of the putative classes to try and achieve class certification.  (*Compare id. with* Motion at p. 4.)

## **LEGAL STANDARD**

Class certification is "an especially serious decision."  *In re Constar Int'l Sec. Litig.*, 585

F.3d 774, 780 (3d Cir. 2009), and it is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2550 (2011). Courts must perform a "rigorous analysis" before certifying any class. *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 544 (5th Cir. 2020).

Plaintiff must prove every element of Rule 23 – "numerosity of parties, commonality of factual or legal issues, typicality of claims and defenses of class representatives, and adequacy of representation," as well as that common questions "predominate" and that a class is a "superior" method of adjudication. *Dukes*, 131 S. Ct. at 2550; *accord Madison*, 637 F.3d at 554-55.

In *Dukes*, the Supreme Court fortified the basic commonality inquiry under Rule 23(a)(2) on which the predominance inquiry rests. 131 S. Ct. at 2551. The central concern "is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

With respect to typicality and adequacy, "class certification is inappropriate" when the "representative is subject to unique defenses which threaten to become the focus of the litigation". *Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 205 (N.D. Tex. 1997). "Where unique defenses against a named plaintiff exist, the Court must consider the potential danger that the attention to this individual defense might harm the class." *Zachery v. Texaco Expl. & Prod., Inc.*, 185 F.R.D. 230, 240 (W.D. Tex. 1999). Such a representative would not be adequate in protecting the interests of the class. *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 97 S. Ct. 1891, 1897 (1977).

Class certification is also not superior when "claims of particular class members . . . involve highly individualized inquiries." *Johnson v. Kansas City S.*, 224 F.R.D. 382, 389 (S.D. Miss. 2004), *aff'd Johnson v. Kansas City S. Ry. Co.*, 208 F. App'x 292 (5th Cir. 2006). "The greater the number of individual issues, the less likely superiority can be established." *Castano v. American Tobacco Co.*, 84 F.3d 734, 745 n.19 (5th Cir. 1996).

9

Finally, "a class cannot be certified [if a defendant] will not be entitled to litigate its defenses to individual claims." *Dukes*, 131 S. Ct. at 2561. "Due process" guarantees a party the right to present "every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972).

## ARGUMENT

To prevail on a claim under § 1681e(b), Plaintiff must prove that for every member of the class: inaccurate information was included on a report and that "the inaccuracy resulted from a negligent or willful failure to use reasonable procedures when the report was prepared." *Toliver v. Experian Info. Sols., Inc.*, 973 F. Supp. 2d 707, 713 (S.D. Tex. 2013) (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895-96 (5th Cir. 1998)). Merely reporting inaccurate information is insufficient to state a claim, as the FCRA it is not a "strict liability" statute. *Id.*

Additionally, even when seeking only statutory damages, each FCRA plaintiff must establish some quantum of actual injury *caused* by the alleged violation. *See*, *e.g.*, *Harper v. Trans Union, LLC*, No. 04-CV-3510, 2006 WL 376203, at *8-9 (E.D. Pa. Dec. 20, 2006) (denying class certification for alleged § 1681e(b) violation because court refused "to hold that a willful and/or negligent violation of the FCRA exposes CRAs to liability with no factual inquiry into whether the absent class members were injured by the violation"). In light of the required elements of her claim, this Court should follow the lead of the *many* courts denying certification under § 1681e(b).[7]

_____

[7] Despite Plaintiff's misstatements to the contrary, the _clear majority_ of federal courts have reached the same conclusion with respect to § 1681e(b) claims. *See, e.g.*, *Wilson v. CoreLogic SafeRent, LLC*, No. 14-CV-2477, 2017 WL 4357568, at *1-2 (S.D.N.Y. Sept. 29, 2017); *Gomez v. Kroll Factual Data*, No. 13-CV-445, 2014 WL 1456530, at *3 (N.D. Cal. April 14, 2014); *Williams v. LexisNexis Risk Mgmt., Inc.*, No. 06-CV-241, 2007 WL 2439463, at *4 (E.D. Va. Aug. 23, 2007); *Owner-Operator Independent Drivers Ass'n v. USIS Commercial Svcs, Inc.*, 537 F.3d 1184, 1194 (10th Cir. 2008) (same); *Harper v. Trans Union, LLC*, No. 04-CV-3510, 2006 WL 3762035, at *8 (E.D. Pa. Dec. 20, 2006); *Clark v. Experian Info. Solutions, Inc.*, No. 00-CV-1217-24, 2001 WL 1946329, at *4 (D.S.C. Mar. 19, 2001); *Barnett v. Experian Info. Solutions, Inc.*, No. 00-CV-175, 2004 WL 4032909, at *5-6 (N.D. Tex. Sept. 30, 2004); *Pendleton v. Trans Union Systems*, 76 F.R.D. 192 (E.D. Pa. 1977).

