**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| DIANE D. JONES, individually and on behalf of herself and all others similarly situated, | ) ) ) ) | |
| *Plaintiff*, | ) ) | Civ. No. 3:19-cv-02087-B |
| v. | ) ) | |
| REALPAGE, INC. d/b/a LEASINGDESK SCREENING, | ) ) ) ) | |
| *Defendant*. | | |

**APPENDIX TO DEFENDANT REALPAGE, INC.'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

| Exhibit | Description | Beginning Page Number |
|---|---|---|
| 1 | Declaration of Manjit Sohal, Senior Director of Product Management for Screening, RealPage, Inc. (signed June 29, 2020) | 01 |
| 2 | Declaration of Jessica Jordan, Software Engineering Manager, Genuine Data Services, LLC (signed June 22, 2020) | 06 |
| 3 | Declaration of Lee Castiglione, Manager of Screening Business Operations, RealPage, Inc. (signed June 29, 2020) | 09 |
| 4 | Declaration of Kevin Cook, Regional Property Manager, The Michaels Organization (signed March 5, 2020) | 18 |
| 5 | Transcript of the Deposition of Manjit Sohal, taken in this litigation on February 11, 2020 | 21 |

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| DIANE D. JONES, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civ. No. 3:19-cv-02087-B |
| | ) | |
| REALPAGE, INC. d/b/a LEASINGDESK | ) | |
| SCREENING, | ) | |
| | ) | |
| *Defendant*. | ) | |

## <u>DECLARATION OF MANJIT SOHAL</u>

I, Manjit Sohal, pursuant to 28 U.S.C. § 1746, declare and swear as follows:

1.      I am over the age of 18 and competent to give this Declaration.

2.      I am the Senior Director of Product Management for Screening.  In that role, among other functions, I manage RealPage, Inc.'s ("RealPage") LeasingDesk tenant screening platform.

3.      The statements in this declaration are based on my own personal knowledge, including knowledge I have acquired in the course of my job responsibilities and through the review of documents maintained as business records in the normal course of business.  If called upon to do so, I could and would competently testify to the facts below.

4.      One of the services RealPage offers is a tenant screening solution known as "LeasingDesk."  LeasingDesk reports contain information on the credit history of an applicant, any history of prior eviction filings, and any criminal record history of the applicant.

5.      RealPage obtains criminal records from hundreds of jurisdictions across the country.  There is no centralized database of criminal records.  Instead, records must be collected from each jurisdiction, through whatever means the jurisdiction allows, *e.g.*, electronic case access, public terminal searches, clerk-assisted searches, or bulk data files.  RealPage engages a nationwide vendor with expertise to supply it with that criminal record information from different jurisdictions across the country: Genuine Data Services, LLC ("GDS").

Appendix 01

6. ████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████

7. ████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████

■ ████████████████████████████
████████████████████████████
████████████████████████████
████

■ ████████████████████████████
████████████████████████████
████████████████████████

████████████████████████████████
████████████████

■ ████████████████████████████
████████████████████████

████████████████████████████████
████████████████████████████
████████████████████████

■ ████████████████████████████
████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

██      ██████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████

██      ██████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████

13.     On August 21, 2017, the Marietta Road Senior High Rise apartment complex in Marietta, Georgia ("Marietta") entered the following information into the LeasingDesk software to generate a screening report: (1) Plaintiff's full name, Diane D. Jones; (2) her gender; (3) her current address; (4) her Social Security number; and (5) her full date of birth.  Using the information input by Marietta, RealPage's software identified a criminal record from Georgia, where Marietta was located.  Those records had been previously obtained by GDS from the Georgia Department of Corrections.  ████████████████████████████████████

██████████████████████████████████████████████████

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on June 29, 2020.

_____
Manjit Sohal

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **DIANE D. JONES,** | |
| **Plaintiff,** | **Case No.  3:19-CV-02087-B** |
| **v.** | |
| **REALPAGE, INC. d/b/a LEASING DESK SCREENING,** | |
| **Defendant.** | |

## DECLARATION OF JESSICA JORDAN

1.      My name is Jessica Jordan.  I am over the age of eighteen and competent to give this declaration.

2.      In my capacity as Software Engineering Manager, I am familiar with the manner and procedures by which Genuine Data Services, LLC ("GDS") gathers public records and then provides such public record data to GDS's client, RealPage, Inc.