The cases Plaintiff cites for the contrary proposition are easily distinguishable. For example, some of the cases cited were class _settlement motions_. *Clark v. Experian Info. Solutions,*

I.      **The proposed class definitions do not trace the elements of Plaintiff's claim.**

Initially, if a class definition does not track the elements of the claim, it cannot be certified.

*See, e.g.*, *Khalif L. v. City of Union City*, No. 09-CV-2723, 2012 WL 13048876, at *6 (N.D. Cal.

May 8, 2012) ("Plaintiffs have failed to define [a class] . . . in which membership is properly

related to the merits of plaintiff's claims.  This flaw is fatal.").  Furthermore, a class definition is

considered overbroad if it "includes people who have no legal claim whatsoever."  *Sullivan v. DB*

*Investments, Inc.*, 667 F.3d 273, 340 (3d Cir. 2011).

> Plaintiff asserts one claim under § 1681e(b), on behalf of a putative class and subclass:
>
> *Facially Non-Matching Records Class*: All persons residing in the United States
> and its Territories, beginning two years prior to the filing of the Complaint in this
> matter and continuing through the resolution of the action, about whom RealPage
> furnished a consumer report which included one or more items of criminal record
> information for which the first and last name of the offender did not match the first
> and last name of the person who was the subject of the report.
>
> *Confirmed Non-Match Sub-Class*:  All persons residing in the United States and its
> Territories, beginning two years prior to the filing of the Complaint in this matter
> and continuing through the resolution of the action, about whom RealPage
> furnished a consumer report which included one or more items of criminal record
> information, and for whom RealPage subsequently determined that the item(s) of
> criminal record information was a "non-match."

(Motion, p. 4.)  The proposed "subclass" *is not, in fact, a subclass*, as it has no necessary overlap

with the principal class.  Regardless, neither definition attempts to address the following elements

of a § 1681e(b) claim: objective criteria bearing on the reasonableness of RealPage's reporting,

---

*Inc.*, No. 16-CV-32, Dkt. No. 150 (E.D. Va. Feb. 1, 2019); *Clark v. Trans Union LLC*, No. 15-
CV-00391, Dkt. No. 273 (E.D. Va. Aug. 29, 2018); *In re Heartland Payment Sys., Inc.*, 851 F.
Supp. 2d 1040 (S.D. Tex. 2012).  Other cases Plaintiff cites to *did not involve § 1681e(b) claims*.
*See, e.g. Stillmock v. Weis Mkts., Inc.*, 385 Fed. App'x. 267, 273 (4th Cir. 2010).
    The few other cases cited were from outside of the Fifth Circuit, implicated narrow fact
patterns, and are unpersuasive.  *Ramirez v. TransUnion, LLC*, 951 F.3d 1008 (9th Cir. 2020)
(involving matches to an agency "terrorist watch" list based on name only); *Patel v. Trans Union,
LLC*, 308 F.R.D. 292 (N.D. Cal. 2015) (same); *Feliciano v. CoreLogic Rental Property Solutions,
LLC*, 322 F.R.D. 98 (S.D.N.Y. July 29, 2019) (implicating one court system and updates to housing
court records, not matching); *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183 (E.D. Va. Apr.
15, 2015) (same).

the existence of injury, or proximate cause.  Instead, in what appears to be an attempt at satisfying _only_ the inaccuracy element, the class definitions include all consumers where: (1) the first and last name on the application (taken together) were not an exact, character-for-character match to the combined first and last name of the offender; or (2) a consumer submitted a "non-match" dispute that resulted in amendment of a record, regardless of how the record was originally matched (if at all).  (Motion, p. 4.)  Yet, as discussed below, those two scenarios say nothing about whether a record was inaccurate, let alone address whether the same procedure was used for every proposed class member.  Thus, the definitions are plainly overinclusive and cannot be certified.