3.      Based on my experience at GDS, my team's review of GDS's relevant business records, and my interviews with my team, I have personal knowledge of the facts set forth in this declaration and am competent to testify as to the matters stated below.

4.      GDS gathers public records, including criminal records, that it then makes available to RealPage, Inc. under a contractual Service Agreement.

5.      There are thousands of different jurisdictions from which GDS gathers public records, such as: county and city courts, state departments of corrections, state sex offender registries, state public records indexes, and various national criminal lists and databases.

6.      GDS seeks to gather all available personally identifiable information ("PII") associated with the criminal records that it collects across all jurisdictions.  However, based on my experience, jurisdictions differ in terms of what PII is made available regarding an offender,

Appendix 06

including (among other PII) the offender's identified race; gender; other demographic information such as height and weight of the offender; photographs of the offender; middle names; suffixes; known aliases; and/or full dates of birth.

7.      Based on my experience, the availability of offender PII may also vary over time, even within a specific court system, depending on administrative decisions made by the court systems and/or legislative bodies regarding what PII can be made publicly available.

8.      I have also seen that there is significant variability in the PII included in criminal records, even within a specific source, based on scope of the PII that is collected about the offender at the time of case intake and at points thereafter.

9.      At my direction, my team reviewed the GDS data that was available on or around August 26, 2017 in the Georgia Department of Corrections Supplemental file, and it provided the following identifying information about offenders (if available), among others: offender first and last name; alias names; year of birth; demographic information, including sex, race, hair color, height, weight, eye color, and photos (when available); type of criminal charge; record date for the criminal charge; the originating county for the criminal charge; and the case number associated with the criminal charge.

10.     In contrast, in that same period, the Ohio Cuyahoga County Bedford Municipal Court generally provided (if available) full dates of birth; a case disposition; and a description of the criminal charge and degree of offense, but that court system did not provide any demographic information, gender information, or photographs.

11.     Hundreds of similar variations in the public availability of offender information like those set forth in the preceding four paragraphs exist across the different jurisdictions from which GDS obtains criminal records.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on  **June 22**_____, 2020

Appendix 07

Recoverable Signature

X Jessica Jordan
_____
Jessica Jordan
Software Engineering Manager
Signed by: 29cfc3d6-4896-43cf-a44d-c57f1d521a62

_____

Appendix 08

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| DIANE D. JONES, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civ. No. 3:19-cv-02087-B |
| | ) | |
| REALPAGE, INC. d/b/a LEASINGDESK SCREENING, | ) | |
| | ) | |
| | ) | |
| *Defendant*. | ) | |

**<u>DECLARATION OF LEE CASTIGLIONE</u>**

I, Lee Castiglione, pursuant to 28 U.S.C. § 1746, declare and swear as follows:

1.      I am over the age of 18 and competent to give this declaration.

2.      I am the Manager of Screening Business Operations.  In my role, I oversee the team that conducts consumer dispute investigations that relate to criminal records, among other things.

3.      The statements in this declaration are based on my own personal knowledge, including knowledge I have acquired in the course of my job responsibilities and through the review of documents maintained as business records in the normal course of business.  If called upon to do so, I could and would competently testify to the facts below.

4.      RealPage has developed procedures to expeditiously assist consumers who believe that some aspect of their report is incorrect for any number of reasons.  As part of its procedures, RealPage also accepts disputes directly from property managers, which can be resolved on an expedited basis without any prompt from a consumer.

5.      Based on my experience in leading the investigations teams and also training team members, I have become familiar with the many types of disputes submitted by consumers and the methods RealPage takes to reinvestigate those disputes.  During my time at RealPage, I have been personally involved or supervised thousands of investigations following consumer disputes.

6.      When a consumer submits a criminal records dispute, it can be classified as a "non-match" based on the consumer's description.  RealPage, however, does not have any further sub-

codes within that "non-match" category.  Additionally, RealPage will investigate any "non-match" dispute submitted by a consumer, including instances where there is an exact first and last name match (among other data points) with respect to the applicant and the offender information.  One such example would be former named-Plaintiff in this lawsuit, James Arnold, who disputed that the criminal record on his report did not belong to him, even though the offender's first name, last name, and full date of birth were an exact match.  A true and correct copy of the tenant screening report relating to James G. Arnold is attached hereto as **Exhibit A**, which shows that both the applicant and the offender were named James Arnold, with a date of birth of January 1, 1972.