## II.   Individual issues predominate, making class certification inappropriate.

### A.   Individualized issues will predominate with respect to determining whether there was an inaccuracy on each putative class member's consumer report.

Certification is inappropriate here because the individualized issue of whether any record was accurately reported will predominate, such that Rule 23(a)(2) and (b)(3) are not satisfied.

Inaccuracy is a _prima facie_ element under any claim made pursuant to § 1681e(b).  _Toliver_, 973 F. Supp. 2d at 713.  Yet, assessing whether a record was accurate as to each proposed class would require extensive and highly individualized determinations for all class members, entailing a report-by-report review each putative class member, along with a comparison of those thousands of reports against the underlying public records.  That analysis is not capable of class certification. _See, e.g._, _Owner-Operator Independent Drivers Ass'n v. USIS Commercial Svcs, Inc._, 537 F.3d 1184 (10th Cir. 2008) ("the accuracy of each individual's [report], an essential element of a § 1681e(b) claim, required a particularized inquiry."); _Gomez_, 2014 WL 1456530, at *3 (denying class certification and explaining that an individualized inquiry is required for "each putative class member . . . to prove that the information in the report . . . was inaccurate"); _Farmer v. Phillips Agency, Inc._, 285 F.R.D. 688, 703 (N.D. Ga. 2012) (denying class certification under analogous FCRA provision: "The scope of this individual inquiry will require a variety of evidence specific

12

to each case—such as the production of the actual up-to-date version of the public record at the time the report was issued."); *Klotz v. Trans Union LLC*, 246 F.R.D. 208, 216 (E.D. Pa. 2007) (denying certification because "whether the disputed information was inaccurate" is an issue "that must be determined individually"); *Harper*, 2006 WL 3762035, at *9 ("proof of [inaccuracy], though traceable to defendants' conduct and policies, will require highly individualized proof.").

That individualized issue would be pervasive across both proposed classes.

### i.      There is no proof of inaccuracy for anyone in the principal proposed class.

Plaintiff's principal class definition is based on instances when the combined first and last name of the applicant did not overlap by one or more characters when compared to the name of the offender.  *Nothing else is required*.  Plaintiff makes no attempt to explain how that one fact could possibly demonstrate "inaccuracy" on a classwide basis for tens of thousands of consumers.

To begin, she lacks any proof of her implausible claim that RealPage's use of non-exact first name matching resulted in an inaccurate report for every single one of those tens of thousands of consumers.  ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

Under these facts, Plaintiff cannot come close to satisfying her evidentiary burden to show that every one of the records that were reported were inaccurate.  That commonsense conclusion

regarding the accuracy of the records reported by RealPage is buttressed by the available dispute statistics. ███████████████████████████████████████████████████

███████████████████████████████████████████████████,[8] █████████████████████

███████████████████████████████████████████████

### ii.    There is no proof of inaccuracy for the dispute-based putative "subclass."

Advancing yet another failed proxy for inaccuracy, Plaintiff's proposed subclass is linked to instances where a criminal non-match dispute was resolved in favor of the disputing consumer.

Initially, the existence of a consumer dispute is not even tied to the issuance of a screening report, let alone an inaccurate report.  Consumers can contact RealPage to contest the accuracy of records that are maintained by the company.  *See* 15 U.S.C. § 1681i.  In addition to disputes arising from reports, consumers also learn about such records through file disclosure requests, or they may proactively contact RealPage about records they believe that the company is maintaining on them. (**Ex. 3**, Castiglione Decl., ¶ 8 (A. 10-11).)   In such circumstances, the dispute will be investigated/resolved, with the record proactively suppressed for that consumer, all in the context of a consumer who was not ever the subject of a report.  (*Id.*)  Those consumers, however, would not have a claim under § 1681e(b), which requires transmission of a report to a third party.  *E.g.*, *Pinson v. Equifax*, No. 06-CV-162, 2008 WL 906222, at *2 (N.D. Okla. 2008).  Those consumers also would not fall under the class definitions, both of which implicate instances where "RealPage furnished a consumer report."  Yet, determining whether the consumer submitting the dispute was even the subject of a prior report would require an individual file review.  (**Ex. 3**, Castiglione Decl., ¶ 8 (A. 10-11).)