7.     When investigating a consumer dispute, the dispute will be resolved in favor of the consumer if RealPage cannot definitively confirm the record's attribution to the consumer at the time of its investigation.  RealPage thus frequently errs in favor of the consumer when resolving disputes, and a dispute resolved in favor of the consumer does not mean that the initial reporting by RealPage was necessarily inaccurate.  Additionally, the RealPage team responsible for investigating and resolving consumer disputes does not change the initial "non-match" dispute classification based on the outcome of the investigation and whether the record was removed because the record did not belong to a consumer, as opposed to some other reason (such as a record being sealed or expunged).

8.     Based on my personal experience, consumers decide to contact RealPage to submit disputes based on several circumstances that are unique to each consumer.  For example, consumers may learn about a record that they claim is inaccurate after being provided with a copy of a RealPage screening report in connection with his or her application for housing.  Or consumers may learn about the existence of such records through file disclosure requests to RealPage, which is a process that does not require the issuance of any prior consumer report by RealPage.  Additionally, consumers have proactively contacted RealPage about records that they believe that the company is maintaining on them (*e.g.*, based on experiences with other consumer reporting agencies), regardless of whether the consumer had any prior contact with RealPage or was the subject of any screening report generated by RealPage that included alleged inaccurate

information.  In all such circumstances, the dispute will be investigated, and the record will potentially be amended based on the results of the investigation conducted by RealPage.  The "non-match" dispute figures that were identified by RealPage in its January 10, 2020 First Supplemental Objections and Responses to Plaintiff's Second Set of Interrogatories, which are included at page 380 of Plaintiff's Appendix, would include all such circumstances detailed in this paragraph.

9.     On August 26, 2017, Diane Jones contacted RealPage to dispute the attribution of a Georgia criminal record to her.  Following its reinvestigation, one day later, RealPage amended her report to remove the Georgia criminal record and sent an amended version of the report to the property where she had applied.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June  29, 2020.

By:  /s/ Lee Castiglione
Lee Castiglione

Appendix 11

# Exhibit A





Appendix 14





Appendix 16

Appendix 17

# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DIANE D. JONES,

        Plaintiff,

v.

REALPAGE, INC. d/b/a LEASING DESK
SCREENING,

        Defendant.

Case No.  3:19-CV-02087-B

### DECLARATION OF KEVIN COOK

1.     My name is Kevin Cook.  I am over the age of eighteen and competent to give this declaration.

2.     I am a Regional Property Manager for The Michaels Organization ("TMO"), which is a property management company.  Based on that role, I am familiar with the practices and procedures used to review applications for housing at the properties which TMO manages, including the Marietta Road Apartments in Atlanta, Georgia ("Marietta"), and to determine whether to approve or deny such applications.

3.     Based on my experience at TMO, as well as my review of TMO's business records, I have personal knowledge of the facts set forth in this declaration and am competent to testify as to the matters stated below.

4.     The tenant selection criteria that TMO employs at each of its properties varies by property, including due to the city and state where the property is located and because some properties are owned by state housing authorities.  For some properties, TMO has a resident selection plan, which is followed when making determinations regarding housing applications. Alternatively, some of TMO's properties have an Admissions and Continued Occupancy Policy ("ACOP"), as required by certain housing authorities.  For example, in August 2017, Marietta was owned by the Atlanta Housing Authority and had an ACOP in place.  Thereafter, TMO

Appendix 18

purchased Marietta from the Atlanta Housing Authority and has put into place a resident selection plan. TMO's selection criteria for any specific property can change over time depending on the ownership of the property, changes in state or local law, or administrative decisions within TMO regarding what factors should be considered in an application.

5.     TMO uses RealPage, Inc.'s ("RealPage") LeasingDesk software platform to generate screening reports on housing applicants, which may include credit or other public record information, including criminal history.

6.     Whether a particular criminal record that is returned on a screening report will be disqualifying will depend on the criteria in place at each property, which accounts for the housing authority's requirements (if applicable) and state or local laws.  Thus, certain records may be disqualifying and others may not be disqualifying.  A record that is disqualifying at one property may not be disqualifying at another property, depending on the tenant selection criteria in place.