Even assuming a prior screening report, RealPage's policy is to give disputing consumers

---

[8] The dispute population implicates *any* type of "non-match" dispute regardless of the logic applied, and thus encompasses an even larger pool of reports than the principal proposed class.

the benefit of every doubt, meaning that disputes will be resolved in favor of the consumer even if the person investigating the dispute believed the record belonged to the consumer, but RealPage could not definitively confirm the record's attribution at the time of the dispute.[9]  In other words, RealPage's reporting may have been entirely accurate but incapable of definitive verification at the time the dispute was investigated.  Mini-trials would abound.  Fundamentally, Plaintiff's attempt to use RealPage's amendment of a record as a proxy to claim "inaccuracy" is not supported by the record, and courts have rejected similar attempts.  *Wilson*, 2017 WL 4357568, at *6 (denying proposed § 1681e(b) class based on criminal dispute data: "Whether a SafeRent sales representative used root terms [to describe how a criminal dispute was resolved] is not necessarily an accurate proxy for the set of individuals for whom SafeRent inaccurately reported criminal record information."); *see also Benavides v. Chi. Title Ins.*, 636 F.3d 699, 702-03 (5th Cir. 2011) (denying class certification because proxies such as a stamp on a prior mortgage are not substitutes for confirmation of prior title insurance and file-by-file reviews would be required).

Finally, the proposed dispute subclass includes innumerable consumers whose disputes were resolved for reasons unrelated to the accuracy of the initial reporting.  The "non-match" classification is based on information provided by the consumer when he or she submits a dispute. (**Ex. 3**, Castiglione Decl., ¶ 6 (A. 09-10).)  Disputes are not reclassified by RealPage's dispute team upon concluding the reinvestigation, so even if a criminal record is removed for a different reason (such as the case being sealed or aging off of a report at the time of the dispute), it will remain classified as a "non-match."  (*Id.*, ¶ 7 (A. 10).)  Put another way, a dispute labeled in the system originally as a "non-match" can be resolved in favor of the consumer even when the initial reporting was indisputably accurate. That determination would require ndividualized review.

---

[9] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

**B.** **Individualized issues about the reasonableness of RealPage's matching for any given consumer report predominate.**

While the element of accuracy alone is fatal to the proposed classes, the individualized nature of the "reasonableness" element will also predominate across both putative classes.

"There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 357 (1931). That is yet another reason why courts routinely refuse to certify classes under § 1681e(b). *See, e.g.*, *Gomez*, 2014 WL 1456530, at *4 (the "inquiries under [§ 1681e(b)] will require the presentation of evidence for each putative class member, and thus, predominate over [the] issue of whether the OFAC-reporting procedures Defendant followed were reasonable"); *Smith v. E-Backgroundchecks.com, Inc.*, 81 F. Supp. 3d 1342, 1358-61 (N.D. Ga. 2015) (denying summary judgment because the reasonableness of the defendant's procedures would depend on the particular circumstances of what identifying information was provided by the applicant and what was in the public record). This Court should reach that same conclusion under the facts present here.

16

███████████████████████████████████████████████████[10]██████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

These failings are even more acute with respect to Plaintiff's dispute subclass, as that subclass spans *every iteration* of RealPage's matching logic, including where the offender's name was an exact match to the applicant's first and last name. (**Ex. 3**, Castiglione Decl., ¶ 6 (A. 09-10).) One such example would be a former named-Plaintiff in this very case, James Arnold, who disputed that the criminal record on his report did not belong to him, even though the offender's first name, last name, and full date of birth were an exact match. (*Id.*, Ex. A (A. 12-17).) Therefore, even more individualized assessments of reasonableness would be required for the proposed dispute subclass.