7.     In addition, even where a criminal record results in an initial recommendation that an application be denied based on the selection criteria in place, applicants can dispute the results with RealPage.  When a dispute is submitted, each of TMO's properties will consider the results of the consumer dispute and any updated screening reports, along with the applicable selection criteria, and will make an individualized determination as to whether the application for housing should be approved.  Furthermore, in certain instances, TMO can internally override a decision initially denying an application for housing based on criminal history if an applicant is able to provide evidence directly to TMO that the record does not, in fact, belong to him or her.

8.     Diane D. Jones applied for housing at Marietta in the Spring of 2017 and was put on a waitlist.  On August 21, 2017, Marietta generated a screening report on Ms. Jones using RealPage's software, which included a criminal offense out of Georgia.  On August 29, 2017, Marietta was notified that Ms. Jones had disputed the criminal history information with RealPage and that, as a result of the dispute, RealPage had determined that the Georgia criminal history

– 2 –

Appendix 19

identified should be removed from her report.  As of that August 29, 2017 date, Ms. Jones was thus eligible for housing at Marietta based on the updated RealPage screening report.

9.       On October 11, 2017, an apartment became available at Marietta.  Marietta contacted Ms. Jones regarding the available unit, however, Ms. Jones responded by phone that she was not ready to move into the unit because she did not have the deposit funds available.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on _March 5th_ , 2020

_Kevin A. Cook_
                                                        Kevin Cook

- 3 -

Appendix 20

# Exhibit 5

```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS


DIANE D. JONES,              : Case No.
individually and on behalf   :
of herself and all others    :
similarly situated,          :
                             :
              Plaintiff,     :
                             :
v.                           :
                             :
REALPAGE, INC., d/b/a        :
LEASINGDESK SCREENING,       :
                             :
              Defendant.     : 3:19-cv-02087-B
```

   ORAL DEPOSITION OF MANJITSINGH SOHAL, produced as a

witness at the instance of the Plaintiff, and duly

sworn, was taken in the above-styled and -numbered cause

on February 11, 2020, from 9:01 a.m. to 11:43 a.m.,

before Christine Simons, CSR in and for the State of

Texas, reported by machine shorthand, at RealPage, Inc.,

2201 Lakeside Boulevard, Richardson, Texas, 75082,

pursuant to the Federal Rules of Civil Procedure.

```
              SUMMIT COURT REPORTING, INC.
          Certified Court Reporters and Videographers
               1500 Walnut Street, Suite 1610
               Philadelphia, Pennsylvania 19102
          424 Fleming Pike, Hammonton, New Jersey 08037
          (215) 985-2400 * (609) 567-3315 * (800)477-8648
                   www.summitreporting.com
```

Appendix 21

**MANJITSINGH SOHAL**

1    further questions.  We're going to have to take this up,

2    Tim.

3              MR. ST. GEORGE:  Okay.

4              MR. SOUMILAS:  And we're going to take it

5    up with the judge.

6              MR. ST. GEORGE:  So I have some questions

7    for the witness.

8                    EXAMINATION

9    BY MR. ST. GEORGE:

10        Q.  Mr. Sohal, I want you to have in front of you

11   Exhibit No. 3.  So the other exhibit, the demonstrative,

12   so not 1, not 2, but this one right here, number 3.  So

13   this is the list of names that Mr. Soumilas asked you

14   about, correct?

15        A.  Yeah.

16        Q.  You have that in front you?

17        A.  Um-hmm, yeah.

18        Q.  Just to clarify, when you were responding in

19   connection with Exhibit 3, were you responding simply as

20   to whether or not, based on the hypotheticals presented,

21   they would either be included within the population of

22   the response to interrogatory 15 or outside of that

23   population?

24        A.  Yes.

25        Q.  Okay.  So whether or not any of 1 through 10

**MANJITSINGH SOHAL**

1    would possibly be returned based on the match logic

2    that's used by LeasingDesk, would that be a separate

3    issue?

4        A.  Yes.  That's correct.

5        Q.  Okay.  And let me use number 9 for example,

6    looking at number 9, based on your understanding of the

7    match logic, is there any way that a criminal record

8    with a name of Stephanie Sola or Sandy Fuller would

9    match to a tenant applicant name of Alexander Johnson?