<u>Second</u>, variations in the underlying public record data made available for matching would also affect the reasonableness determination for any given match. ████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Because Plaintiff is challenging the reasonableness of the matching procedures across criminal records nationwide for both proposed classes, RealPage would be entitled to explore the practices of the jurisdiction for each record at issue. *See, e.g.*, *Farmer*, 285 F.R.D. at 703 (to determine the legal compliance

---

[10] In making that argument, Plaintiff presents a chart of hypothetical names, which she says there is "no question" that RealPage would match. (Motion at p. 14.) That is untrue. Even independent from the other variables considered by the matching logic, five of the hypothetical examples would not be a match under RealPage's naming logic. (*See*, **Exhibit 1**, Sohal Decl., ¶ 13 (A. 04); **Exhibit 5**, Deposition of Manjit Sohal ("Sohal Dep. Tr.") at 74:10-80:17 (A. 22-26).)

███████████████████████████████████████████████████████████████████████

█████████████████████████████████████

of "procedures" used by the defendant "the court would need to determine the [court] source of each piece of adverse information in a consumer's report and then evaluate the quality of that source. This will necessarily entail individualized inquiry for many reports, even if some of the record sources may be common to many potential class members and thus susceptible to classwide proof."). Indeed, because Plaintiff's theory appears to be that RealPage should have gone directly to the courthouse for every record reported, (Motion at p. 16), ████████████████████ ████████████████████████████, *see id.*, that inquiry would vary for each record as to whether court files were available and/or their content (*i.e.*, whether the file included information not retrieved by GDS and provided to RealPage). That analysis would also need to be conducted as of the time of RealPage's reporting, which was often years ago.

Third, whether RealPage "willfully" violated the FCRA, as alleged, would require even more individualized assessments. Plaintiff seeks only statutory and punitive damages. (Motion at p. 4.) Both types of damages are *only* available if Plaintiff can show that RealPage's procedures were not only negligent, but that they were also in "willful" violation of the FCRA. 15 U.S.C. § 1681n(a); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007). And to demonstrate "willful" noncompliance, a plaintiff must show conduct entailing an "unjustifiably high risk of harm" that is "either known or so obvious that it should be known." *Id.* at 57.

As detailed in the preceding paragraphs, litigating the "reasonableness" of RealPage's procedures will implicate varying circumstances for each proposed class member. That means that litigating whether there was a "willful" violation will be even more individualized, as the jury would need to assess whether RealPage's practices for any record were both: (1) negligent; and (2) done with a "reckless" and objectively "unjustifiable" risk of harm. Those are independent assessments. *See*, *e.g.*, *Cousin v. Trans Union Corp.*, 246 F.3d 359, 374 (5th Cir. 2001) ("We may fault the failure to implement a full-proof cloaking procedure as unreasonable [under the FCRA],

18

but we cannot say that it was willful."); *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 610 (6th Cir. 2016) (reversing district court's FCRA "willfulness" finding).  Either way, RealPage has a due process right to contest any claim of a "willful" violation based on the facts of each record challenged by any putative class member.  *See Dukes*, 131 S. Ct. at 2561.

For that reason, courts have rejected class certification where proof of a willful violation is required to prevail.  *E.g.*, *Jones v. Sterling Infosystems*, 317 F.R.D. 404, 413 (S.D.N.Y. 2016) (denying certification against a screening company because although there "will be some general factual overlap regarding the procedures used," each class member would have to prove their claim with respect to "the procedures used to generate his or her report" and also that defendant acted "willfully" at the time it generated each class member's report).  That same result is required here.

### C.      Individualized causation and damages determinations would be required.

Any claimed violation of § 1681e(b) requires a showing of causation.  *Potter v. Greensky, LLC*, No. 19-CV-581, 2019 WL 5292494, at *2 (W.D. Tx. Oct. 18, 2019).    However, Plaintiff's proposed class definitions also say nothing about harm to any consumer that was allegedly caused by RealPage.  That is because assessing whether any criminal record returned by RealPage caused potential harm would require a manual review of each report, as well as testimony from each landlord, further defeating a showing of commonality and predominance.[11]

---

[11] Plaintiff argues that reporting "false" information alone causes injury.  (Motion at p. 22.)  But that legal contention makes no sense in this context, where the reporting may have had no effect whatsoever on the consumer or the application may have been independently denied for reasons having nothing to do with criminal record information.  *See, e.g.*, *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 530 (5th Cir. 2016) ("A bare allegation of improper defined-benefit-plan management under ERISA, without concomitant allegations that any defined benefits are even potentially at risk" does not satisfy Article III); *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1176 (9th Cir. 2018) (undisputed negative credit information alone disqualified plaintiff from employment, "making all of the inaccuracies regarding the disputed aspects of his consumer credit report immaterial as none alone or collectively would establish a concrete injury").