10



## MANJITSINGH SOHAL

1    name for number 9 on this list, Alexander Johnson, would

2    never result in a match with a criminal record for a

3    Stephanie Sola, correct?

4         A.  Correct.

5         Q.  But you said in answering interrogatory 15, as

6    you understood the question, it meets the profile of

7    what I'm looking for, correct?

8              MR. ST. GEORGE:  Object to form.

9         A.  Yeah, yes, it doesn't meet the -- it would be

10   in the list of interrogatory 15.

11        Q.  Okay.  Among the other ten names of tenant

12   applicants on the Sohal 3, are there any others that

13   would not possibly meet the matching criteria for a name

14   match at RealPage as you understand the name matching

15   logic that you just testified to with Mr. St. George?

16        A.  I can't say for sure.  I mean, as I said,

17   matching logic is much more detailed and comprehensive,

18   so it's not easy for me to say one way or the other.

19        Q.  Could you tell about any of them or just the

20   one that Mr. St. George pointed out?

21        A.  I think the way the logic --

22        Q.  Any of other --

23        A.  -- where the last names don't match the

24   criminal record name or -- and the -- I'm sorry, the

25   criminal record name and the alias name, that one, those

MANJITSINGH SOHAL

1   are easy to point out because we look for a -- for an

2   exact or a hard match on the last name and that's the

3   reason number 9 stands out.

4       Q.  Okay.  Is there anything else among this list

5   of ten that stands out as one that would not match

6   according to the RealPage matching logic as a match to

7   the name?

8       A.  No, I can't say for sure one way or the other.

9       Q.  Could you say for sure whether number 1,

10  Geoffrey Smith, would actually be a match to George

11  Smith according to RealPage's matching logic?

12      A.  I can't say one way or the other.

13      Q.  Is that also the case for James Jackson and

14  Jamal Jackson, number 2 in this?

15      A.  Again, matching logic considers a lot more

16  criteria.  I mean, what's -- it's not -- it's not as

17  straightforward saying -- because what you're asking me

18  is to carve out a piece of our matching logic and give

19  you an answer, and I can't do that right now.

20      Q.  Well, that's what you did for Mr. St. George,

21  you carved out a piece of the matching logic for last

22  name and you gave him an answer as to number 9, you did

23  that a moment ago, correct?

24      A.  Yeah, because the last names didn't have a

25  match with either of the criminal record name or the

**MANJITSINGH SOHAL**

1    alias names.  The one you're asking we have a match on

2    the last name.

3        Q.  Well, that's what I'm asking you do also, to

4    carve out just the name from RealPage's matching logic

5    and let me know whether there are any other names on

6    this list of ten which you consider to not possibly be

7    able to result in a match of the name between the tenant

8    applicant and either the criminal record or the criminal

9    alias notes?

10            MR. ST. GEORGE:  Object to form.

11        A.  I can't do that, I mean, I can't do it one way

12    or the other.

13        Q.  I'm sorry, are you saying you can do it or you

14    cannot do it?

15        A.  I cannot do it.

16        Q.  Okay.  I don't have any further questions.

17    Thank you.

18            MR. ST. GEORGE:  Okay.

19            MR. SOUMILAS:  Let's close this transcript,

20    let's attach Sohal 1 through 3 to the official

21    transcript, please.  And then I'm going to turn you over

22    to my colleague Lauren Brennan for the remainder of the

23    day.  I don't know if we're taking a break or how we're

24    going to proceed with the next one, but I'm taking off

25    at this point.

MANJITSINGH SOHAL

```
 1                    SIGNATURE PAGE

 2

 3                         -  -  -

 4

 5             I hereby acknowledge that I have

 6     read the aforegoing transcript, dated February 11,

 7     2020, and the same is a true and correct

 8     transcription of the answers given by me to the

 9     questions propounded, except for the changes, if

10     any, noted on the Errata Sheet.

11

12                         -  -  -

13

14

15

16

17     SIGNATURE:     _____
                      MANJITSINGH SOHAL
18

19     DATE:          March 25, 2020
                      _____
20

21     WITNESSED BY:  s/Bonnie Leigh
                      _____
22

23

24

25
```