As Plaintiff's potential landlord alone confirmed, a criminal record may have had no effect on a consumer's rental prospects.  (**Ex. 4**, Cook Decl., ¶ 6 (A. 19).)  Or, even if a record was identified, there are numerous other independent bases on which the applicant could be denied, including the credit or landlord tenant sections of a report that appear simultaneously with the criminal information.  (*See id.*, ¶ 5 (A. 19).)  And, in an untold number of instances, a proposed class member may have been *underlined approved* for housing, notwithstanding the appearance of the criminal record in a screening report.  (*Id.*, ¶¶ 6-7 (A. 19).)  Moreover, like Plaintiff, any issues regarding the attribution of a criminal record may be immediately cleared up, with the applicant then provided the opportunity to move into the complex.  (*Id.*, ¶¶ 6-9 (A. 19-20).)  All these issues would bear on causation.

Furthermore, even if causation were established, individualized inquiries would still predominate as to the amount of damages for any class member.  Plaintiff seeks only statutory and punitive damages.  That statutory measure would vary by consumer, between $100 to $1,000.  15 U.S.C. § 1681n(a).  The amount of statutory damages any class member could receive would be an individual issue.  *Souter v. Equifax Info. Servs., LLC*, 498 Fed. App'x 260, 265 (4th Cir. 2012) ("[E]vidence about particular class members is highly relevant to a jury charged with this task").

Plaintiff simply asserts that there are no such damages issues here because she only seeks "uniform statutory" damages, regardless of whether the consumer has been harmed at all.  (Motion at p. 19.)  But, as the Supreme Court held, to claim that "any method of [damages] measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be . . . would reduce Rule 23(b)(3)'s predominance requirement to a nullity."  *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013).  Plaintiff advances no principled reason as to why each proposed consumer – regardless of their circumstances or the outcome of their application – would be entitled to the same statutory sum, if any.  That unprincipled stance is particularly concerning

20

here because the difference in statutory damages awards for each class member potentially impacts

tens of millions of dollars in claimed liability, which RealPage has a due process right to contest.

**D.     Plaintiff's identified common questions are underinclusive and irrelevant.**

Failing to substantively address _any_ of the above issues, Plaintiff instead proposes – in

perfunctory fashion – a list of "common" questions that she claims warrant class certification.  The

common issues are: (1) that RealPage acquired criminal records from GDS; (2) RealPage matched

records to consumers using a claimed "uniform" matching logic; (3) RealPage's logic caused "non-

matches" to occur; and (4) all class members seek statutory damages.  (Motion at p. 19.)

For the preceding reasons, those identified "common" issues either do not exist or are not

tied to the defined class or subclass.  For example, there is no proof that any class member had

"inaccurate" information reported about them that "caused" damages.  RealPage also did not use

"uniform" procedures.  The issues of reasonableness, causation, and inaccuracy are not capable of

resolution "in one stroke" as required.  _See Dukes_, 131 S. Ct. at 2552.  Additionally, the fact that

RealPage maintained a manual process to review court records (if available) in connection with

disputes does not mean that the initial, electronic matching process was _per se_ unreasonable.  And,

it certainly does not give Plaintiff license to ignore the myriad variations between class members

with respect to RealPage's initial reporting, which: (1) is what drives the liability analysis under

§ 1681e(b); and (2) is the only stage of reporting implicated by both class definitions.  _Id._ (denying

class certification when plaintiffs had pointed to a common corporate "policy" but had identified

no "specific employment practice . . .  that ties all their 1.5 million claims together").

Because of the individualized nature of all these questions, Plaintiff has not, and cannot,

generate common proof on a classwide basis.  _See_, _e.g._, _Fisher v. Ciba Specialty Chems. Corp._,

238 F.R.D. 273, 305 n.69 (S.D. Al. 2006) ("Plaintiffs' briefs and oral arguments rattled off

numerous other alleged 'common questions' that either are not common or are irrelevant.").

21

**III.    Plaintiff's Motion fails based on numerous other Rule 23 elements.**

Plaintiff cannot satisfy the other required Rule 23 elements in several other ways.

**A.    Plaintiff is an atypical and inadequate class representative.**

To be an adequate and typical class representative, the class representative must show that there are no "meaningful differences" between her claims and those of the class. *Dukes*, 131 S. Ct. at 2551 n.5.  Hence, when a proposed class representative is subject to unique defenses that even "threaten to become the focus of the litigation," then she is neither an adequate nor typical. *Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 205 (N.D. Tex. 1997).  That is true here.

<u>First</u>, Plaintiff theorizes that RealPage should have acquired records directly from courts and obtained "actual court records," rather than purchasing bulk criminal data from its vendor, GDS, so that the "false reporting as to Plaintiff would not have occurred.  (Motion at pp. 2, 7, 16.) The evident reasoning behind that theory is that there may be more identifying information available in any given "court file" than in the information RealPage received from GDS.  As noted above, *<u>Plaintiff has no actual proof of that contention for a single class member</u>*, because that itself is a highly-individualized inquiry.[12]  *See, e.g., Farmer*, 285 F.R.D. at 703 ("The scope of this individual inquiry will require a variety of evidence specific to each case—such as the production of the actual up-to-date version of the public record at the time the report was issued.").  Nor is any such claim plausible, as GDS seeks to obtain all publicly available identifying information from court systems.  (**Ex. 2**, Jordan Decl., ¶ 6 (A. 06-7).)

---

[12] That liability theory has been roundly rejected.  *See, e.g.*, *Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015) (FCRA does not require credit reporting agencies to manually review underlying court files); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972-73 (7th Cir. 2004) ("The increased cost to Experian to examine each of these [electronic] entries individually would be enormous.  We find that as a matter of law there is nothing in this record to show that Experian's procedures are unreasonable."); *Moore v. First Advantage Enter. Screening Corp.*, No. 12-CV-92, 2013 WL 1662959, at *23 (N.D. Ohio Apr. 17, 2013) ("Plaintiff has offered no authority to support the suggestion that a furnisher of information like First Advantage must pull and personally examine every document within a court's file instead of being able to rely upon the docket.").

Regardless, even Plaintiff cannot advance that court-record claim individually because there is no evidence as to what information was contained in her so-called "actual court file."  That is because, in attempting to make this argument, Plaintiff attached a paper court file from a *different criminal case* that has a different case number and reflects a different offense.  (*Compare* Plaintiff's A. ISO Mot. for Certification, Dkt. No. 136, Ex. 7 (showing criminal record for Case No. 323494 with an offense of sale and distribution of narcotics/opiates) *with* Ex. 9 (records for Case No. Z33536 for an offense of selling cocaine.)  Thus, even her own attorneys were unable to accurately present the evidence of the court file that they claim RealPage should have gathered directly.  In any event, Plaintiff has not even established *for herself* the individualized proof that she would intend to put forward on this undeveloped liability theory.

Second, given that RealPage resolved Plaintiff's dispute *in just one day* and then issued an amended report to Marietta that then caused Plaintiff's application to be *approved*, Plaintiff will be subject to unique defenses with respect to her own attempt to seek statutory/punitive damages. Numerous courts have held that a consumer reporting agency's prompt resolution of a dispute in favor of a consumer is a factor in precluding a willful violation of § 1681e(b).  *See, e.g.*, *Smith*, 837 F.3d at 610-11 (finding a lack of willfulness when a defendant corrected its mistake shortly after plaintiff submitted a dispute); *see also Wenning v. On-Site Manager, Inc.*, No. 14-CV-9693, 2016 WL 3538379, *24 (S.D.N.Y. June 22, 2016) ("As a general matter, courts have granted summary judgment to [consumer reporting agencies] on willfulness claims when plaintiffs do not produce evidence that, after the CRA learned that its report was inaccurate, it failed to fix it."). There can be no doubt that happened here.  Plaintiff's circumstances thus give rise to a willfulness defense that is both unique to her and that would also vary for each proposed class member.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████   The Fourth Circuit previously considered a similar scenario in *Soutter*, where the plaintiff attempted to assert a FCRA claim on behalf of a class where the defendant had used different methods for reporting public records at different times.  498 Fed. App'x at 265.  In denying certification, the Fourth Circuit noted that the claims implicated "three different means of collecting" records, and that "proof that Equifax's behavior was unreasonable because of the manner in which [it] collected data from the Richmond General District Court in [plaintiff's] case does not 'advance' the claim of a class member whose judgment" was collected in a different way. *Id.*  That is also true here.  Plaintiff's individual circumstances diverge sharply from any reporting after September 2017, and she thus is not typical to represent the classes that she has proposed.

### B.     A class action is an inferior method of adjudication for this case.

The class action device is also an inferior method of adjudication here.

First, "the class action device exists primarily, if not solely, to achieve a measure of judicial economy . . . by permitting issues affecting all class members to be litigated in an efficient, expedited, and manageable fashion." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410 (5th Cir. 1998).  There is nothing "efficient" in proceeding here by class action.  As explained above, the Court will have to engage in a review of thousands of reports, underlying court records, and dispute records, coupled with a searching examination of RealPage's procedures relative to that class member's circumstances, along with testimony from every landlord, GDS, and RealPage.  And, even if individual lawsuits are somehow unlikely, "fear of underenforcement is no justification for class certification." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020).

Second, the class action mechanism also is not superior to individual actions here because the structure of the FCRA ensures that consumers have sufficient incentives to pursue individual litigation when they have suffered actual injury.  For example, although RealPage contests the allegations, Plaintiff claims that she suffered significant actual damages as a result of RealPage's

conduct.[13]  (Jones Dep. Tr., at 65:21-69:25.)  Plaintiff cannot argue that her substantial claimed damages do not provide her with incentive to individually litigate, especially when coupled with the potential for attorney's fees.  *Harper*, 2006 WL 3762035, at *10.  And, when violations are proven to be willful, Congress provided the alternative of statutory damages within a $100-$1,000 range and possible punitive damages.  15 U.S.C. § 1681o.  Thus, consumers who claim harm have ample incentive to litigate.  *Klotz*, 246 F.R.D. at 217 (FCRA's many damages remedies "dispel the notion that a class action is the only way to adjudicate the lawfulness of the defendant's practices")

Finally, when assessing superiority, "an increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof."  Advisory Committee Notes to 2003 Amendment to Fed. R. Civ. P. 23.  Courts within the Fifth Circuit have frequently denied certification where plaintiffs have not set forth sufficient trial plans outlining how the class case would be managed at trial.  *See*, *e.g.*, *Barnett v. Experian Info. Sols.*, No. 00-CV-175, 2004 WL 4032909, at *5 (E.D. Tex. Sep. 30, 2004) (denying motion for class certification because of concern with proposed trial plan in FCRA case, including because "a determination of willfulness is a fact-bound inquiry that requires examine of the totality of the circumstances of a consumer's interaction").  Here, Plaintiff did not attempt to begin to describe such a plan.  Nor could she plausibly do so given the numerous identified liability, causation, damages, and willfulness issues that would dominate the trial of any one consumer's claims.  Thus, a class action is inferior.

---

[13] A plaintiff must "possess undivided loyalties to absent class members" to be an adequate class representative, and a "conflict in remedial interests" renders representation inadequate under Rule 23(a)(4).  *Broussard v. Meineke*, 155 F.3d 331, 339 (4th Cir. 1998).  It is unclear whether Plaintiff is aware that her counsel has now abandoned her previous demands for substantial actual damages. Regardless, as Plaintiff's deposition testimony indicates – especially if she is, as she claims, an adequate and typical representative of the class – the class will include individuals with actual damages claims, who will have interests quite different from her own, and which she has jettisoned for this litigation.  Plaintiff cannot avoid that stark conflict in remedial interests here.

## **CONCLUSION**

WHEREFORE, Defendant requests the Court deny Plaintiff's Motion with prejudice.

Dated:  June 29, 2020

By:  */s/ Jessica R. Lohr*

Ronald I. Raether (*pro hac vice*)
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, California 92614
Telephone: (949) 622-2700
Facsimile: (949) 622-2739
ron.raether@troutman.com

Timothy St. George (*pro hac vice*)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-1339
tim.st.george@troutman.com

Jessica R. Lohr (*pro hac vice)*
TROUTMAN SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 509-6000
Facsimile: (858) 509-6040

*Attorneys for Defendant*
*RealPage, Inc., d/b/a LeasingDesk Screening*